

**CT Corporation**
**Service of Process Notification**
01/24/2023
CT Log Number 543080091

## Service of Process Transmittal Summary

| | |
|---|---|
| **TO:** | Lauren Demasi |
| | Gregory Funding LLC |
| | 13190 SW 68TH PKWY STE 110 |
| | TIGARD, OR 97223-8368 |
| **RE:** | **Process Served in Illinois** |
| **FOR:** | Gregory Funding LLC (Domestic State: OR) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MAUREEN W. ZOMAYAH, individually, and on behalf of all others similarly situated vs. GREGORY FUNDING LLC |
| **CASE #:** | 2023CH00189 |
| **NATURE OF ACTION:** | Foreclosure Litigation - Mortgage |
| **PROCESS SERVED ON:** | C T Corporation System, Chicago, IL |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/24/2023 at 14:02 |
| **JURISDICTION SERVED:** | Illinois |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air |
| | Image SOP |
| | Email Notification, Lauren Demasi lauren.demasi@aspencapital.com |
| | Email Notification, Katie Riggs katie.riggs@aspencapital.com |
| | Email Notification, Sara Jones sara.jones@aspencapital.com |
| | Email Notification, STEPHANIE SCHWENK stephanie.schwenk@aspencapital.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 208 South LaSalle Street |
| | Suite 814 |
| | Chicago, IL 60604 |
| | 866-203-1500 |
| | DealTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Tue, Jan 24, 2023
**Server Name:**                             Sheriff Drop

| Entity Served | GREGORY FUNDING LLC |
|---|---|
| Case Number | 2023CH00189 |
| Jurisdiction | IL |

| Inserts | | |
|---|---|---|
| | | |



FILED
1/9/2023 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00189
Calendar, 12
20954516

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (12/01/20) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

**Maureen Zomayah**

Plaintiff(s)

v.

Case No. **2023-CH-00189**

**Gregory Funding, LLC**

Defendant(s)

**c/o C T Corporation System, registered agent**
**208 So. LaSalle St., Ste. 814**
**Chicago, IL 60604**

Address of Defendant(s)

Please serve as follows (check one): ○ Certified Mail ● Sheriff Service ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE.** You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/ appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

Summons - Alias Summons        * (12/01/20) CCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: 47671

○ Pro Se 99500

Name: Arthur C. Czaja

Atty. for (if applicable):

Plaintiff

Address: 7521 N. Milwaukee Ave.

City: Niles

State: IL   Zip: 60714

Telephone: 847-647-2106

Primary Email: arthur@czajalawoffices.com

Witness date _____

1/9/2023 12:20 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of C____

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

Page 2 of 3

*5 0 2 4 7 3 9 3 *

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
                    OR
             ChildSupCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:     (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:     (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:     (847) 818-3000

### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:     (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:     (708) 974-6500

### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:     (708) 232-4551

* 5 0 2 4 7 3 9 3 *

FILED
1/9/2023 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00189
Calendar, 12
20954516

| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

Summons - Alias Summons

(12/01/20) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

**Maureen Zomayah**

Plaintiff(s)

v.

**Gregory Funding, LLC**

Defendant(s)

Case No.   **2023-CH-00189**

**c/o C T Corporation System, registered agent**
**208 So. LaSalle St., Ste. 814**
**Chicago, IL 60604**

Address of Defendant(s)

Please serve as follows (check one): ○ Certified Mail ● Sheriff Service ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE.

To file your written appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE.** You will need: a computer with internet access; an email address; a completed Appearance form that can be found at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp; and a credit card to pay any required fees.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

Page 1 of 3

Summons - Alias Summons • (12/01/20) CCG 0001 B

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

Please call or email the appropriate clerk's office location (on Page 3 of this summons) to get your court hearing date AND for information whether your hearing will be held by video conference or by telephone. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**NOTE: Your appearance date is NOT a court date. It is the date that you have to file your completed appearance by. You may file your appearance form by efiling unless you are exempted.**

A court date will be set in the future and you will be notified by email (either to the email address that you used to register for efiling, or that you provided to the clerk's office).

**CONTACT THE CLERK'S OFFICE for information regarding COURT DATES by visiting our website: cookcountyclerkofcourt.org; download our mobile app from the AppStore or Google play, or contact the appropriate clerk's office location listed on Page 3.**

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

○ Atty. No.: 47671

○ Pro Se 99500

Name: Arthur C. Czaja

Atty. for (if applicable):

Plaintiff

Address: 7521 N. Milwaukee Ave.

City: Niles

State: IL   Zip: 60714

Telephone: 847-647-2106

Primary Email: arthur@czajalawoffices.com

Witness date

1/9/2023 12:20 PM IRIS Y. MARTINEZ

IRIS Y. MARTINEZ, Clerk of C

☐ Service by Certified Mail: _____

☐ Date of Service: _____
(To be inserted by officer on copy left with employer or other person)

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 3

*  5  0  2  4  7  3  9  3  *

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:  (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:  (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:  (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:  (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:  (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:  (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:  (708) 232-4551

* 5 0 2 4 7 3 9 3 *
FILED
1/9/2023 12:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00189
Calendar, 12
20953893

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MAUREEN W. ZOMAYAH,
individually, and on behalf of all others
similarly situated,

     Plaintiff,

vs.

GREGORY FUNDING LLC,

     Defendant.

Case No.

## CLASS ACTION COMPLAINT

**NOW COMES** Plaintiff, MAUREEN W. ZOMAYAH, individually, and on behalf of all

others similarly situated, through undersigned counsel, complaining of Defendant, GREGORY

FUNDING LLC, as follows:

### NATURE OF THE ACTION

1.    This action is seeking redress for Defendant's violation(s) of the Fair Debt

Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*

2.    Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt

collection practices, to ensure that debt collectors who abstain from such practices are not

competitively disadvantaged, and to promote consistent state action to protect consumers. 15

U.S.C. § 1692(e).

3.    The Act regulates interactions between consumer debtors and "debt collector[s],"

defined to include any person who "regularly collects … debts owed or due or asserted to be owed

or due another." §§ 1692a(5), (6).

4.    Among other things, the Act prohibits debt collectors from making false

representations as to a debt's character, amount, or legal status, § 1692e(2)(A); communicating

1

* 5 0 2 4 7 3 9 3 *

with consumers at an "unusual time or place" likely to be inconvenient to the consumer, § 1692c(a)(1); or using obscene or profane language or violence of the threat thereof, §§ 1692d(1), (2). *See generally* §§ 1692b-1692j; *Heintz v. Jenkins*, 514 U.S. 291, 292-293 (1995).

5.  The Act is enforced through administrative actions and private lawsuits. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 577 (2010).

## JURISDICTION AND VENUE

6.  This Court has personal jurisdiction pursuant to 735 ILCS 5/2-209.

7.  Venue is proper pursuant to 735 ILCS 5/2-101.

## PARTIES

8.  MAUREEN W. ZOMAYAH ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at 6800 North Central Avenue, Chicago, Illinois 60646.

9.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

10. GREGORY FUNDING LLC ("Gregory Funding") is a limited liability company organized and existing under the laws of the state of Oregon.

11. Gregory Funding has its principal place of business at 13190 Southwest 68th Parkway, Tigard, Oregon 97223.

12. Gregory Funding is a servicer of residential loans and commercial loans throughout the United States.

13. Gregory Funding is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

14. Gregory Funding uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

15.     On May 11, 2005, Plaintiff executed a mortgage in favor of ABN AMRO Mortgage Group, Inc. (the "Mortgage").

16.     The Mortgage secured the purchase of Plaintiff's personal residence located at 6800 North Central Avenue, Chicago, Illinois 60646 (the "Property").

17.     The Mortgage secured the repayment of the indebtedness evidenced by a promissory note (the "Note") in the amount of $332,500.00 (the Note and Mortgage shall be collectively referred to as the "Loan").

18.     The Note provides that: "I will pay principal and interest by making a payment every month."

19.     The Note further provides that:

> **(A) Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest, I will pay this late charge promptly but only once on each late payment.

20.     CitiMortgage, Inc., as successor by merger to ABN AMRO Mortgage Group, Inc., assigned the Mortgage to Bank of America, N.A. by instrument dated March 11, 2014 and recorded April 1, 2014 as Document No. 1409129061 with the Cook County Recorder of Deeds.

21.     Plaintiff defaulted on the Loan by failing to pay the monthly installment due February 1, 2018 and thereafter.

22.     On June 11, 2019, Bank of America, N.A. filed a "Complaint to Foreclose Mortgage," pursuant to section 15-1101 of the Code of Civil Procedure with respect to the Property. Said case was filed in the circuit court of Cook County, Illinois and captioned as *Bank*

3

\* 5 0 2 4 7 3 9 3 \*

*of America, N.A. v. Maureen W. Zomayah, et al.*, case number 2018-CH-11534 (the "Foreclosure Case").

23.     In the complaint in the Foreclosure Case, it was alleged that the Loan was accelerated and that the full accelerated balance of $325,930.58 was due and owing.[1]  A copy of the complaint in the Foreclosure Case is attached hereto as ___Exhibit A___.

24.     During the pendency of the Foreclosure Case, on or about November 1, 2019, Gregory Funding acquired the servicing rights for Plaintiff's Loan from Bank of America, N.A.

25.     At the time of this transfer, Plaintiff's Mortgage Loan was in default in foreclosure.

26.     At the time of this transfer, all the payments owing under Plaintiff's Loan were accelerated. *See* ___Exh. A___.

27.     Once Plaintiff's Loan was accelerated, the entire balance on Plaintiff's Loan was due.

28.     In other words, no further monthly installments became due after acceleration.

29.     On July 5, 2022, an Affidavit of Amounts Due and Owing, executed by Julia Rust, an "Authorized Agent" of Gregory Funding, was filed in the Foreclosure Case. *See* ___Exhibit B___.

30.     In this Affidavit, Julia Rust of Gregory Funding swore under oath that the amount due and owing under the Loan was $364,559.94 as of June 30, 2022 and that the applicable interest rate was 2.25%. *See* ___Exh. B___.

31.     Plaintiff hired counsel, Law Office of Arthur C. Czaja, in November of 2022.

---

[1] A notice of acceleration is a condition precedent to foreclosure under Illinois Mortgage Foreclosure Law. *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 16 ("If CitiMortgage had not sent an acceleration notice, it would not be entitled to foreclose," therefore not satisfying "a condition precedent to its right to bring suit.")

\* 5 0 2 4 7 3 9 3 \*

32.     On November 4, 2022, Law Office of Arthur C. Czaja filed a notice of appearance in the foreclosure proceedings. *See **Exhibit C***.

33.     Gregory Funding sent a Late Payment Notice, dated November 17, 2022, to Plaintiff ***directly***, stating, in part:

> Our records indicate that your payment(s) is past due. As a result, a late charge in the amount of $65.12 for the 11/01/2022 installment has been added to your account. Please remit your payment plus any other charges due, which as of the date of this letter is $95,591.59.

*See **Exhibit D***.

31.     The Late Payment Notice is a "communication" as defined by 15 U.S.C. § 1692a(2).

32.     Gregory Funding sent a Mortgage Statement, dated November 18, 2022, to Plaintiff ***directly***. *See **Exhibit E***.

33.     The statement included a section entitled "Explanation of Payment Amount," which included a "Regular Monthly Payment" amount and a "Total Amount Due," both in bold lettering, which stated as follows:



34.     Also included was a detachable payment coupon to send in with the payment, which was referred to as the "Total Amount Enclosed" and had a "Payment Date" which stated as follows:

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

☐ Check here for change of mailing address or phone number(s).
Please provide all corrections on the reverse side.

| Account Number | |
| --- | --- |
| **Due By 12/01/2022:** | **$97,564.64** |
| A late fee of $65.12 will be charged after 12/16/2022. | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

Maureen W Zomayah
6800 N Central Ave.
Chicago, IL 60646-1501

35.     The statement identified $97,564.64 as the "Total Amount Due" and the interest rate at "3.8750%." *See **Exh. E**.*

36.     The statement provided: "*If payment is received after 12/16/2022, a $65.12 late fee will be charged.*"  *Id.*

37.     The statement also included a section entitled "Transactions Posted between 10/19/2022 – 11/17/2022." *Id.*

38.     This section indicated that on November 17, 2022, a $65.12 late charge was added to Plaintiff's Mortgage Loan. *Id.*

39.     The November 18, 2022 statement is a "communication" as defined by 15 U.S.C. § 1692a(2).

40.     The Mortgage provides:

> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Notice, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the

6

Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant of the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain actions can be taken, that time period will be deemed reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

*See **Exh. A***, Exhibit A thereof, ¶ 20.

41.     Pursuant to Section 20 of the Mortgage, Plaintiff mailed written correspondence, dated December 1, 2022, to Gregory Funding stating, in part:

On November 17, 2022, I received a late payment notice informing me that a late charge in the amount of $65.12 for the 11/01/2022 installment has been added to my account. On or before June 11, 2019, all the payments owing under my loan were accelerated. If late charges are tied to overdue monthly payments, the absence of any monthly payment obligation after acceleration precludes the imposition of late charges for that period.

42.     Gregory Funding sent a Mortgage Statement, dated December 20, 2022, to Plaintiff *directly*. *See **Exhibit F**.*

43.     The statement included a section entitled "Explanation of Payment Amount," which included a "Regular Monthly Payment" amount and a "Total Amount Due," both in bold lettering, which stated as follows:

7

| Account Number: | | Total Amount Due: | |
|---|---|---|---|
| Loan Number: | | Principal: | $340.65 |
| Property Address: | 6900 N Central Ave | Interest: | $961.82 |
| | Chicago, IL 60646 | Escrow (for Taxes and/or Insurance): | $670.58 |
| Amortized Principal Balance (Not Payoff Amount): | $315,385.45 | **Regular Monthly Payment:** | **$1,973.05** |
| Interest Rate (until 08/01/2057): | 3.8750% | Total New Fees and Charges: | $128.52 |
| Escrow Balance: | -$15,719.92 | Past Due Fees and Charges: | $13,812.70 |
| Suspense - Reserve: | $0.00 | Past Due Payment(s): | $84,727.92 |
| Suspense - Unapplied: | $775.98 | Suspense - Unapplied: | -$775.98 |
| Prepayment Penalty: | No | **Total Amount Due:** | **$99,666.21** |

44.     Also included was a detachable payment coupon to send in with the payment, which was referred to as the "Total Amount Enclosed" and had a "Payment Date" which stated as follows:

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

☐ Check here for change of mailing address or phone number(s). Please provide all corrections on the reverse side.

Maureen W Zomayah
6900 N Central Ave
Chicago, IL 60646-1501

| Account Number | |
|---|---|
| Due By 01/01/2023: | $99,666.21 |
| *A late fee of $65.12 will be charged after 01/17/2023.* | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | **$** |

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

45.     The statement identified $99,666.21 as the "Total Amount Due" and the interest rate at "3.8750%." *See* ***Exh. F***.

46.     The statement provided: "*If payment is received after 01/17/2023, a $65.12 late fee will be charged.*" *Id.*

47.     The statement also included a section entitled "Transactions Posted between 11/18/2022 – 12/19/2022." *Id.*

48.     This section indicated that on December 19, 2022, a $65.12 late charge was added to Plaintiff's Mortgage Loan. *Id.*

49.     The December 20, 2022 statement is a "communication" as defined by 15 U.S.C. § 1692a(2).

8

## CLASS ALLEGATIONS

50.     All Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

51.     Plaintiff brings this action pursuant to 735 ILCS 5/2-801 *et seq*, individually, and on behalf of all others similarly situated (the "Putative Classes").

52.     The Putative Classes are defined as follows:

### Section 1692c Subclass

*All consumers within the State of Illinois to whom (a) within the one (1) year prior to the filing of the original complaint and during its pendency; (b) received direct communication(s) from Gregory Funding; (c) despite Gregory Funding knowing that the consumers are represented by counsel.*

### Section 1692e Subclass

*All persons within the State of Illinois to whom (a) within the one (1) year prior to filing of the original complaint and during its pendency; (b) received the same or a substantially similar Mortgage Statement as the Mortgage Statements referenced supra; (c) after their loan had already been accelerated (d) providing "[i]f payment is received after [fifteen calendar days after the payment is due], a [...] late fee will be charged"; and (e) where the borrower(s) did not invoke their right under the mortgage to reinstate.*

### Section 1692f Subclass

*All persons within the State of Illinois to whom (a) within the one (1) year prior to filing of the original complaint and during its pendency; (b) after their loan was already accelerated; (c) were assessed late charges after payment was not received within fifteen calendar days after the payment was due; and (d) where the borrower(s) did not invoke their right under the mortgage to reinstate.*

53.     The following individuals are excluded from the Putative Classes: (1) any Judge presiding over this action and members of their families; (2) Gregory Funding, Gregory Funding's subsidiaries, parents, successors, predecessors, and any entity in which Gregory Funding or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion

9

* 5 0 2 4 7 3 9 3 *

from the Putative Class; (5) the legal representatives, successors or assigns of any such executed persons; and (6) persons whose claims against Gregory Funding have been fully and finally adjudicated and/or released.

### A.   Numerosity:

54.    Upon information and belief, Gregory Funding communicated with Illinois consumers represented by counsel on no less than 40 occasions.

55.    The exact number of members of the Putative Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

56.    Members of the Putative Classes can be objectively identified from records of Gregory Funding to be gained in discovery.

### B.  Commonality and Predominance:

57.    There are many questions of law and fact common to the claims of Plaintiff and the Putative Class, and those questions predominate over any questions that may affect individual members of the Putative Classes.

### C.   Typicality:

58.    Plaintiff's claims are representative of the claims of other members of the Putative Classes.

59.    Plaintiff's claims are typical of members of the Putative Classes because Plaintiff and the members of the Putative Classes are entitled to damages as result of Gregory Funding's conduct.

### D.   Superiority and Manageability:

60.    This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

61.     The damages suffered by the individual members of the Putative Classes will likely be relatively small, especially given the burden and expense required for individual prosecution.

62.     By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

63.     Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E.      Adequate Representation:**

64.     Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

65.     Plaintiff has no interests antagonistic to those of the Putative Classes, and Gregory Funding has no defenses unique to Plaintiff.

66.     Plaintiff has retained competent and experienced counsel with substantial experience in consumer class action litigation.

**CLAIMS FOR RELIEF**

**COUNT I:**
**Fair Debt Collection Practices Act—15 U.S.C. § 1692 *et seq.***

67.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**Violation of 15 U.S.C. § 1692c**

68.     Section 1692c states:

> (a) **Communication with the consumer generally.** Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
> ***

11

* 5 0 2 4 7 3 9 3 *

(2)     if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;

69.     Gregory Funding violated 15 U.S.C. § 1692c(a)(2) by mailing the Late Payment Notice to Plaintiff rather than to her attorney.

70.     Gregory Funding violated 15 U.S.C. § 1692c(a)(2) by mailing the November 18, 2022 statement to Plaintiff rather than to her attorney.

71.     Gregory Funding violated 15 U.S.C. § 1692c(a)(2) by mailing the December 20, 2022 statement to Plaintiff rather than to her attorney.

72.     The Late Payment Notice and mortgage statements were communications "in connection with the collection of [a] debt."

73.     At the time Gregory Funding sent Late Payment Notice and mortgage statements, they had actual knowledge, based on the November 4, 2022 notice of appearance, that Plaintiff was represented by Law Offices of Arthur C. Czaja with respect to the Mortgage Loan.

74.     The November 4, 2016 notice of appearance included Mr. Czaja's address and phone number.

75.     Therefore, the notice of appearance was sufficient to put Gregory Funding on notice that Plaintiff was represented by counsel with respect to the debt that was the subject of the state court foreclosure proceedings.

76.     Mr. Czaja did not give his consent to allow Gregory Funding to communicate with Plaintiff.

77.     Mr. Czaja did not fail to respond to any communications from Gregory Funding.

78.     Plaintiff may enforce the provisions of 15 U.S.C. § 1692c(a)(2) pursuant to section

k of the FDCPA (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with

any provision of [the FDCPA] with respect to any person is liable to such person in an amount

equal to the sum of -

> (1)     any actual damage sustained by such person as a result of such
> failure;
>
> (2)
>
> > A.     in the case of any action by an individual, such additional
> > damages as the court may allow, but not exceeding
> > $1,000.00; or
> >
> > B.     in the case of a class action, (i) such amount for each named
> > plaintiff as could be recovered under subparagraph (A), and
> > (ii) such amount as the court may allow for all other class
> > members, without regard to a minimum individual recovery,
> > not to exceed the lesser of $500,000 or 1 per centum of the
> > net worth of the debt collector; and
>
> (3)     in the case of any successful action to enforce the foregoing liability,
> the costs of the action, together with reasonable attorney's fees as
> determined by the court."

**WHEREFORE**, Plaintiff, **MAUREEN W. ZOMAYAH**, prays the Court enter an Order:

A.     Granting certification of the proposed class, including the designation of Plaintiff

as the named representative, the appointment of the undersigned as Class Counsel,

under the applicable provisions of 735 ILCS 5/2-801 *et seq.*

B.     Finding that Gregory Funding is a "debt collector" as defined by 15 U.S.C. §

1692a(6);

C.     Finding that the Mortgage Loan is a "debt" as defined by 15 U.S.C. § 1692a(5);

D.     Finding that Gregory Funding violated 15 U.S.C. § 1692c(a)(2);

E.     Awarding any actual damages sustained by Plaintiff as a result of Gregory

Funding's violation(s);

E.     Awarding such additional damages to Plaintiff, as the Court may allow, but not exceeding $1,000.00;

F.     Awarding such amount as the Court may allow for all other class members, not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of Gregory Funding;

G.     Awarding costs of this action, together with reasonable attorney's fees as determined by the Court; and

H.     Awarding such other relief as the Court deems just and proper.

## COUNT II:
### Fair Debt Collection Practices Act—15 U.S.C. § 1692e

77.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

78.     Section 1692e states:

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section.
>
> > (10)   The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

79.     If late charges are tied to overdue monthly payments, the absence of any monthly payment obligation after acceleration precludes the imposition of late charges for that period. *See Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated.")

14

* 5 0 2 4 7 3 9 3 *

80.     While the promissory note provides for late fees when a monthly payment has not been made within 15 calendar days of the date on which it was due, monthly payments are not "due" once the loan is accelerated.

81.     In other words, once Plaintiff's Mortgage Loan was accelerated, Plaintiff's right and obligation to make monthly payments ceased and no payment due could be considered "late."

82.     Gregory Funding's statement that "*[i]f payment is received after 01/17/2023, a $65.12 late fee will be charged*" is false, deceptive, or misleading as it creates the false impression that Plaintiff's Mortgage Loan is subject to late charges; therefore, violating 15 U.S.C. § 1692e(10).

83.     At the time Gregory Funding sent the mortgage statement, Gregory Funding was no longer able to charge late charges on the monthly payments Plaintiff owed.

84.     Plaintiff may enforce the provisions of 15 U.S.C. § 1692e(10) pursuant to section k of the FDCPA (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of -

    (1)     any actual damage sustained by such person as a result of such failure;

    (2)

        (A)     in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

        (B)     in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

    (3)    in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court."

**WHEREFORE**, Plaintiff, **MAUREEN W. ZOMAYAH**, prays the Court enter an Order:

A.    Granting certification of the proposed class, including the designation of Plaintiff as the named representative, the appointment of the undersigned as Class Counsel, under the applicable provisions of 735 ILCS 5/2-801 *et seq.*

B.    Finding that Gregory Funding is a "debt collector" as defined by 15 U.S.C. § 1692a(6);

C.    Finding that the Mortgage Loan is a "debt" as defined by 15 U.S.C. § 1692a(5);

D.    Finding that Gregory Funding violated 15 U.S.C. § 1692e(10);

E.    Awarding any actual damages sustained by Plaintiff as a result of Gregory Funding's violation(s);

F.    Awarding such additional damages to Plaintiff, as the Court may allow, but not exceeding $1,000.00;

G.    Awarding such amount as the Court may allow for all other class members, not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of Gregory Funding;

H.    Awarding costs of this action, together with reasonable attorney's fees as determined by the Court; and

I.    Awarding such other relief as the Court deems just and proper.

### COUNT III:
### Fair Debt Collection Practices Act—15 U.S.C. § 1692f

85.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

16

86.     Section 1692f states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> (1)     The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

87.     If late charges are tied to overdue monthly payments, the absence of any monthly payment obligation after acceleration precludes the imposition of late charges for that period. *See Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated.")

88.     While the promissory note provides for late fees when a monthly payment has not been made within 15 calendar days of the date on which it was due, monthly payments are not "due" once the loan is accelerated.

89.     In other words, once Plaintiff's Mortgage Loan was accelerated, Plaintiff's right and obligation to make monthly payments ceased and no payment due could be considered "late."

90.     Gregory Funding violated 15 U.S.C. § 1692f(1) by adding $65.12 in late charges to Plaintiff's Mortgage Loan on December 19, 2022—after acceleration and without reinstatement of the Mortgage and the Mortgage Loan when the absence of a monthly payment obligation after acceleration and without reinstatement precludes the imposition of late charges for that period.

91.     Plaintiff may enforce the provisions of 15 U.S.C. § 1692f(1) pursuant to section k of the FDCPA (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of -

(1)    any actual damage sustained by such person as a result of such failure;

(2)

    (A)    in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

    (B)    in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3)    in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court."

**WHEREFORE,** Plaintiff, **MAUREEN W. ZOMAYAH,** prays the Court enter an Order:

A.    Granting certification of the proposed class, including the designation of Plaintiff as the named representative, the appointment of the undersigned as Class Counsel, under the applicable provisions of 735 ILCS 5/2-801 *et seq.*

B.    Finding that Gregory Funding is a "debt collector" as defined by 15 U.S.C. § 1692a(6);

C.    Finding that the Mortgage Loan is a "debt" as defined by 15 U.S.C. § 1692a(5);

D.    Finding that Gregory Funding violated 15 U.S.C. § 1692e(10);

E.    Awarding any actual damages sustained by Plaintiff as a result of Gregory Funding's violation(s);

F.    Awarding such additional damages to Plaintiff, as the Court may allow, but not exceeding $1,000.00;

G.     Awarding such amount as the Court may allow for all other class members, not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of Gregory Funding;

H.     Awarding costs of this action, together with reasonable attorney's fees as determined by the Court; and

I.     Awarding such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: January 8, 2023                    Respectfully submitted,

                                          **MAUREEN W. ZOMAYAH**

                                          By: */s/ Arthur C. Czaja*
                                               Arthur C. Czaja
                                               Attorney for Plaintiff


Arthur C. Czaja
LAW OFFICE OF ARTHUR C. CZAJA
7521 North Milwaukee Avenue
Niles, Illinois 60714
+1 847-647-2106
arthur@czajalawoffices.com
Attorney No: 47671

# **<u>EXHIBIT A</u>**

Return Date: No return date scheduled
Hearing Date: 11/14/2018 10:30 AM - 10:30 AM
Courtroom Number: 2803
Location: District 1 Court
      Cook County, IL

Case: 23-cv-01134 Document #: 1-1 Filed: 02/23/23 Page 29 of 180

* 5 0 2 4 7 3 9 3 *

FILED
9/13/2018 9:56 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH11534

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT- CHANCERY DIVISION

BANK OF AMERICA, NATIONAL ASSOCIATION,

              Plaintiff,

      vs.

MAUREEN W. ZOMAYAH AKA MAUREEN
ZOMAYAH, YOUPI Y. ISHO, EDDISON ZOMAYAH
AKA EDDISON K. ZOMAYAH and ILLINOIS
HOUSING DEVELOPMENT AUTHORITY,

              Defendants.

CASE NO. 18-CH- **2018CH11534**
CALENDAR

PROPERTY ADDRESS:
6800 N. CENTRAL AVE.
CHICAGO, IL 60646

## COMPLAINT FOR FORECLOSURE

1.      Plaintiff, Bank of America, National Association files this Complaint to foreclose the Mortgage hereinafter described and joins the following Persons as Defendants: Maureen W. Zomayah aka Maureen Zomayah, Youpi Y. Isho, Eddison Zomayah aka Eddison K. Zomayah and Illinois Housing Development Authority.

2.      Attached as Exhibit A is a copy of said Mortgage (with loan numbers redacted), attached as Exhibit B is a copy of the Note (with loan numbers redacted) secured thereby and attached as Exhibit C is a copy of the Assignment of Mortgage (with loan numbers redacted), as herein described.

3.      Information concerning Mortgage:

(A)     Nature of instrument:  Mortgage.

(B)     Date of Mortgage: May 11, 2005.

(C)     Names of Mortgagors: Maureen W. Zomayah, Youpi Y. Isho, William Isho, deceased as of December 9, 2013 and Eddison Zomayah, signed solely to waive his homestead rights.

(D)     Name of Mortgagee: ABN AMRO Mortgage Group, Inc.

(E)     Date and Place of Recording: May 20, 2005 in the Recorder's Office of Cook County, Illinois.

(F)    Identification of Recording: Document No. 0514005186.

(G)    Interest subject to the Mortgage:  Fee Simple.

(H)    Amount of original indebtedness, including subsequent advances made under the mortgage: $332,500.00.

(I)    Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

LOT 24 (EXCEPT THE NORTH 10.0 FEET THEREOF) AND THE NORTH 6.50 FEET OF LOT 25 (AS MEASURED ON THE EAST LINE THEREOF) IN BLOCK 9 IN EDGEBROOK ESTATES, BEING A SUBDIVISION IN FRACTIONAL SECTION 33, AND PART OF LOTS 46 AND 53 IN OGDEN AND JONE'S SUBDIVISION OF BRONSON'S PART OF CALDWELL RESERVE IN TOWNSHIP 40 AND 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF REGISTERED IN THE OFFICE OF REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS ON DECEMBER 2, 1966, AS DOCUMENT 2303207.

Permanent Index Number: 10-33-119-042-0000

Commonly known as: 6800 N. Central Ave., Chicago, IL 60646

(J)    Statements as to defaults, including, but not necessarily limited to, date of default, current unpaid principal balance, per diem interest accruing, and any further information concerning the default:

Default by failing to pay the monthly installment due February 1, 2018 and thereafter.

| | | |
|---|---|---|
| 1. | Date of calculations: | September 12, 2018 |
| 2. | Amounts Due: | |
| | Principal | $       320,899.46 |
| | Interest | $         5,031.12 |
| | TOTAL DUE | $       325,930.58 |

3.    Per diem interest after date of calculations: $19.78.

(K)    Names of present owners of said premises: Maureen W. Zomayah, Youpi Y. Isho and Eddison Zomayah.

(L)    Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated: Illinois Housing Development Authority.

(M)    Names of defendants claimed to be personally liable for deficiency, if any: Maureen W. Zomayah aka Maureen Zomayah.

(N)     Capacity in which Plaintiff brings this foreclosure:  Plaintiff is the owner and legal holder of the Note, Mortgage and indebtedness.

(O)     Facts in support of redemption period shorter than the longer of (i) 7 months from the date the mortgagor or, if more than one, all mortgagors (I) have been served with summons or by publications or (II) have otherwise submitted to the jurisdiction of the court, or (ii) 3 months from the entry of the judgment of foreclosure, if sought:  None at this time.

(P)     Statement that the right of redemption has been waived by all owners of redemption, if applicable:  Not applicable.

(Q)     Facts in support of request for attorneys' fees and of costs and expenses, if applicable:  Plaintiff has been required to retain counsel for prosecution of this foreclosure and to incur substantial attorney fees, court costs, title insurance or abstract costs and other expenses which should be added to the balance secured by said Mortgage as provided under the terms of the Note and Mortgage.

(R)     Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and the identity of such receiver, if sought:  None at this time.

(S)     Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale, if sought:  No offer made.

(T)     Name or names of Defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof: Maureen W. Zomayah aka Maureen Zomayah, Youpi Y. Isho and Eddison Zomayah aka Eddison K. Zomayah.

4.     CitiMortgage Inc., as successor by merger to ABN AMRO Mortgage Group, Inc., by Bank of America, National Association, as Attorney-in-fact assigned the above described Mortgage to Bank of America, National Association by instrument dated March 11, 2014 and recorded April 1, 2014 as Document No. 1409129061 in the records of the Recorder's Office of Cook County, Illinois.

5.     Illinois Housing Development Authority is named a Defendant in this cause as a result of the following Recapture Agreement.  Said Recapture Agreement is subordinate to the Plaintiff's Mortgage.

(a)     Recapture Agreement dated December 10, 2015, and recorded February 2, 2016 as Document No. 1603334056, made by Maureen W. Zomayah and Eddison K. Zomayah, married to Illinois Housing Development Authority, to secure an indebtedness in the principal amount of $35,000.00 with interest as therein specified and subject to covenants, agreements and conditions as therein contained.

6.     Attached hereto as Exhibit "D" is a copy of the Order Appointing Standing Special Process Server entered for said firm on June 25, 2018.

* 5 0 2 4 7 3 9 3 *

## REQUEST FOR RELIEF

Plaintiff requests:

    (i)     A Judgment of foreclosure and sale.
    (ii)    An order granting a shortened redemption period, if sought.
    (iii)   A personal judgment for deficiency, if sought.
    (iv)   An order granting possession, if sought.
    (v)    An order placing the mortgagee in possession or appointing a receiver, if sought.
    (vi)   A judgment for attorney's fees, costs and expenses, if sought.

BANK OF AMERICA, NATIONAL
ASSOCIATION,
Plaintiff,

Dated   9/12/18       By _____
                        Of Heavner, Beyers & Mihlar, LLC
                           Its Attorney

Veronika L. Jones (#6313161)
HEAVNER, BEYERS & MIHLAR, LLC - #40387       DANIELLE E. PATTERSON
Attorneys at Law
P.O. Box 740
Decatur, IL 62525
Email: CookPleadings@hsbattys.com
Telephone: (217) 422-1719
Facsimile: (217) 422-1754

\* 5 0 2 4 7 3 9 3 \*





Doc#: 0514005186
Eugene "Gene" Moore Fee: $48.00
Cook County Recorder of Deeds
Date: 05/20/2005 04:02 PM Pg: 1 of 13

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
1201 EAST LINCOLN
MADISON HEIGHTS, MICHIGAN 48071-4171
ATTN:FINAL/TRAILING DOCUMENTS

This instrument was prepared by:

LOAN #:

———————— [Space Above This Line For Recording Data] ————————

## MORTGAGE

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated **MAY 11, 2005,** together with all Riders to this document.
(B) "Borrower" is **MAUREEN W ZOMAYAH, MARRIED TO EDDISON ZOMAYAH AND WILLIAM ISHO AND YOUPI Y. ISHO, HUSBAND AND WIFE**

MAIL TO:
RESIDENTIAL TITLE SERVICES
1910 S. HIGHLAND AVE.
SUITE 202
LOMBARD, IL 60148

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is **ABN AMRO MORTGAGE GROUP, INC.**

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01    Initials:
© 1999-2004 Online Documents, Inc.    Page 1 of 12    ILUDEED    ILUDEDL  0402
05-11-2005 12:02

**LOAN #:** ▮▮▮▮▮▮▮

Lender is a CORPORATION,
DELAWARE.
RD., TROY, MICHIGAN 48084.

organized and existing under the laws of
Lender's address is 2600 W. BIG BEAVER

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated MAY 11, 2005.     The Note
states that Borrower owes Lender ****THREE HUNDRED THIRTY TWO THOUSAND FIVE HUNDRED AND NO/100
********************************************** Dollars (U.S.     $332,500.00   )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than JUNE 1, 2035.
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be
executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider
☐ V.A. Rider

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(I)  "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is
not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu
of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications
of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01     Initials: _MZ_
© 1999-2004 Online Documents, Inc.      **Page 2 of 12**        ILUDEDL  0402
05-11-2005 12:02

LOAN #:

assigns, with power of sale, the following described property located in the COUNTY
[Type of Recording Jurisdiction] of COOK                                             [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of 6800 N CENTRAL AVE, CHICAGO,
[Street] [City]

Illinois     60646          ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurte-
nances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by
this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay
when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges
due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the
Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received
by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that
any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following
forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's
check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,
instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any
payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may
accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or
prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such
payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date,
then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3014 1/01         Initials: MZ
© 1999-2004 Online Documents, Inc.                        Page 3 of 12                              ILUDEDL  0402
                                                                                                05-11-2005 12:02

* 5 0 2 4 7 3 9 3 *
0514005186 Page: 4 of 13

LOAN #:

payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01
© 1999-2004 Online Documents, Inc.                     Page 4 of 12

Initials: MZ
ILUDEDL 0402
05-11-2005 12:02

EZ

LOAN #: ▮▮▮▮▮▮▮

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance

Initials: _MZ_
ILUDEDL  0402
05-11-2005 12:02

LOAN #:

proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01      Initials:
© 1999-2004 Online Documents, Inc.          **Page 6 of 12**                          ILUDEDL  0402
05-11-2005  12:02

* 5 0 2 4 7 3 9 3 *
0514005186 Page: 7 of 13

LOAN #

the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage

Initials: 

ILUDEDL 0402
05-11-2005 12:02

* 5 0 2 4 7 3 9 3 *
0514005186 Page: 8 of 13

LOAN #:

Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3014 1/01
© 1999-2004 Online Documents, Inc.                          Page 8 of 12

Initials: MZ

ILUDEDL 0402
05-11-2005 12:02

EZ

* 5 0 2 4 7 3 9 3 *

0514005186 Page 9 of 13

LOAN #:

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014 1/01

© 1999-2004 Online Documents, Inc.                               **Page 9 of 12**

Initials: _MZ_

ILUDEDL  0402

05-11-2005  12:02

LOAN #: ████████

transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01

© 1999-2004 Online Documents, Inc.

Page 10 of 12

Initials: _____

ILUDEDL 0402

05-11-2005 12:02

LOAN #:

laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3014 1/01
© 1999-2004 Online Documents, Inc.                          **Page 11 of 12**

Initials: _MZ_

ILUDEDL  0402
05-11-2005, 12:02

LOAN #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Maureen W Zomayah_ (Seal)
MAUREEN W ZOMAYAH

YOUPI Y. ISHO          x _Youpi Isho_

WILLIAM ISHO           x _____

State of ILLINOIS
County of: COOK

EDDISON ZOMAYAH*       x _____

The foregoing instrument was acknowledged before me this _5/11/05_ (date)
by MAUREEN W ZOMAYAH, (name of person acknowledged).

Eddison Zomayah,
William Isho &
Youpi Y. Isho

_Sharon Massey_
(Signature of Person Taking Acknowledgement)

_Notary_
(Title or Rank)

_____ (Serial Number, if any)

OFFICIAL SEAL
SHARON MASSEY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JAN. 29, 2007

* EDDISON ZOMAYAH SIGNS FOR THE SOLE PURPOSE OF WAIVING HIS
  HOMESTEAD RIGHTS.

# EXHIBIT "A"

LOT 24 (EXCEPT THE NORTH 10.0 FEET THEREOF) AND THE NORTH 6.50 FEET OF LOT 25 (AS MEASURED ON THE EAST LINE THEREOF) IN BLOCK 9 IN EDGEBROOK ESTATES, BEING A SUBDIVISION IN FRACTIONAL SECTION 33, AND PART OF LOTS 36 AND 53 IN OGDEN AND HONE'S SUBDIVISION OF BRONSON'S PART OF CALDWELL RESERVE IN TOWNSHIP 40 AND 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF REGISTERED IN THE OFFICE OF REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS ON DECEMBER 2, 1966, AS DOCUMENT 2303207.

PARCEL ID NUMBER: 10-33-119-042-0000

COMMONLY KNOWN AS:  6800 NORTH CENTRAL AVENUE
CHICAGO, IL 60646

EXHIBIT
B

 

\* 5 0 2 4 7 3 9 3 \*

LOAN #:

# NOTE

MAY 11, 2005                    ,SCHAUMBURG,                    ILLINOIS
[Date]                          [City]                         [State]

6800 N CENTRAL AVE, CHICAGO, IL 60646
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S.   $332,500.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  ABN AMRO MORTGAGE GROUP, INC., A DELAWARE
CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of   6.500%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the     1ST     day of each month beginning on   JULY 1, 2005.
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on     JUNE 1, 2035,     I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
4242 N. HARLEM AVE.
NORRIDGE, IL  60706
ATTN: CASHIERING
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.   $2,101.63.

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to
reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in
the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any
sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose
to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund
reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000%
of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount
by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been
paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice
is mailed to me or delivered by other means.
(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

Initials: _MZ_

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2004 Online Documents, Inc.                    Page 1 of 2                    F3200NOT 0401
                                                                                     05-11-2005 12:02



* 5 0 2 4 7 3 9 3 *

LOAN # :

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)

MAUREEN W ZOMAYAH

PAY TO THE ORDER OF LaSalle Bank N.A.

WITHOUT RECOURSE
ABN AMRO MORTGAGE GROUP, INC.

_____

MARGARET A. BETZ
FIRST VICE PRESIDENT

Pay to the order of

_____
Without recourse
Bank of America, National Association
Successor by merger to LaSalle Bank, N.A.

_____
Gerald T. Sajdak
Senior Vice President

[Sign Original Only]

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
© 1999-2004 Online Documents, Inc.                                   Page 2 of 2
F3200NOT   0401
05-11-2005 12:02

* 5 0 2 4 7 3 9 3 *



EXHIBIT
C

Recording requested by:
CITIMORTGAGE INC., AS
SUCCESSOR BY MERGER TO ABN
AMRO MORTGAGE GROUP, INC

When recorded mail to:
~~BANK OF AMERICA~~
~~DOCUMENT PROCESSING~~
~~TX2-979-01-19~~
~~4500 AMON CARTER BLVD~~
~~FORT WORTH, TX 76155-2201~~
~~ATTN: ASSIGNMENT UNIT~~

CoreLogic
460 E. Boundary St. Chapin, SC 29036



Doc#: 1409129061 Fee: $42.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 04/01/2014 11:55 AM Pg: 1 of 3

CORPORATION ASSIGNMENT OF MORTGAGE

Branch/Source Code ▮▮▮▮▮▮          Doc. ID#
                                  Commitment# ▮▮▮▮▮

For value received, the undersigned, CITIMORTGAGE INC., AS SUCCESSOR BY
MERGER TO ABN AMRO MORTGAGE GROUP, INC, 1000 TECHNOLOGY DRIVE, O'FALLON,
MO 63368, hereby grants, assigns and transfers to:
BANK OF AMERICA, N.A.
1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063

All its interest under that certain Mortgage dated 5/11/05, executed by:
MAUREEN W ZOMAYAH and EDDISON ZOMAYAH AND WILLIAM ISHO, YOUPI Y. ISHO,
Mortgagor as per MORTGAGE recorded as Instrument No. 0514005186 on 5/20/05
in Book N/A Page N/A of official records in the County Recorder's Office
of COOK County, ILLINOIS.
    Tax Parcel =   10-33-119-042-0000,
Original Mortgage $332,500.00
6600 N CENTRAL AVE, CHICAGO, IL 60646

    (See page attached hereto for Legal Description)
Together with the Note or Notes therein described or referred to, the
money due and to become due thereon with interest, and all rights accrued
or to accrue under said Mortgage.

S Yes
P 3
S No
M No
SC Yes
E Yes
INT

If called to testify at the trial of this matter, I could competently testify as to the facts contained in this affidavit.

Gregory Funding, LLC acquired the servicing rights for the Defendant's loan on or about 11/1/2019 from Bank of America. At the time of this transfer, the Defendant's loan was in default and the unpaid principal balance was $320,899.46. As part of the transfer of servicing rights from Bank of America ("prior servicer"), Gregory Funding, LLC incorporated existing records concerning the borrower's account into its servicing system. It is Gregory Funding, LLC's normal business practice to incorporate such records from prior servicers upon a service transfer, and Gregory Funding, LLC relies upon the accuracy of those existing records to continue servicing mortgage loan accounts.

The amount due is based on my review of the following records: Loan Documents and Loan Pay History. A true and accurate copy of the payment history and any other document I reviewed when making this calculation is attached to this affidavit.

Gregory Funding, LLC uses The Mortgage Office ("TMO") to automatically record and track mortgage payments. This type of tracking and accounting program is produced by Applied Business Software, recognized as standard in the industry. When a mortgage payment is received, the following procedure is used to process and apply the payment, and to create the records: Payments come into a lock box and are deposited into a servicing account. Our accounting department identifies the amount and the borrower and applies the funds to the loan through TMO, pursuant to the terms in the loan documents. In this case, borrower is due for March 1, 2019 and has made no ~~payments since Gregory Funding, LLC acquired the loan~~. Therefore we rely on the pay history received from Bank of America. I reviewed TMO and the Loan Pay History from the prior servicer. The payment records are made and/or kept in the regular course of Gregory Funding, LLC's business, and the payment records were obtained from the prior servicer in the regular course of business. In the case at bar, the entries reflecting the Defendant's payments were made in accordance with the procedure detailed above, and these entries were made at or near the time that the payment was received.

TMO accurately records mortgage payments and expenses and incorporates existing records when properly operated. In the case at bar, TMO was properly operated to accurately incorporated the Defendant's mortgage account records and accurately record amounts expended by Gregory Funding, LLC.

Based on the foregoing, Maureen W. Zomayah aka Maureen Zomayah failed to pay amounts due under the Note from the monthly payment due March 1, 2019 through the present, and the amount due and owing as of June 30, 2022 is:

| | | |
|---|---|---|
| Principal | $ | 315,385.45 |
| Interest from 03/01/2019 to 06/30/2022 @ 2.25% ($33.95 Per diem) | $ | 32,063.09 |
| Pro Rata MIP/PMI | $ | 0.00 |
| Escrow Advance | $ | 15,719.92 |
| Late Charges | $ | 1,842.46 |
| NSF Charges | $ | 15.00 |
| Property Maintenance | $ | 0.00 |
| Property Inspections | $ | 310.00 |
| BPO | $ | 0.00 |
| GROSS AMOUNT DUE | $ | 365,335.92 |
| Less/Plus balance in reserve accounts | $ | (775.98) |
| NET AMOUNT DUE | $ | 364,559.94 |

AFFIANT STATES NOTHING MORE.

STATE OF OREGON      )

               )

COUNTY OF WASHINGTON   )

BY: _____

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 28 DAY
OF June , 2022

_____

Eric Kenneth Ayles

OFFICIAL STAMP
ERIC KENNETH AYLES
NOTARY PUBLIC - OREGON
COMMISSION NO. 989231
MY COMMISSION EXPIRES JULY 4, 2023



PO Box 230579
Tigard, OR 97281-0579

* 5 0 2 4 7 3 9 3 *

6/2/2022

Gregory Funding
PO Box 230579
Tigard, OR 97281-0579
(866) 712-5698

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646
Account: ▮▮▮▮▮▮▮

**LOAN PAYOFF STATEMENT**

| Loan Number | ▮▮▮▮▮▮ |
|---|---|
| Payoff Date | 6/30/2022 |
| Maturity Date | 8/1/2057 |
| Next Payment Due | 3/1/2019 |
| Interest Rate | 2.250% |
| Interest Paid-To Date | 2/1/2019 |
| Principal Balance | $315,385.45 |
| Deferred Principal | $0.00 |
| Accrued Interest from 02/01/2019 to 06/30/2022 | $32,063.09 |
| Unpaid Late Charges | $1,777.34 |
| Accrued Late Charges | $65.12 |
| Interest Credit | ($775.98) |
| Unpaid Charges | $8,072.56 |
| Escrow Deficiency | $15,719.92 |
| Reserve Balance | $0.00 |
| Wire Fee (If Paying by Wire) | $6.00 |
| Reconveyance | $0.00 |
| **Payoff Amount** | **$372,313.50** |

Please add $33.95 for each additional day past 6/30/2022

We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff. This demand expires on 6/30/2022, at which time you are instructed to contact this office for additional instructions.

Sincerely,

Gregory Funding

*v2.0 11/30/2020 LTR210*

## LOAN CHARGES

| Date | Description | Owed |
|------|-------------|------|
| 11/01/2019 | Corporate Advances - Purchased - BAC | $4,484.75 |
| 11/01/2019 | Prior servicer late fees | $255.25 |
| 12/03/2020 | Interest on escrow advances | $49.36 |
| 01/05/2021 | Interest on escrow advances | $24.94 |
| 02/03/2021 | Interest on escrow advances | $23.77 |
| 03/03/2021 | Interest on escrow advances | $22.30 |
| 04/02/2021 | Foreclosure legal fee | $200.00 |
| 04/05/2021 | Interest on escrow advances | $33.53 |
| 05/04/2021 | Interest on escrow advances | $28.77 |
| 05/11/2021 | Foreclosure legal fee | $250.00 |
| 06/03/2021 | Interest on escrow advances | $28.54 |
| 07/06/2021 | Interest on escrow advances | $27.55 |
| 08/03/2021 | Interest on escrow advances | $28.50 |
| 09/03/2021 | Interest on escrow advances | $28.19 |
| 09/24/2021 | Foreclosure legal fee | $275.00 |
| 10/05/2021 | Interest on escrow advances | $32.77 |
| 10/19/2021 | Property inspection fee | $250.00 |
| 10/19/2021 | Foreclosure legal fee | $15.00 |
| 10/19/2021 | Return check charge | $15.00 |
| 11/03/2021 | Interest on escrow advances | $38.07 |
| 12/03/2021 | Interest on escrow advances | $36.80 |
| 12/22/2021 | Property inspection fee | $15.00 |
| 01/04/2022 | Interest on escrow advances | $38.07 |

| 01/25/2022 | Property inspection fee | $15.00 |
|---|---|---|
| 02/03/2022 | Interest on escrow advances | $38.07 |
| 02/25/2022 | Foreclosure legal fee | $200.00 |
| 03/03/2022 | Interest on escrow advances | $39.86 |
| 04/01/2022 | Property inspection fee | $15.00 |
| 04/05/2022 | Interest on escrow advances | $50.07 |
| 04/14/2022 | Property inspection fee | $15.00 |
| 04/14/2022 | Foreclosure legal fee | $250.00 |
| 04/14/2022 | Foreclosure legal fee | $400.00 |
| 04/14/2022 | Foreclosure legal fee | $800.00 |
| 05/03/2022 | Interest on escrow advances | $48.40 |
| | **Total** | **$8,072.56** |

## ESCROW

| Date | Memo | Owed |
|---|---|---|
| 11/01/2019 | Bank of America Escrow Advances - Purchased - BAC | -$12,159.14 |
| 02/07/2020 | Gregory Funding LLC ERIE INSURANCE-00255 | -$603.00 |
| 03/03/2020 | Gregory Funding LLC COOK COUNTY-120160000 | -$3,878.75 |
| 07/31/2020 | Gregory Funding LLC COOK COUNTY-120160000 | -$2,822.67 |
| 11/30/2020 | Maureen W Zomayah Borrower Payment | $9,656.61 |
| 11/30/2020 | Maureen W Zomayah Borrower Payment | $470.45 |
| 01/04/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
| 01/29/2021 | Maureen W Zomayah Borrower Payment | $1,411.35 |
| 02/26/2021 | Gregory Funding LLC COOK COUNTY-120160000 | -$3,685.78 |
| 05/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
| 08/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |

| 08/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
|------------|-----------------------------------|---------|
| 08/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
| 08/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
| 09/14/2021 | Gregory Funding LLC COOK COUNTY-120160000 | -$3,164.20 |
| 02/15/2022 | Gregory Funding LLC COOK COUNTY-120160000 | -$3,767.49 |

*v2.0 11/30/2020 LTR210*

# GREGORY FUNDING

Version: 3.27    Server: REDWOOD

Loan Number: 16500
Borrower: Ma'smeh W Lomayah
Co-Borrower:
Property Address: 6800 N Central Ave
Property City, ST, Zip: Chicago, IL 60646
Mailing Address: 6800 N Central Ave
Mailing City, ST, Zip: Chicago, IL 60646-5101
Mailing Country: UNITED STATES
Lender: U.S. Bank National Association, as Indenture Trustee on behalf of and with respect to Ajax Mortgage Loan Trust 2019-E, Mortgage-Backed Securities, Series 2019-E
Days Past Due Date: 719
Report Date: 2/25/2020
Payment History: Gregory Funding

| Reference | Transaction | Date Received | Date Due | Total | Principal | Interest | Escrow | Other Payments | Reserve | Late Charge Paid | Loan Charges | Interest on Charges | Fees To Lender | Unpaid Interest | Late Charge Added | Days Late | Principal Balance | Escrow Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16500 | 601 Below | 11/01/2019 | | $0.00 | $0.00 | $0.00 | -$13,159.14 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | -$13,159.14 |
| | Transfer Balance | 11/01/2019 | 01/01/2018 | -$320,899.46 | -$320,899.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $320,899.46 | -$13,159.14 |
| | Late Ch. | 10/17/2020 | 10/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $51.35 | | $320,899.46 | -$13,159.14 |
| | Late Ch. | 10/17/2020 | 11/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $51.35 | | $320,899.46 | -$13,159.14 |
| | Late Ch. | 10/17/2020 | 12/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $51.35 | | $320,899.46 | -$13,159.14 |
| | Late Ch. | 10/17/2020 | 01/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $51.35 | | $320,899.46 | -$13,159.14 |

* 5 0 2 4 7 3 9 3 *

| TRNTYP | | TRNDTE | TRNDUE | TRNAMT | TRNINT | ADNPMT | TRNPRN |
|---|---|---|---|---|---|---|---|
| | 590 | 2/2/2006 | 10/1/2005 | -2786.63 | 0 | 0 | 0 |
| | 590 | 8/7/2006 | 10/1/2005 | -2544.3 | 0 | 0 | 0 |
| | 947 | 1/8/2007 | 10/1/2005 | 1576.2 | 0 | 0 | 0 |
| | 20 | 1/8/2007 | 10/1/2005 | 10089.14 | 0 | 0 | 0 |
| | 940 | 1/12/2007 | 10/1/2005 | -31730.86 | 0 | 0 | -31730.86 |
| | 944 | 1/12/2007 | 12/1/2006 | 0 | 0 | 0 | 0 |
| | 20 | 1/16/2007 | 12/1/2006 | 6608.14 | 0 | 0 | 0 |
| | 20 | 1/24/2007 | 12/1/2006 | -300 | 0 | 0 | 0 |
| | 20 | 1/24/2007 | 12/1/2006 | -310 | 0 | 0 | 0 |
| | 20 | 1/24/2007 | 12/1/2006 | -95 | 0 | 0 | 0 |
| | 20 | 1/26/2007 | 12/1/2006 | -999.99 | 0 | 0 | 0 |
| | 20 | 1/26/2007 | 12/1/2006 | -999.99 | 0 | 0 | 0 |
| | 20 | 1/26/2007 | 12/1/2006 | -673.02 | 0 | 0 | 0 |
| | 10 | 1/26/2007 | 1/1/2007 | 0 | 1966.35 | 0 | 367.96 |
| | 20 | 1/30/2007 | 1/1/2007 | -150 | 0 | 0 | 0 |
| | 20 | 1/30/2007 | 1/1/2007 | -90 | 0 | 0 | 0 |
| | 20 | 1/30/2007 | 1/1/2007 | 0 | 0 | 0 | 3060.49 |
| | 165 | 1/30/2007 | 1/1/2007 | -437.46 | 0 | 0 | 0 |
| | 10 | 2/5/2007 | 2/1/2007 | 2778.55 | 1947.78 | 0 | 386.53 |
| | 20 | 2/5/2007 | 2/1/2007 | 63.52 | 0 | 0 | 63.52 |
| | 590 | 2/6/2007 | 2/1/2007 | -2665.47 | 0 | 0 | 0 |
| | 590 | 11/14/2007 | 2/1/2007 | -2418.14 | 0 | 0 | 0 |
| | 10 | 2/14/2007 | 3/1/2007 | 2778.54 | 1945.34 | 0 | 388.97 |
| | 590 | 2/26/2008 | 3/1/2007 | -2541.81 | 0 | 0 | 0 |
| | 947 | 8/15/2008 | 3/1/2007 | 1050.48 | 0 | 0 | 0 |
| | 10 | 10/23/2008 | 4/1/2007 | 4107.25 | 1943.24 | 0 | 391.07 |
| | 10 | 10/23/2008 | 5/1/2007 | 2778.55 | 1941.12 | 0 | 393.19 |
| | 10 | 10/23/2008 | 6/1/2007 | 2778.55 | 1938.99 | 0 | 395.32 |
| | 10 | 10/23/2008 | 7/1/2007 | 2778.55 | 1936.85 | 0 | 397.46 |
| | 10 | 10/23/2008 | 8/1/2007 | 2778.55 | 1934.69 | 0 | 399.62 |
| | 10 | 10/23/2008 | 9/1/2007 | 2778.55 | 1932.53 | 0 | 401.78 |
| | 10 | 12/1/2008 | 10/1/2007 | 3531.9 | 1930.35 | 0 | 403.96 |
| | 10 | 12/1/2008 | 11/1/2007 | 2778.55 | 1928.16 | 0 | 406.15 |
| | 20 | 1/8/2009 | 11/1/2007 | -2082.05 | 0 | 0 | 0 |
| | 10 | 1/12/2009 | 12/1/2007 | 3531.9 | 1925.96 | 0 | 408.35 |
| | 10 | 1/12/2009 | 1/1/2008 | 2778.55 | 1923.75 | 0 | 410.56 |
| | 20 | 1/16/2009 | 1/1/2008 | -753.35 | 0 | 0 | 0 |
| | 10 | 2/3/2009 | 2/1/2008 | 4000 | 1921.53 | 0 | 412.78 |
| | 590 | 2/6/2009 | 2/1/2008 | -2554.37 | 0 | 0 | 0 |
| | 590 | 2/25/2009 | 2/1/2008 | -2548.09 | 0 | 0 | 0 |
| | 10 | 3/3/2009 | 3/1/2008 | 3252.52 | 1919.29 | 0 | 415.02 |
| | 10 | 3/3/2009 | 4/1/2008 | 2778.55 | 1917.04 | 0 | 417.27 |
| | 10 | 4/1/2009 | 5/1/2008 | 3252.52 | 1914.78 | 0 | 419.53 |
| | 10 | 4/1/2009 | 6/1/2008 | 2778.55 | 1912.51 | 0 | 421.8 |
| | 10 | 4/30/2009 | 7/1/2008 | 3252.52 | 1910.23 | 0 | 424.08 |
| | 10 | 4/30/2009 | 8/1/2008 | 2778.55 | 1907.93 | 0 | 426.38 |

* 5 0 2 4 7 3 9 3 *

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 | 5/7/2009 | 8/1/2008 | 100 | 0 | 0 | 0 |
| 10 | 5/8/2009 | 9/1/2008 | 0 | 1905,62 | 0 | 428.69 |
| 10 | 5/28/2009 | 10/1/2008 | 3252.52 | 1903.3 | 0 | 431.01 |
| 20 | 5/28/2009 | 10/1/2008 | 2778.55 | 1900.96 | 0 | 433.35 |
| 944 | 6/24/2009 | 7/1/2009 | 0 | 0 | 0 | 0 |
| 940 | 6/24/2009 | 7/1/2009 | -15188.96 | 0 | 0 | -15188.96 |
| 20 | 6/25/2009 | 7/1/2009 | -5823.42 | 0 | 0 | -5823.42 |
| 20 | 6/25/2009 | 7/1/2009 | 5823.42 | 0 | 0 | 0 |
| 20 | 6/25/2009 | 7/1/2009 | 0 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -20 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -999.99 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -999.99 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -999.99 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -411,21 | 0 | 0 | 0 |
| 165 | 7/6/2009 | 7/1/2009 | -453.97 | 0 | 0 | 0 |
| 10 | 7/31/2009 | 8/1/2009 | 2621.67 | 2012.43 | 0 | 184.03 |
| 20 | 7/31/2009 | 8/1/2009 | 378.33 | 0 | 0 | 378.33 |
| 10 | 9/1/2009 | 9/1/2009 | 2621.67 | 2009.39 | 0 | 187.07 |
| 10 | 9/29/2009 | 10/1/2009 | 2621.67 | 2008.37 | 0 | 188.09 |
| 10 | 10/29/2009 | 11/1/2009 | 2621.67 | 2007.36 | 0 | 189.1 |
| 590 | 11/12/2009 | 11/1/2009 | -3635.94 | 0 | 0 | 0 |
| 10 | 11/19/2009 | 12/1/2009 | 2621.67 | 2006.33 | 0 | 190.13 |
| 10 | 12/23/2009 | 1/1/2010 | 2621.67 | 2005.3 | 0 | 191.16 |
| 10 | 1/29/2010 | 2/1/2010 | 2854.43 | 2004.27 | 0 | 192.19 |
| 590 | 2/10/2010 | 2/1/2010 | -3401.22 | 0 | 0 | 0 |
| 10 | 3/1/2010 | 3/1/2010 | 2854.43 | 2003.22 | 0 | 193.24 |
| 10 | 4/5/2010 | 4/1/2010 | 2854.43 | 2002.18 | 0 | 194.28 |
| 520 | 4/12/2010 | 4/1/2010 | -391 | 0 | 0 | 0 |
| 10 | 5/14/2010 | 5/1/2010 | 2854.43 | 2001.13 | 0 | 195.33 |
| 10 | 6/15/2010 | 6/1/2010 | 2854.43 | 2000.07 | 0 | 196.39 |
| 10 | 7/15/2010 | 7/1/2010 | 2854.43 | 1999 | 0 | 197.46 |
| 10 | 8/16/2010 | 8/1/2010 | 2854.43 | 1997.93 | 0 | 198.53 |
| 20 | 9/16/2010 | 8/1/2010 | 1500 | 0 | 0 | 0 |
| 20 | 10/14/2010 | 8/1/2010 | 1500 | 0 | 0 | 0 |
| 20 | 10/15/2010 | 8/1/2010 | -2995.79 | 0 | 0 | 0 |
| 10 | 10/15/2010 | 9/1/2010 | 2995.79 | 1996.86 | 0 | 199.6 |
| 20 | 11/17/2010 | 9/1/2010 | 0 | 0 | 0 | 0 |
| 20 | 11/17/2010 | 9/1/2010 | 1500 | 0 | 0 | 0 |
| 590 | 11/23/2010 | 9/1/2010 | -2411.08 | 0 | 0 | 0 |
| 20 | 12/16/2010 | 9/1/2010 | 1000 | 0 | 0 | 0 |
| 20 | 1/13/2011 | 9/1/2010 | 1000 | 0 | 0 | 0 |
| 10 | 1/18/2011 | 10/1/2010 | 2995.79 | 1995,78 | 0 | 200.68 |
| 20 | 1/18/2011 | 10/1/2010 | -2995.79 | 0 | 0 | 0 |
| 590 | 2/17/2011 | 10/1/2010 | -3196.77 | 0 | 0 | 0 |
| 20 | 2/25/2011 | 10/1/2010 | 700 | 0 | 0 | 0 |
| 20 | 3/24/2011 | 10/1/2010 | 500 | 0 | 0 | 0 |
| 520 | 4/12/2011 | 10/1/2010 | -481 | 0 | 0 | 0 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 | 4/25/2011 | 10/1/2010 | -1814.05 | 0 | 0 | 0 |
| 590 | 10/17/2011 | 10/1/2010 | -2572.7 | 0 | 0 | 0 |
| 590 | 2/9/2012 | 10/1/2010 | -3173.21 | 0 | 0 | 0 |
| 520 | 4/9/2012 | 10/1/2010 | -411 | 0 | 0 | 0 |
| 20 | 5/30/2012 | 10/1/2010 | 2057.04 | 0 | 0 | 0 |
| 20 | 7/3/2012 | 10/1/2010 | 2057.04 | 0 | 0 | 0 |
| 20 | 7/5/2012 | 10/1/2010 | -2776.13 | 0 | 0 | 0 |
| 10 | 7/5/2012 | 11/1/2010 | 2776.13 | 1994.69 | 0 | 201.77 |
| 590 | 7/18/2012 | 11/1/2010 | -2539.59 | 0 | 0 | 0 |
| 20 | 8/1/2012 | 11/1/2010 | 2057.04 | 0 | 0 | 0 |
| 20 | 8/2/2012 | 11/1/2010 | -2776.13 | 0 | 0 | 0 |
| 10 | 8/2/2012 | 12/1/2010 | 2776.13 | 1993.6 | 0 | 202.86 |
| 20 | 8/22/2012 | 12/1/2010 | 0 | 0 | 0 | -9190.71 |
| 20 | 8/22/2012 | 12/1/2010 | 0 | 0 | 0 | 618.86 |
| 940 | 8/22/2012 | 8/1/2012 | -39633.08 | 0 | 0 | -39633.08 |
| 944 | 8/22/2012 | 8/1/2012 | 0 | 0 | 0 | 0 |
| 20 | 11/9/2012 | 8/1/2012 | 5484.18 | 0 | 0 | 0 |
| 20 | 11/13/2012 | 8/1/2012 | -4163.3 | 0 | 0 | 0 |
| 10 | 11/13/2012 | 9/1/2012 | 2081.65 | 1126.8 | 0 | 423.16 |
| 10 | 11/13/2012 | 10/1/2012 | 2081.65 | 1125.66 | 0 | 424.3 |
| 20 | 11/28/2012 | 10/1/2012 | -1320.88 | 0 | 0 | 0 |
| 10 | 11/28/2012 | 11/1/2012 | 2081.65 | 1124.51 | 0 | 425.45 |
| 10 | 11/28/2012 | 12/1/2012 | 2081.65 | 1123.36 | 0 | 426.6 |
| 10 | 1/16/2013 | 1/1/2013 | 2081.65 | 1122.2 | 0 | 427.76 |
| 590 | 2/4/2013 | 1/1/2013 | -3142.04 | 0 | 0 | 0 |
| 946 | 3/18/2013 | 3/1/2013 | 77.49 | 0 | 0 | 0 |
| 520 | 4/8/2013 | 1/1/2013 | -491 | 0 | 0 | 0 |
| 946 | 4/16/2013 | 4/1/2013 | 77.49 | 0 | 0 | 0 |
| 10 | 4/24/2013 | 2/1/2013 | 2081.65 | 1121.04 | 0 | 428.92 |
| 10 | 4/24/2013 | 3/1/2013 | 2081.65 | 1119.88 | 0 | 430.08 |
| 10 | 4/24/2013 | 4/1/2013 | 2081.94 | 1118.72 | 0 | 431.24 |
| 10 | 4/24/2013 | 5/1/2013 | 2081.36 | 1117.55 | 0 | 432.41 |
| 20 | 4/24/2013 | 5/1/2013 | 789.69 | 0 | 0 | 0 |
| 590 | 7/9/2013 | 5/1/2013 | -2033.54 | 0 | 0 | 0 |
| 10 | 8/20/2013 | 6/1/2013 | 2081.94 | 1116.38 | 0 | 433.58 |
| 10 | 9/16/2013 | 7/1/2013 | 2081.94 | 1115.2 | 0 | 434.76 |
| 20 | 11/1/2013 | 7/1/2013 | 1574.68 | 0 | 0 | 0 |
| 20 | 12/4/2013 | 7/1/2013 | 1574.68 | 0 | 0 | 0 |
| 20 | 12/5/2013 | 7/1/2013 | -2081.94 | 0 | 0 | 0 |
| 10 | 12/5/2013 | 8/1/2013 | 2081.94 | 1114.03 | 0 | 435.93 |
| 20 | 1/2/2014 | 8/1/2013 | 1574.68 | 0 | 0 | 0 |
| 20 | 1/6/2014 | 8/1/2013 | -2024.09 | 0 | 0 | 0 |
| 10 | 1/6/2014 | 9/1/2013 | 2024.09 | 1112.85 | 0 | 437.11 |
| 20 | 2/3/2014 | 9/1/2013 | 1578.93 | 0 | 0 | 0 |
| 20 | 2/4/2014 | 9/1/2013 | 0 | 0 | 0 | -3471.18 |
| 20 | 2/4/2014 | 9/1/2013 | 0 | 0 | 0 | 618.01 |
| 940 | 2/4/2014 | 1/1/2014 | -4439.5 | 0 | 0 | -4439.5 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 944 | 2/4/2014 | 1/1/2014 | 0 | 0 | 0 | 0 |
| 940 | 2/4/2014 | 1/1/2014 | 90352.29 | 0 | 0 | 90352.29 |
| 20 | 2/6/2014 | 1/1/2014 | -1578.93 | 0 | 0 | 0 |
| 20 | 2/6/2014 | 1/1/2014 | 1578.93 | 0 | 0 | 0 |
| 947 | 2/7/2014 | 3/1/2013 | 77.49 | 0 | 0 | 0 |
| 947 | 2/7/2014 | 4/1/2013 | 77.49 | 0 | 0 | 0 |
| 20 | 2/7/2014 | 1/1/2014 | -1578.93 | 0 | 0 | 0 |
| 10 | 2/7/2014 | 2/1/2014 | 1578.93 | 647.98 | 0 | 432.59 |
| 20 | 2/7/2014 | 2/1/2014 | -3471.18 | 0 | 0 | 0 |
| 590 | 2/7/2014 | 2/1/2014 | -2846.57 | 0 | 0 | 0 |
| 20 | 2/25/2014 | 2/1/2014 | 3411.18 | 0 | 0 | 0 |
| 20 | 2/26/2014 | 2/1/2014 | -3411.18 | 0 | 0 | 0 |
| 20 | 2/26/2014 | 2/1/2014 | 1832.25 | 0 | 0 | 1832.25 |
| 10 | 2/26/2014 | 3/1/2014 | 1578.93 | 646.4 | 0 | 434.17 |
| 10 | 3/3/2014 | 4/1/2014 | 1578.93 | 642.64 | 0 | 437.93 |
| 10 | 4/2/2014 | 5/1/2014 | 1578.93 | 641.77 | 0 | 438.8 |
| 520 | 4/7/2014 | 5/1/2014 | -566 | 0 | 0 | 0 |
| 20 | 4/30/2014 | 5/1/2014 | 21.07 | 0 | 0 | 21.07 |
| 10 | 4/30/2014 | 6/1/2014 | 1578.93 | 640.86 | 0 | 439.71 |
| 10 | 6/9/2014 | 7/1/2014 | 1578.93 | 639.99 | 0 | 440.58 |
| 590 | 7/10/2014 | 7/1/2014 | -2698.69 | 0 | 0 | 0 |
| 946 | 8/18/2014 | 8/1/2014 | 54.02 | 0 | 0 | 0 |
| 10 | 9/15/2014 | 8/1/2014 | 1578.93 | 639.12 | 0 | 441.45 |
| 946 | 9/16/2014 | 9/1/2014 | 54.02 | 0 | 0 | 0 |
| 10 | 10/6/2014 | 9/1/2014 | 1578.93 | 638.24 | 0 | 442.33 |
| 946 | 10/16/2014 | 10/1/2014 | 54.02 | 0 | 0 | 0 |
| 20 | 12/2/2014 | 9/1/2014 | 1617.22 | 0 | 0 | 0 |
| 590 | 2/3/2015 | 9/1/2014 | -3049.89 | 0 | 0 | 0 |
| 20 | 2/20/2015 | 9/1/2014 | -1617.22 | 0 | 0 | 0 |
| 10 | 2/20/2015 | 10/1/2014 | 1617.22 | 637.37 | 0 | 443.2 |
| 520 | 4/7/2015 | 10/1/2014 | -604 | 0 | 0 | 0 |
| 946 | 5/18/2015 | 5/1/2015 | 54.02 | 0 | 0 | 0 |
| 590 | 7/14/2015 | 10/1/2014 | -2018.53 | 0 | 0 | 0 |
| 947 | 8/3/2015 | 10/1/2014 | 54.02 | 0 | 0 | 0 |
| 947 | 8/3/2015 | 5/1/2015 | 54.02 | 0 | 0 | 0 |
| 947 | 12/29/2015 | 9/1/2014 | 54.02 | 0 | 0 | 0 |
| 947 | 12/29/2015 | 8/1/2014 | 54.02 | 0 | 0 | 0 |
| 10 | 12/29/2015 | 11/1/2014 | 1603.5 | 636.49 | 0 | 444.08 |
| 10 | 12/29/2015 | 12/1/2014 | 1603.5 | 635.61 | 0 | 444.96 |
| 10 | 12/29/2015 | 1/1/2015 | 1603.5 | 634.73 | 0 | 445.84 |
| 10 | 12/29/2015 | 2/1/2015 | 1603.5 | 633.85 | 0 | 446.72 |
| 10 | 12/29/2015 | 3/1/2015 | 1603.5 | 632.97 | 0 | 447.6 |
| 10 | 12/29/2015 | 4/1/2015 | 1603.5 | 632.08 | 0 | 448.49 |
| 10 | 12/29/2015 | 5/1/2015 | 1603.5 | 631.19 | 0 | 449.38 |
| 10 | 12/29/2015 | 6/1/2015 | 1603.5 | 630.3 | 0 | 450.27 |
| 10 | 12/29/2015 | 7/1/2015 | 1603.5 | 629.41 | 0 | 451.16 |
| 10 | 12/29/2015 | 8/1/2015 | 1603.5 | 628.52 | 0 | 452.05 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 | 12/29/2015 | 9/1/2015 | 1603.5 | 627.62 | 0 | 452.95 |
| 10 | 12/29/2015 | 10/1/2015 | 1603.5 | 626.73 | 0 | 453.84 |
| 10 | 12/29/2015 | 11/1/2015 | 1603.5 | 625.83 | 0 | 454.74 |
| 20 | 12/29/2015 | 11/1/2015 | -64.29 | 0 | 0 | 0 |
| 10 | 12/29/2015 | 12/1/2015 | 1667.79 | 624.93 | 0 | 455.64 |
| 20 | 12/29/2015 | 12/1/2015 | 30 | 0 | 0 | 30 |
| 20 | 12/29/2015 | 12/1/2015 | 0.06 | 0 | 0 | 0.06 |
| 20 | 12/29/2015 | 12/1/2015 | -0.06 | 0 | 0 | -0.06 |
| 20 | 12/29/2015 | 12/1/2015 | 0.06 | 0 | 0 | 0 |
| 10 | 1/11/2016 | 1/1/2016 | 1582.07 | 624.01 | 0 | 456.56 |
| 20 | 1/11/2016 | 1/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 590 | 2/5/2016 | 1/1/2016 | -2787.63 | 0 | 0 | 0 |
| 10 | 2/8/2016 | 2/1/2016 | 1582.07 | 622.99 | 0 | 457.58 |
| 10 | 3/10/2016 | 3/1/2016 | 1582.07 | 622.07 | 0 | 458.5 |
| 20 | 3/10/2016 | 3/1/2016 | 31.55 | 0 | 0 | 31.55 |
| 520 | 4/7/2016 | 3/1/2016 | -635 | 0 | 0 | 0 |
| 10 | 4/8/2016 | 4/1/2016 | 1582.07 | 621.11 | 0 | 459.46 |
| 20 | 4/8/2016 | 4/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 10 | 5/16/2016 | 5/1/2016 | 1582.07 | 620.11 | 0 | 460.46 |
| 20 | 5/16/2016 | 5/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 10 | 6/13/2016 | 6/1/2016 | 1582.07 | 619.11 | 0 | 461.46 |
| 20 | 6/13/2016 | 6/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 10 | 7/8/2016 | 7/1/2016 | 1582.07 | 618.1 | 0 | 462.47 |
| 20 | 7/8/2016 | 7/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 590 | 7/14/2016 | 7/1/2016 | -3301.2 | 0 | 0 | 0 |
| 10 | 8/11/2016 | 8/1/2016 | 1582.07 | 617.09 | 0 | 463.48 |
| 20 | 8/11/2016 | 8/1/2016 | 46.55 | 0 | 0 | 0 |
| 520 | 8/12/2016 | 8/1/2016 | -451 | 0 | 0 | 0 |
| 10 | 9/9/2016 | 9/1/2016 | 1710.01 | 616.16 | 0 | 464.41 |
| 946 | 10/17/2016 | 10/1/2016 | 54.02 | 0 | 0 | 0 |
| 946 | 11/16/2016 | 11/1/2016 | 54.02 | 0 | 0 | 0 |
| 946 | 12/16/2016 | 12/1/2016 | 54.02 | 0 | 0 | 0 |
| 590 | 2/14/2017 | 9/1/2016 | -3348.86 | 0 | 0 | 0 |
| 20 | 6/1/2017 | 9/1/2016 | 1626.06 | 0 | 0 | 0 |
| 520 | 6/21/2017 | 9/1/2016 | -483 | 0 | 0 | 0 |
| 20 | 7/3/2017 | 9/1/2016 | 1626.06 | 0 | 0 | 0 |
| 20 | 7/5/2017 | 9/1/2016 | -1710.01 | 0 | 0 | 0 |
| 10 | 7/5/2017 | 10/1/2016 | 1710.01 | 615.24 | 0 | 465.33 |
| 590 | 7/13/2017 | 10/1/2016 | -3188.67 | 0 | 0 | 0 |
| 20 | 8/4/2017 | 10/1/2016 | 1626.06 | 0 | 0 | 0 |
| 20 | 8/7/2017 | 10/1/2016 | -1710.01 | 0 | 0 | 0 |
| 10 | 8/7/2017 | 11/1/2016 | 1710.01 | 614.32 | 0 | 466.25 |
| 20 | 8/24/2017 | 11/1/2016 | 0 | 0 | 0 | -9027.79 |
| 20 | 8/24/2017 | 11/1/2016 | 0 | 0 | 0 | 1458.16 |
| 940 | 8/24/2017 | 8/1/2017 | -5487.15 | 0 | 0 | -5487.15 |
| 944 | 8/24/2017 | 8/1/2017 | 0 | 0 | 0 | 0 |
| 947 | 8/28/2017 | 10/1/2016 | 54.02 | 0 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | | | | |
|---|---|---|---|---|---|---|
| 947 | 8/28/2017 | 11/1/2016 | 54.02 | 0 | 0 | 0 |
| 947 | 8/28/2017 | 12/1/2016 | 54.02 | 0 | 0 | 0 |
| 20 | 8/28/2017 | 8/1/2017 | -2907.7 | 0 | 0 | 0 |
| 946 | 9/18/2017 | 9/1/2017 | 51.05 | 0 | 0 | 0 |
| 10 | 10/3/2017 | 9/1/2017 | 1642.36 | 605.6 | 0 | 415.49 |
| 946 | 10/16/2017 | 10/1/2017 | 51.05 | 0 | 0 | 0 |
| 20 | 10/17/2017 | 9/1/2017 | 20 | 0 | 0 | 0 |
| 20 | 10/17/2017 | 9/1/2017 | 10 | 0 | 0 | 0 |
| 20 | 10/18/2017 | 9/1/2017 | 20 | 0 | 0 | 0 |
| 20 | 10/19/2017 | 9/1/2017 | -20 | 0 | 0 | 0 |
| 20 | 10/19/2017 | 9/1/2017 | -10 | 0 | 0 | 0 |
| 20 | 10/19/2017 | 9/1/2017 | -20 | 0 | 0 | 0 |
| 10 | 11/3/2017 | 10/1/2017 | 1642.36 | 604.82 | 0 | 416.27 |
| 946 | 11/16/2017 | 11/1/2017 | 51.05 | 0 | 0 | 0 |
| 946 | 12/18/2017 | 12/1/2017 | 51.05 | 0 | 0 | 0 |
| 10 | 1/3/2018 | 11/1/2017 | 1642.36 | 604.04 | 0 | 417.05 |
| 946 | 1/16/2018 | 1/1/2018 | 51.05 | 0 | 0 | 0 |
| 10 | 2/2/2018 | 12/1/2017 | 1642.36 | 603.25 | 0 | 417.84 |
| 590 | 2/13/2018 | 12/1/2017 | -3595.64 | 0 | 0 | 0 |
| 10 | 3/7/2018 | 1/1/2018 | 1642.36 | 602.47 | 0 | 418.62 |
| 520 | 6/5/2018 | 1/1/2018 | -559 | 0 | 0 | 0 |
| 590 | 7/12/2018 | 1/1/2018 | -2973.7 | 0 | 0 | 0 |
| 520 | 2/13/2019 | 1/1/2018 | -649 | 0 | 0 | 0 |
| 590 | 2/13/2019 | 1/1/2018 | -3613.14 | 0 | 0 | 0 |
| 590 | 7/16/2019 | 1/1/2018 | -3439.14 | 0 | 0 | 0 |

| TRNPBL | TRNESC | TRNEBL | TRNLTC | TRNLCB |
|---|---|---|---|---|
| 331287.84 | -2786.63 | 1637.88 | 0 | -2509.96 |
| 331287.84 | -2544.3 | -1148.75 | 0 | -2509.96 |
| 331287.84 | 0 | -3693.05 | 1576.2 | -2509.96 |
| 331287.84 | 0 | -3693.05 | 0 | -933.76 |
| 331287.84 | 0 | -3693.05 | 0 | -933.76 |
| 363018.7 | 0 | -3693.05 | 0 | -933.76 |
| 363018.7 | 6608.14 | -3693.05 | 0 | -933.76 |
| 363018.7 | 622 | 2915.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 454.34 | 3537.09 | 0 | -933.76 |
| 362650.74 | 0 | 3991.43 | 0 | -933.76 |
| 362650.74 | 0 | 3991.43 | 0 | -933.76 |
| 362650.74 | 0 | 3991.43 | 0 | -933.76 |
| 359590.25 | -437.46 | 3991.43 | 0 | -933.76 |
| 359590.25 | 444.24 | 3553.97 | 0 | -933.76 |
| 359203.72 | 0 | 3998.21 | 0 | -933.76 |
| 359140.2 | -2665.47 | 3998.21 | 0 | -933.76 |
| 359140.2 | -2418.14 | 1332.74 | 0 | -933.76 |
| 359140.2 | 444.23 | -1085.4 | 0 | -933.76 |
| 358751.23 | -2541.81 | -641.17 | 0 | -1050.48 |
| 358751.23 | 0 | -3182.98 | 1050.48 | -1050.48 |
| 358751.23 | 444.24 | -3182.98 | 0 | 0 |
| 358360.16 | 444.24 | -2738.74 | 0 | 0 |
| 357966.97 | 444.24 | -2294.5 | 0 | 0 |
| 357571.65 | 444.24 | -1850.26 | 0 | 0 |
| 357174.19 | 444.24 | -1406.02 | 0 | 0 |
| 356774.57 | 444.24 | -961.78 | 0 | 0 |
| 356372.79 | 444.24 | -517.54 | 0 | 0 |
| 355968.83 | 444.24 | -73.3 | 0 | 0 |
| 355562.68 | 0 | 370.94 | 0 | 0 |
| 355562.68 | 444.24 | 370.94 | 0 | 0 |
| 355154.33 | 444.24 | 815.18 | 0 | 0 |
| 354743.77 | 0 | 1259.42 | 0 | 0 |
| 354743.77 | 444.24 | 1259.42 | 0 | 0 |
| 354330.99 | -2554.37 | 1703.66 | 0 | 0 |
| 354330.99 | -2548.09 | -850.71 | 0 | 0 |
| 354330.99 | 444.24 | -3398.8 | 0 | 0 |
| 353915.97 | 444.24 | -2954.56 | 0 | 0 |
| 353498.7 | 444.24 | -2510.32 | 0 | 0 |
| 353079.17 | 444.24 | -2066.08 | 0 | 0 |
| 352657.37 | 444.24 | -1621.84 | 0 | 0 |
| 352233.29 | 444.24 | -1177.6 | 0 | 0 |

| | | | | |
|---|---|---|---|---|
| 351806.91 | 0 | -733.36 | 0 | 0 |
| 351806.91 | 409.05 | -733.36 | 0 | 0 |
| 351378.22 | 444.24 | -324.31 | 0 | 0 |
| 350947.21 | 444.24 | 119.93 | 0 | 0 |
| 350513.86 | 0 | 564.17 | 0 | 0 |
| 350513.86 | 0 | 564.17 | 0 | 0 |
| 365702.82 | 0 | 564.17 | 0 | 0 |
| 371526.24 | 0 | 564.17 | 0 | 0 |
| 371526.24 | 5823.42 | 564.17 | 0 | 0 |
| 371526.24 | -2957.21 | 6387.59 | 0 | 0 |
| 371526.24 | 0 | 3430.38 | 0 | 0 |
| 371526.24 | 0 | 3430.38 | 0 | 0 |
| 371526.24 | 0 | 3430.38 | 0 | 0 |
| 371526.24 | 0 | 3430.38 | 0 | 0 |
| 371526.24 | -453.97 | 3430.38 | 0 | 0 |
| 371526.24 | 425.21 | 2976.41 | 0 | 0 |
| 371342.21 | 0 | 3401.62 | 0 | 0 |
| 370963.88 | 425.21 | 3401.62 | 0 | 0 |
| 370776.81 | 425.21 | 3826.83 | 0 | 0 |
| 370588.72 | 425.21 | 4252.04 | 0 | 0 |
| 370399.62 | -3635.94 | 4677.25 | 0 | 0 |
| 370399.62 | 425.21 | 1041.31 | 0 | 0 |
| 370209.49 | 425.21 | 1466.52 | 0 | 0 |
| 370018.33 | 657.97 | 1891.73 | 0 | 0 |
| 369826.14 | -3401.22 | 2549.7 | 0 | 0 |
| 369826.14 | 657.97 | -851.52 | 0 | 0 |
| 369632.9 | 657.97 | -193.55 | 0 | 0 |
| 369438.62 | -391 | 464.42 | 0 | 0 |
| 369438.62 | 657.97 | 73.42 | 0 | 0 |
| 369243.29 | 657.97 | 731.39 | 0 | 0 |
| 369046.9 | 657.97 | 1389.36 | 0 | 0 |
| 368849.44 | 657.97 | 2047.33 | 0 | 0 |
| 368650.91 | 0 | 2705.3 | 0 | 0 |
| 368650.91 | 0 | 2705.3 | 0 | 0 |
| 368650.91 | 0 | 2705.3 | 0 | 0 |
| 368650.91 | 799.33 | 2705.3 | 0 | 0 |
| 368451.31 | 4.21 | 3504.63 | 0 | 0 |
| 368451.31 | 0 | 3508.84 | 0 | 0 |
| 368451.31 | -2411.08 | 3508.84 | 0 | 0 |
| 368451.31 | 0 | 1097.76 | 0 | 0 |
| 368451.31 | 0 | 1097.76 | 0 | 0 |
| 368451.31 | 579.67 | 1097.76 | 109.82 | 0 |
| 368250.63 | 0 | 1677.43 | 0 | 0 |
| 368250.63 | -3196.77 | 1677.43 | 0 | 0 |
| 368250.63 | 0 | -1519.34 | 0 | 0 |
| 368250.63 | 0 | -1519.34 | 0 | 0 |
| 368250.63 | -481 | -1519.34 | 0 | 0 |

| | | | | |
|---|---|---|---|---|
| 368250.63 | 0 | -2000.34 | 0 | 0 |
| 368250.63 | -2572.7 | -2000.34 | 0 | 0 |
| 368250.63 | -3173.21 | -4573.04 | 0 | 0 |
| 368250.63 | -411 | -7746.25 | 0 | 0 |
| 368250.63 | 0 | -8157.25 | 0 | 0 |
| 368250.63 | 0 | -8157.25 | 0 | 0 |
| 368250.63 | 0 | -8157.25 | 0 | 0 |
| 368250.63 | 579.67 | -8157.25 | 0 | 0 |
| 368048.86 | -2539.59 | -7577.58 | 0 | 0 |
| 368048.86 | 0 | -10117.17 | 0 | 0 |
| 368048.86 | 0 | -10117.17 | 0 | 0 |
| 368048.86 | 579.67 | -10117.17 | 0 | 0 |
| 367846 | 9190.71 | -9537.5 | 0 | 0 |
| 377036.71 | 0 | -346,79 | 0 | 0 |
| 376417.85 | 0 | -346.79 | 0 | 0 |
| 416050.93 | 0 | -346.79 | 0 | 0 |
| 416050.93 | 0 | -346.79 | 0 | 0 |
| 416050.93 | 0 | -346.79 | 0 | 0 |
| 416050.93 | 531.69 | -346.79 | 0 | 0 |
| 415627.77 | 531.69 | 184.9 | 0 | 0 |
| 415203.47 | 0 | 716.59 | 0 | 0 |
| 415203.47 | 531.69 | 716.59 | 0 | 0 |
| 414778.02 | 531.69 | 1248.28 | 0 | 0 |
| 414351.42 | 531.69 | 1779.97 | 0 | 0 |
| 413923.66 | -3142.04 | 2311.66 | 0 | 0 |
| 413923.66 | 0 | -830.38 | 0 | 0 |
| 413923.66 | -491 | -830.38 | 0 | -77.49 |
| 413923.66 | 0 | -1321.38 | 0 | -77.49 |
| 413923.66 | 531.69 | -1321.38 | 0 | -154.98 |
| 413494.74 | 531.69 | -789.69 | 0 | -154.98 |
| 413064.66 | 531.98 | -258 | 0 | -154.98 |
| 412633.42 | 531.98 | 273.98 | 0 | -154.98 |
| 412201.01 | 789.69 | 805.38 | 0 | -154.98 |
| 412201.01 | -2033.54 | 1595.07 | 0 | -154.98 |
| 412201.01 | 531.98 | -438.47 | 0 | -154.98 |
| 411767.43 | 531.98 | 93.51 | 0 | -154.98 |
| 411332.67 | 0 | 625.49 | 0 | -154.98 |
| 411332.67 | 0 | 625.49 | 0 | -154.98 |
| 411332.67 | 0 | 625.49 | 0 | -154.98 |
| 411332.67 | 531.98 | 625.49 | 0 | -154.98 |
| 410896.74 | 0 | 1157.47 | 0 | -154.98 |
| 410896.74 | 0 | 1157.47 | 0 | -154.98 |
| 410896.74 | 474.13 | 1157.47 | 0 | -154.98 |
| 410459.63 | 0 | 1631.6 | 0 | -154.98 |
| 410459.63 | 0 | 1631.6 | 0 | -154.98 |
| 413930.81 | 0 | 1631.6 | 0 | -154.98 |
| 413312.8 | 0 | 1631.6 | 0 | -154.98 |

| | | | | |
|---|---|---|---|---|
| 417752.3 | 0 | 1631.6 | 0 | -154.98 |
| 417752.3 | 0 | 1631.6 | 0 | -154.98 |
| 327400.01 | 0 | 1631.6 | 0 | -154.98 |
| 327400.01 | 0 | 1631.6 | 0 | -154.98 |
| 327400.01 | 0 | 1631.6 | 0 | -154.98 |
| 327400.01 | 0 | 1631.6 | 0 | -77.49 |
| 327400.01 | 0 | 1631.6 | 0 | 0 |
| 327400.01 | 498.36 | 1631.6 | 0 | 0 |
| 326967.42 | 0 | 2129.96 | 0 | 0 |
| 326967.42 | -2846.57 | 2129.96 | 0 | 0 |
| 326967.42 | 0 | -716.61 | 0 | 0 |
| 326967.42 | 0 | -716.61 | 0 | 0 |
| 326967.42 | 0 | -716.61 | 0 | 0 |
| 325135.17 | 498.36 | -716.61 | 0 | 0 |
| 324701 | 498.36 | -218.25 | 0 | 0 |
| 324263.07 | 498.36 | 280.11 | 0 | 0 |
| 323824.27 | -566 | 778.47 | 0 | 0 |
| 323824.27 | 0 | 212.47 | 0 | 0 |
| 323803.2 | 498.36 | 212.47 | 0 | 0 |
| 323363.49 | 498.36 | 710.83 | 0 | 0 |
| 322922.91 | -2698.69 | 1209.19 | 0 | 0 |
| 322922.91 | 0 | -1489.5 | 0 | 0 |
| 322922.91 | 498.36 | -1489.5 | 0 | -54.02 |
| 322481.46 | 0 | -991.14 | 0 | -54.02 |
| 322481.46 | 498.36 | -991.14 | 0 | -108.04 |
| 322039.13 | 0 | -492.78 | 0 | -108.04 |
| 322039.13 | 0 | -492.78 | 0 | -162.06 |
| 322039.13 | -3049.89 | -492.78 | 0 | -162.06 |
| 322039.13 | 0 | -3542.67 | 0 | -162.06 |
| 322039.13 | 548.05 | -3542.67 | 0 | -162.06 |
| 321595.93 | -604 | -3006.02 | 0 | -162.06 |
| 321595.93 | 0 | -3610.02 | 0 | -162.06 |
| 321595.93 | -2018.53 | -3610.02 | 0 | -216.08 |
| 321595.93 | 0 | -5628.55 | 0 | -216.08 |
| 321595.93 | 0 | -5628.55 | 0 | -162.06 |
| 321595.93 | 0 | -5628.55 | 0 | -108.04 |
| 321595.93 | 0 | -5628.55 | 0 | -54.02 |
| 321595.93 | 548.05 | -5628.55 | 0 | 0 |
| 321151.85 | 529.67 | -5105.62 | 0 | 0 |
| 320706.89 | 529.67 | -4582.69 | 0 | 0 |
| 320261.05 | 529.67 | -4059.76 | 0 | 0 |
| 319814.33 | 529.67 | -3536.83 | 0 | 0 |
| 319366.73 | 529.67 | -3013.9 | 0 | 0 |
| 318918.24 | 529.67 | -2490.97 | 0 | 0 |
| 318468.86 | 529.67 | -1968.04 | 0 | 0 |
| 318018.59 | 529.67 | -1445.11 | 0 | 0 |
| 317567.43 | 529.67 | -922.18 | 0 | 0 |

| | | | | |
|---|---|---|---|---|
| 317115.38 | 501.5 | -399.25 | 0 | 0 |
| 316662.43 | 501.5 | 102.25 | 0 | 0 |
| 316208.59 | 501.5 | 603.75 | 0 | 0 |
| 315753.85 | 0 | 1105.25 | 0 | 0 |
| 315753.85 | 501.5 | 1105.25 | 0 | 0 |
| 315298.21 | 0 | 1692.47 | 0 | 0 |
| 315268.21 | 0 | 1692.47 | 0 | 0 |
| 315268.15 | 0 | 1692.47 | 0 | 0 |
| 315268.21 | 0 | 1692.47 | 0 | 0 |
| 315268.21 | 501.5 | 1692.53 | 0 | 0 |
| 314811.65 | 0 | 2194.03 | 0 | 0 |
| 314765.1 | -2787.63 | 2194.03 | 0 | 0 |
| 314765.1 | 501.5 | -593.6 | 0 | 0 |
| 314307.52 | 501.5 | -92.1 | 0 | 0 |
| 313849.02 | 0 | 409.4 | 0 | 0 |
| 313817.47 | -635 | 409.4 | 0 | 0 |
| 313817.47 | 501.5 | -225.6 | 0 | 0 |
| 313358.01 | 0 | 275.9 | 0 | 0 |
| 313311.46 | 501.5 | 275.9 | 0 | 0 |
| 312851 | 0 | 777.4 | 0 | 0 |
| 312804.45 | 501.5 | 777.4 | 0 | 0 |
| 312342.99 | 0 | 1278.9 | 0 | 0 |
| 312296.44 | 501.5 | 1278.9 | 0 | 0 |
| 311833.97 | 0 | 1780.4 | 0 | 0 |
| 311787.42 | -3301.2 | 1780.4 | 0 | 0 |
| 311787.42 | 501.5 | -1520.8 | 0 | 0 |
| 311323.94 | 46.55 | -1019.3 | 0 | 0 |
| 311323.94 | -451 | -972.75 | 0 | 0 |
| 311323.94 | 629.44 | -1423.75 | 0 | 0 |
| 310859.53 | 0 | -794.31 | 0 | 0 |
| 310859.53 | 0 | -794.31 | 0 | -54.02 |
| 310859.53 | 0 | -794.31 | 0 | -108.04 |
| 310859.53 | -3348.86 | -794.31 | 0 | -162.06 |
| 310859.53 | 0 | -4143.17 | 0 | -162.06 |
| 310859.53 | -483 | -4143.17 | 0 | -162.06 |
| 310859.53 | 0 | -4626.17 | 0 | -162.06 |
| 310859.53 | 0 | -4626.17 | 0 | -162.06 |
| 310859.53 | 629.44 | -4626.17 | 0 | -162.06 |
| 310394.2 | -3188.67 | -3996.73 | 0 | -162.06 |
| 310394.2 | 0 | -7185.4 | 0 | -162.06 |
| 310394.2 | 0 | -7185.4 | 0 | -162.06 |
| 310394.2 | 629.44 | -7185.4 | 0 | -162.06 |
| 309927.95 | 6120.09 | -6555.96 | 0 | -162.06 |
| 318955.74 | 0 | -435.87 | 0 | -162.06 |
| 317497.58 | 0 | -435.87 | 0 | -162.06 |
| 322984.73 | 0 | -435.87 | 0 | -162.06 |
| 322984.73 | 0 | -435.87 | 0 | -162.06 |

* 5 0 2 4 7 3 9 3 *

| | | | | |
|---|---|---|---|---|
| 322984.73 | 0 | -435.87 | 0 | -108.04 |
| 322984.73 | 0 | -435.87 | 0 | -54.02 |
| 322984.73 | 0 | -435.87 | 0 | 0 |
| 322984.73 | 0 | -435.87 | 0 | 0 |
| 322984.73 | 621.27 | -435.87 | 0 | -51.05 |
| 322569.24 | 0 | 185.4 | 0 | -51.05 |
| 322569,24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569,24 | 621.27 | 185.4 | 0 | -102.1 |
| 322152.97 | 0 | 806.67 | 0 | -102.1 |
| 322152.97 | 0 | 806.67 | 0 | -153.15 |
| 322152.97 | 621.27 | 806.67 | 0 | -204.2 |
| 321735.92 | 0 | 1427.94 | 0 | -204.2 |
| 321735.92 | 621.27 | 1427.94 | 0 | -255.25 |
| 321318.08 | -3595.64 | 2049.21 | 0 | -255.25 |
| 321318.08 | 621.27 | -1546.43 | 0 | -255.25 |
| 320899.46 | -559 | -925.16 | 0 | -255.25 |
| 320899.46 | -2973.7 | -1484.16 | 0 | -255.25 |
| 320899.46 | -649 | -4457.86 | 0 | -255.25 |
| 320899.46 | -3613.14 | -5106.86 | 0 | -255.25 |
| 320899.46 | -3439.14 | -8720 | 0 | -255,25 |

* 5 0 2 4 7 3 9 3 *

| TRPTPY | TRPPBL | LTCANP | TRNESV |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 10089.14 | 0 | 0 | 0 |
| 0 | 10089.14 | 0 | 0 |
| 0 | 10089.14 | 0 | 0 |
| 0 | 10089.14 | 0 | 0 |
| -922 | 10089.14 | 0 | 0 |
| -310 | 9167.14 | 0 | 0 |
| -95 | 8857.14 | 0 | 0 |
| -999.99 | 8762.14 | 0 | 0 |
| -999.99 | 7762.15 | 0 | 0 |
| -673.02 | 6762.16 | 0 | 0 |
| -2788.65 | 6089.14 | 0 | 0 |
| -150 | 3300.49 | 0 | 0 |
| -90 | 3150.49 | 0 | 0 |
| -3060.49 | 3060.49 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -116.72 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 1328.7 | 0 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 753.35 | 1328.7 | 0 | 0 |
| 0 | 2082.05 | 0 | 0 |
| -2082.05 | 2082.05 | 0 | 0 |
| 753.35 | 0 | 0 | 0 |
| 0 | 753.35 | 0 | 0 |
| -753.35 | 753.35 | 0 | 0 |
| 1221.45 | 0 | 0 | 0 |
| 0 | 1221.45 | 0 | 0 |
| 0 | 1221.45 | 0 | 0 |
| 473.97 | 1221.45 | 0 | 0 |
| 0 | 1695.42 | 0 | 0 |
| 473.97 | 1695.42 | 0 | 0 |
| 0 | 2169.39 | 0 | 0 |
| 473.97 | 2169.39 | 0 | 0 |
| 0 | 2643.36 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | |
|---:|---:|---:|---:|
| 100 | 2643.36 | 0 | 0 |
| -2743.36 | 2743.36 | 0 | 0 |
| 473.97 | 0 | 0 | 0 |
| 0 | 473.97 | 0 | 0 |
| 0 | 473.97 | 0 | 0 |
| 0 | 473.97 | 0 | 0 |
| 0 | 473.97 | 0 | 0 |
| 5823.42 | 473.97 | 0 | 0 |
| -5823.42 | 6297.39 | 0 | 0 |
| 2937.21 | 473.97 | 0 | 0 |
| -999.99 | 3411.18 | 0 | 0 |
| -999.99 | 2411.19 | 0 | 0 |
| -999.99 | 1411.2 | 0 | 0 |
| -411.21 | 411.21 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 1500 | 0 | 0 | 0 |
| 1500 | 1500 | 0 | 0 |
| -2995.79 | 3000 | 0 | 0 |
| 0 | 4.21 | 0 | 0 |
| -4.21 | 4.21 | 0 | 0 |
| 1500 | 0 | 0 | 0 |
| 0 | 1500 | 0 | 0 |
| 1000 | 1500 | 0 | 0 |
| 1000 | 2500 | 0 | 0 |
| 109.84 | 3500 | 0 | 0 |
| -2995.79 | 3609.84 | 0 | 0 |
| 0 | 614.05 | 0 | 0 |
| 700 | 614.05 | 0 | 0 |
| 500 | 1314.05 | 0 | 0 |
| 0 | 1814.05 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | |
|---|---|---|---|
| -1814.05 | 1814.05 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 2057.04 | 0 | 0 | 0 |
| 2057.04 | 2057.04 | 0 | 0 |
| -2776.13 | 4114.08 | 0 | 0 |
| 0 | 1337.95 | 0 | 0 |
| 0 | 1337.95 | 0 | 0 |
| 2057.04 | 1337.95 | 0 | 0 |
| -2776.13 | 3394.99 | 0 | 0 |
| 0 | 618.86 | 0 | 0 |
| 0 | 618.86 | 0 | 0 |
| -618.86 | 618.86 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 5484.18 | 0 | 0 | 0 |
| -4163.3 | 5484.18 | 0 | 0 |
| 0 | 1320.88 | 0 | 0 |
| 0 | 1320.88 | 0 | 0 |
| -1320.88 | 1320.88 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -77.49 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -77.49 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | -0.58 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 1574.68 | 0 | 0 | 0 |
| 1574.68 | 1574.68 | 0 | 0 |
| -2081.94 | 3149.36 | 0 | 0 |
| 0 | 1067.42 | 0 | 0 |
| 1574.68 | 1067.42 | 0 | 0 |
| -2024.09 | 2642.1 | 0 | 0 |
| 0 | 618.01 | 0 | 0 |
| 1578.93 | 618.01 | 0 | 0 |
| 3471.18 | 2196.94 | 0 | 0 |
| -618.01 | 5668.12 | 0 | 0 |
| 0 | 5050.11 | 0 | 0 |

| | | | |
|---|---|---|---|
| 0 | 5050.11 | 0 | 0 |
| 0 | 5050.11 | 0 | 0 |
| -1578.93 | 5050.11 | 0 | 0 |
| 1578.93 | 3471.18 | 0 | 0 |
| 0 | 5050.11 | 0 | 0 |
| 0 | 5050.11 | 0 | 0 |
| -1578.93 | 5050.11 | 0 | 0 |
| 0 | 3471.18 | 0 | 0 |
| -3471.18 | 3471.18 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 3411.18 | 0 | 0 | 0 |
| -3411.18 | 3411.18 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 1617.22 | 0 | 0 | 0 |
| 0 | 1617.22 | 0 | 0 |
| -1617.22 | 1617.22 | 0 | 0 |
| 0 | 0 | 0 | -11.4 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | -25.12 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |

| | | | |
|---:|---:|---:|---:|
| 21.43 | 0 | 0 | 0 |
| 21.43 | 21.43 | 0 | 0 |
| 21.43 | 42.86 | 0 | 0 |
| -64.29 | 64.29 | 0 | 0 |
| 0 | 0 | 0 | 85.72 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0.06 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | 0 | 0 |
| 1626.06 | 0 | 0 | 0 |
| 0 | 1626.06 | 0 | 0 |
| 1626.06 | 1626.06 | 0 | 0 |
| -1710.01 | 3252.12 | 0 | 0 |
| 0 | 1542.11 | 0 | 0 |
| 0 | 1542.11 | 0 | 0 |
| 1626.06 | 1542.11 | 0 | 0 |
| -1710.01 | 3168.17 | 0 | 0 |
| 0 | 1458.16 | 0 | 0 |
| 2907.7 | 1458.16 | 0 | 0 |
| -1458.16 | 4365.86 | 0 | 0 |
| 0 | 2907.7 | 0 | 0 |
| 0 | 2907.7 | 0 | 0 |
| 0 | 2907.7 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | |
|---|---|---|---|
| 0 | 2907.7 | 0 | 0 |
| 0 | 2907.7 | 0 | 0 |
| -2907.7 | 2907.7 | 0 | 0 |
| 0 | 0 | -51.05 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -51.05 | 0 |
| 20 | 0 | 0 | 0 |
| 10 | 20 | 0 | 0 |
| 20 | 30 | 0 | 0 |
| -20 | 50 | 0 | 0 |
| -10 | 30 | 0 | 0 |
| -20 | 20 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -51.05 | 0 |
| 0 | 0 | -51.05 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -51.05 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |

# **<u>EXHIBIT C</u>**

* 5 0 2 4 7 3 9 3 *
FILED
11/4/2022 1:11 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH11534
Calendar, 62
20184694

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

U.S. Bank National Association, as Indenture　　)　　No. 2018-CH-11534
Trustee on Behalf of and with Respect to AJAX　)
Mortgage Loan Trust 2019-E, Mortgage-Backed　)
Securities, Series 2019-E,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　 )　　__Property Address:__
　　　　Plaintiff,　　　　　　　　　　　　　 )　　6800 N. Central Ave.
　　　　　　　　　　　　　　　　　　　　　　)　　Chicago, IL 60646
　　　　vs.　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　　)
Maureen W. Zomayah aka Maureen Zomayah;　 )
Youpi Y. Isho; Eddison Zomayah aka Eddison　 )
K. Zomayah; Illinois Development Authority;　　 )
Unknown Owners and Non-record Claimants,　　 )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　　　 )　　Calendar 62

### APPEARANCE

X General Appearance　　　　□ 0900 – Fee Paid　　　X 0909 – No Fee
　　　　　　　　　　　　　　□ 0904 – Fee Waived　　□ 0908 – Trial Lawyers Appearance – No fee

The undersigned enters the appearance of:　　　□ Plaintiff　　　　X Defendants

### MAUREEN ZOMAYAH & EDDISON ZOMAYAH

_____
(Insert Litigants' Names)

　　　　　　　　　　　　　　　_/s/ Arthur C. Czaja_____
　　　　　　　　　　　　　　　　　　Signature

□ Initial Counsel of Record　　　□ Pro Se (Self-represented)
X Additional Appearance　　　　　□ Substitute Appearance

Attorney No.: 47671
Name: Arthur C. Czaja
Atty. for: Defendants
Address: 7521 N. Milwaukee Avenue
City/State/Zip: Niles, IL 60714
Telephone: (847) 647-2106
Facsimile: (847) 376-3531
Email: arthur@czajalawoffices.com

\* 5 0 2 4 7 3 9 3 \*

## CERTIFICATE OF SERVICE

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ *Arthur C. Czaja*
Arthur C. Czaja
Attorney for Defendants

\* 5 0 2 4 7 3 9 3 \*

# EXHIBIT D

**GREGORY FUNDING**
PO BOX 230579
Tigard, OR 97281-0579

www.GregoryFunding.com

| |
|---|
| Contact: 866-712-5698 |
| Hours of Operation Monday – Friday<br>6:30am - 6:00pm Pacific Time |
| Payment Address: Gregory Funding<br>PO Box 742334<br>Los Angeles, CA 90074-2334 |
| For Notice of Error or Inquiries:<br>PO Box 230668<br>Tigard, OR 97281-0668 |
| Fax: 866-712-5697 |

4-832-04284-0003000-001-1-000-000-000-000

MAUREEN W ZOMAYAH
6800 N CENTRAL AVE
CHICAGO, IL 60646-1501

11/17/2022

Loan #: ▮▮▮▮▮
Property Address: 6800 N Central Ave
Chicago, IL 60646

*Received on*
*11-29-2022*
*MZ+EZ*

Subject: Late Payment Notice

Dear Maureen W Zomayah:

Gregory Funding is the servicer for the above-referenced loan. Our records indicate that your payment(s) is past due. As a result, a late charge in the amount of $65.12 for the 11/01/2022 installment has been added to your account. Please remit your payment plus any other charges due, which as of the date of this letter is $95,591.59.

If your payment has already been mailed, please disregard this notice.

If you are unable to remit this payment today, please contact us to discuss other options to resolve the delinquency. **Our Customer Service Department may be reached toll-free at 866-712-5698, Monday through Friday from 6:30 AM to 6:00 PM Pacific Time.**

Sincerely,

Gregory Funding

We are a debt collector and information you provide to us may be used to collect a debt. However, if you filed for bankruptcy, we respect any stay, modification or discharge condition and this notice is given for regulatory compliance and information purposes only. If we are subject to a stay in your bankruptcy or you are receiving this solely as successor in interest, this letter is not a demand for payment. If this debt is discharged under bankruptcy law or you are merely successor in interest, you are not personally liable for the debt. According to the mortgage and within the limits of bankruptcy law, we retain our rights to enforce the mortgage lien against the collateral property.

* 5 0 2 4 7 3 9 3 *

# **EXHIBIT E**

**GREGORY FUNDING**
PO Box 742334
Los Angeles, CA 90074 2334

Customer Service: 866 712-5698
Hours: 6:35 a.m - 6:00 4 m PT
Monday  Friday Excluding Holidays

## Mortgage Statement

Loan Number: █████████
Statement Date: 11/18/2022

MAUREEN W ZOMAYAH
6800 N CENTRAL AVE
CHICAGO, IL 60646-1501

*Receelveel on 11-29-2022 MZ9E-2*

| Payment Due Date: | 12/01/2022 |
|---|---|
| **Amount Due:** | **$97,564.64** |

*If payment is received after 12/16/2022, a $65.12 late fee will be charged.*

### Account Information

| | |
|---|---|
| Loan Number: | ████████ |
| Property Address: | 6800 N Central Ave |
| | Chicago, IL 60646 |
| Amortized Principal Balance (Not Payoff Amount): | $315,385.45 |
| Interest Rate (until 08/01/2057): | 3.8750% |
| Escrow Balance: | -$15,719.92 |
| Suspense - Reserve: | $0.00 |
| Suspense - Unapplied: | $775.98 |
| Pre ayment Penalty: | No |

### Explanation of Amount Due

| | |
|---|---|
| Principal: | $339.55 |
| Interest: | $962.92 |
| Escrow (for Taxes and/or Insurance): | $670.58 |
| Regular Monthly Payment: | $1,973.05 |
| Total New Fees and Charges: | $115.19 |
| Past Due Payment(s): | $13,497.51 |
| Past Due Payment(s): | $82,754.87 |
| Suspense Unapplied: | -$775.98 |
| **Total Amount Due:** | **$97,564.64** |

### Past Payment Breakdown

| | Paid 10/19/2022 - 11/17/2022 | Paid in 2022 |
|---|---|---|
| Principal: | $0.00 | $0.00 |
| Interest: | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance): | $0.00 | $0.00 |
| Fees and Charges: | $0.00 | $0.00 |
| Suspense - Reserve/Other: | $0.00 | $0.00 |
| Total: | $0.00 | $0.00 |

### Important Messages

**Suspense - Unapplied:** We hold a payment that is less than a full installment in a suspense account, not applied to your loan. When a new payment and the suspense amount complete an installment, we apply the installment amount. That may leave a new balance in suspense.

**Amount Due:** The Amount Due on this statement is based on the terms of your contract and does not reflect any forbearance agreement that may be in effect.

**BANKRUPTCY NOTICE:**
TO THE EXTENT YOUR DEBT IS SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE OR YOU DISCHARGED PERSONAL LIABILITY FOR YOUR MORTGAGE LOAN IN BANKRUPTCY, THIS STATEMENT IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY. IT IS NOT AN ATTEMPT TO COLLECT A DEBT AGAINST YOU. IF YOU WANT TO STOP RECEIVING STATEMENTS, PLEASE WRITE TO US.

### Transactions Posted between 10/19/2022 - 11/17/2022

| Effective Date | Description | Principal | Interest | Escrow | Fees & Charges | Suspense-Unapplied | Suspense- Reserve/Other | Total |
|---|---|---|---|---|---|---|---|---|
| 11/03/2022 | Interest on escrow advances | | | | -$50.07 | | | -$50.07 |
| 11/17/2022 | 11/01/2022 Late Charge Added | | | | -$65.12 | | | -$65.12 |

*If your loan is escrowed, the transaction activity above includes your escrow account deposits, refunds, credits, disbursements, and other activity, if any, that occurred in the transaction period.*

Page 1 of 2
Gregory Funding is a debt collector, and information you provide to us may be used to collect a debt.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

☐ Check here for change of mailing address or phone number(s). Please provide all corrections on the reverse side.

### Account Number ████████

| Due By 12/01/2022: | $97,564.64 |
|---|---|
| A late fee of $65.12 will be charged after 12/16/2022. | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

0 2 4 7 3 9 3 *

**Online Access:** To manage your account online, view and download your documents or schedule a payment, please visit GregoryFunding.com.

**Additional Payment Information:** If the account is current and you want to set up automatic payments through our Recurring ACH Payment Program, please complete the Application found on the Borrower Center of our website, GregoryFunding.com, which you can electronically sign or you can download and mail or fax to us. If you are not paying online or by recurring automatic payment, include the account number on your check or money order and make it payable to "Gregory Funding." Do not send cash. Payments accompanied by the payment stub on Page 1 of this Mortgage Statement and received at the correct payment address on any Monday through Friday that is not a legal bank holiday will be credited as of the day of receipt. You may contact Customer Service toll-free at 866-712-5698 to make a payment by phone; phone payments arranged after 6 PM Pacific Time will be credited on the following business day. When the currently due installment is paid and there are no unpaid fees and charges, you may designate an excess payment to escrow principal. You may make an extra escrow deposit, but this may not immediately reduce the periodic escrow payment and an overpayment may have to be refunded to you; we recommend you call Customer Service in advance to discuss the effect an extra escrow payment will have under the circumstances applicable to your loan. If the account is delinquent, you may wish to contact Customer Service to discuss how a payment will be applied and how to cure the delinquency.

**Suspense Accounts/Partial Payments:** Payments received in amounts that are more or less than the amount of the oldest unpaid installment may result in a partial payment that cannot be applied to the loan balance. When received, a partial payment amount is posted to a suspense account associated with the loan. Partial payments are applied when we receive the remainder amount due for the oldest unpaid installment.

**Interest on Escrow Advances:** If the escrow account is not adequately funded by monthly escrow payments or the loan account is not escrowed and you fail to pay property taxes or insurance premiums, we can advance servicer money to pay such obligations, including lender-placed insurance premiums if applicable. These advances are additional obligations included in the loan balance. We may charge interest on the daily outstanding advances balance until the advances are repaid, generally at the current loan interest rate and as permitted by state law.

**Payoff Requests:** Requests for quotes to pay off the loan should be submitted in writing to Gregory Funding, Attn: Customer Service Department, PO Box 230579, Tigard, OR 97281-0579 or by fax to 866-712-5697.

**Requests for Information and Notices of Error, Including Qualified Written Requests:** If you want a written response to a request or feel a loan servicing error occurred, you must contact us in writing. Requests and notices must include your name, loan number and property address; must state the information you request or the error you believe occurred and must be mailed to Gregory Funding, Attn: Errors & Inquiries, PO Box 230568, Tigard, OR 97281-0568.

**Foreclosure Prevention Assistance/Housing Counselor Information:** If you are experiencing difficulty making payments, visit our website, GregoryFunding.com, for Borrower Assistance instructions or call Customer Service toll-free at 866-712-5698, Monday through Friday, 6:30 AM - 6:00 PM Pacific Time, to discuss your options. For help exploring options to manage the account, the federal government offers contact information for housing counselors located near you, whom you can select by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/find-a-housing-counselor or the Department of Housing and Urban Development (HUD) at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD Housing Counselor Hotline toll-free at 800-569-4287.

**SCRA Information:** Servicemembers called to active duty, or a spouse or dependent of such a servicemember, may be entitled to legal protections and debt relief under the Servicemembers Civil Relief Act, 50 USC §§ 3901-4043 ("SCRA"). If you have questions about how the SCRA might apply to you, see www.militaryonesource.mil/legal or call 800-342-9647 toll-free to reach "MilitaryOneSource," a legal assistance resource of the U.S. Defense Department. If we need to know your eligibility status, please mail a written request and a copy of the servicemember's military orders to Gregory Funding, PO Box 230579, Tigard, OR 97281-0579.

**Taxes:** If you have an escrow account for us to disburse property tax payments, we will ask your tax authority to send the regular tax bill directly to us. However, some tax authorities continue to send the regular tax bill directly to you. Your tax authority may send other special types of tax bills directly to you, such as corrected, supplemental or special assessment bills. If taxes are escrowed with us and you receive a tax bill, write the account number on the bill and send it as soon as possible to Gregory Funding, Attn: Tax Department, PO Box 230579, Tigard, OR 97281-0579 or by fax to 866-712-5696.

**Insurance:** Mortgage loan terms require homeowner's hazard insurance for your property with replacement cost coverage and reasonable deductibles; flood or wind coverage may also be mandatory. We will pay annual insurance premiums from the escrow account if the loan is escrowed for insurance. You must provide us with declaration page(s) as proof of insurance including this mortgagee clause: Gregory Funding LLC, ISAOA/ATIMA, PO Box 692402, San Antonio, TX 78259-2402. If you do not provide updated information when your insurance renews or changes, we may purchase lender-placed insurance to protect the lender. Provide all insurance change information to Gregory Funding LLC, Attn: Insurance Department, PO Box 692402, San Antonio, TX 78259-2402 or fax to 866-844-4130 or call toll-free 866-270-3228. To contact us about escrow status or damage claims under either your homeowner's or a lender-placed policy, write to Gregory Funding, Attn: Insurance Department, PO Box 230579, Tigard, OR 97281-0579 or fax to 866-712-5696 or call toll-free 866-712-5698.

**Colorado Residents:** Gregory Funding LLC maintains an office at 1776 S. Jackson Street, #900, Denver, CO 80210-3808. The telephone number is (720) 370-6078. **New York Residents:** Gregory Funding is a registered servicer with the New York Superintendent of Financial Services. A New York-resident borrower may file complaints about the servicer with the Superintendent or get further information from the Department of Financial Services' consumer assistance unit at 800-342-3736 or its website at www.dfs.ny.gov. **Oregon Residents:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 866-712-5698. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov. **Texas Residents:** CONSUMERS WISHING TO FILE A COMPLAINT AGAINST A MORTGAGE BANKER OR LICENSED MORTGAGE BANKER RESIDENTIAL MORTGAGE LOAN ORIGINATOR SHOULD COMPLETE AND SEND A COMPLAINT FORM TO: DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. COMPLAINT FORMS AND INSTRUCTIONS MAY BE OBTAINED FROM THE DEPARTMENT'S WEBSITE AT WWW.SML.TEXAS.GOV. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

We are a debt collector and information you provide to us may be used to collect a debt. However, if you filed for bankruptcy, we respect any stay, modification or discharge condition and this notice is given for regulatory compliance and information purposes only. If we are subject to a stay in your bankruptcy or you are receiving this solely as successor in interest, this letter is not a demand for payment. If this debt is discharged under bankruptcy law or you are merely successor in interest, you are not personally liable for the debt. According to the mortgage and within the limits of bankruptcy law, we retain our rights to enforce the mortgage lien against the collateral property.

**CHANGE OF ADDRESS:**
If your contact information has changed, please provide the new information below.

Name (first, middle initial, last)

| Address (number and street) | Suite/Unit |
| --- | --- |

| City | State | Zip Code |
| --- | --- | --- |

| Home Telephone | Mobile/Cell Telephone | Business Telephone |
| --- | --- | --- |

GREGORY
FUNDING

PO Box 742334
Los Angeles, CA 90074-2334

www.gregoryfunding.com

Customer Service: 866-712-5698
Hours: 6:35 am - 6:00 pm PT
Monday - Friday Excluding Holidays

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

**Delinquency Notice**

Loan Number: ▮▮▮▮▮▮▮

*Received on 11-29-2022 MZ&EZ* (handwritten)

---

## This Account is Past Due

This account is delinquent. Delinquency means we have not received, or we cannot apply, the payment that became due on this date or any payments that became due after this date. When an account is delinquent, any full installment payment we receive can only be applied to the oldest outstanding due date. If you cannot pay all past due installments, we encourage you to call us; contact information is provided above. If you are not comfortable working with us directly, the Consumer Financial Protection Bureau recommends that you work with a HUD-authorized housing counselor to help resolve the delinquency; information to help you arrange for housing counseling is provided below.

Failure to remit payment and bring this mortgage loan account current may result in additional fees, charges and foreclosure. You could lose your home.

As of 11/18/2022 this mortgage loan is 1,358 days past due. You became delinquent on 03/02/2019.

**Recent Account History**

- Payment due 07/01/2022: Unpaid balance of $1,973.05
- Payment due 08/01/2022: Unpaid balance of $1,973.05
- Payment due 09/01/2022: Unpaid balance of $1,973.05
- Payment due 10/01/2022: Unpaid balance of $1,973.05
- Payment due 11/01/2022: Unpaid balance of $1,973.05
- Payment due 12/01/2022: Unpaid balance of $1,973.05
- Total of unpaid Fees and Charges: $13,612.70
- Suspense - Unapplied: $775.98

The Total Amount Due to bring this account current is $97,564.64. This amount includes all past due payments, all fees and charges assessed or advanced through 11/18/2022.

**Housing Counselor Information:** If you are experiencing financial difficulty and would like counseling or assistance, the federal government provides contact information for local housing counselors, whom you can select by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/find-a-housing-counselor or the Department of Housing and Urban Development (HUD) at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD Housing Counselor Hotline toll-free at 800-569-4287.

**SCRA Information:** Servicemembers called to active duty, or a spouse or dependent of such a servicemember, may be entitled to legal protections and debt relief under the Servicemembers Civil Relief Act, 50 USC §§ 3901-4043 ("SCRA"). If you have questions about how SCRA might apply, see www.militaryonesource.mil/legal or call 800-342-9647 toll-free to reach "Military OneSource," a legal assistance resource of the U.S. Defense Department. If we need to know your eligible status, please send a written request and a copy of the servicemember's military orders to us at Gregory Funding, PO Box 230579, Tigard, OR 97281-0579.

**Foreclosure:** We have made the first filing or notice required in your state to start the foreclosure of this loan account. This Delinquency Notice is based upon your contractual due date and does not include any acceleration of the maturity date that may have occurred. Also, it may not yet show all allowable charges incurred to-date in relation to the foreclosure, such as foreclosure costs, legal fees and other collection expenses permitted by the loan documents and applicable law.

* 5 0 2 4 7 3 9 3 *

# **EXHIBIT F**

# GREGORY FUNDING

PO Box 742334
Los Angeles, CA 90074-2334

Customer Service
Hours * 5 0 3 4 7 3 9 3 *
Monday - Friday, Excluding Holidays

## Mortgage Statement

Loan Number: ▮▮▮▮▮
Statement Date: 12/20/2022

1-832-04426-0010098-002-41-001-010-009-000

MAUREEN W ZOMAYAH
6800 N CENTRAL AVE
CHICAGO, IL 60646-1501

*Received on 12-27-2022 MZ*

| Payment Due Date: | 01/01/2023 |
|---|---|
| **Amount Due:** | **$99,666.21** |

If payment is received after 01/17/2023,
a $65.12 late fee will be charged

## Account Information

| | |
|---|---|
| Loan Number: | ▮▮▮▮▮ |
| Property Address: | 6800 N Central Ave |
| | Chicago, IL 60646 |
| Amortized Principal Balance (Not Payoff Amount): | $315,385.45 |
| Interest Rate (until 02/01/2057): | 3.8750% |
| Escrow Balance: | -$15,719.92 |
| Suspense - Reserve: | $0.00 |
| Suspense - Unapplied: | $775.98 |
| Prepayment Penalty: | No |

## Explanation of Amount Due

| | |
|---|---|
| Principal: | $340.65 |
| Interest: | $961.82 |
| Escrow (for Taxes and/or Insurance): | $670.58 |
| **Regular Monthly Payment:** | **$1,973.05** |
| Total New Fees and Charges: | $128.52 |
| Past Due Fees and Charges: | $13,612.70 |
| Past Due Payment(s): | $84,727.92 |
| Suspense - Unapplied: | -$775.98 |
| **Total Amount Due:** | **$99,666.21** |

## Past Payment Breakdown

| | Paid 11/18/2022 - 12/19/2022 | Paid in 2022 |
|---|---|---|
| Principal: | $0.00 | $0.00 |
| Interest: | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance) | $0.00 | $0.00 |
| Fees and Charges: | $0.00 | $0.00 |
| Suspense - Reserve/Other: | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

## Important Messages

**Suspense - Unapplied:** We hold a payment that is less than a full installment in a suspense account, not applied to your loan. When a new payment and the suspense amount complete an installment, we apply the installment amount. That may leave a new balance in suspense.

**Amount Due:** The Amount Due on this statement is based on the terms of your contract and does not reflect any forbearance agreement that may be in effect.

**BANKRUPTCY NOTICE.**
TO THE EXTENT YOUR DEBT IS SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE OR YOU DISCHARGED PERSONAL LIABILITY FOR YOUR MORTGAGE LOAN IN BANKRUPTCY, THIS STATEMENT IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY. IT IS NOT AN ATTEMPT TO COLLECT A DEBT AGAINST YOU. IF YOU WANT TO STOP RECEIVING STATEMENTS, PLEASE WRITE TO US.

## Transactions Posted between 11/18/2022 - 12/19/2022

| Effective Date | Description | Principal | Interest | Escrow | Fees & Charges | Suspense- Unapplied | Suspense- Reserve/Other | Total |
|---|---|---|---|---|---|---|---|---|
| 12/05/2022 | Interest on escrow advances | | | | $48.40 | | | $48.40 |
| 12/13/2022 | Property inspection fee | | | | -$15.00 | | | -$15.00 |
| 12/19/2022 | 12/01/2022 Late Charge Added | | | | -$65.12 | | | -$65.12 |

*If your loan is escrowed, the transaction activity above includes your escrow account deposits, refunds, credits, disbursements, and other activity, if any, that occurred in the transaction period*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

☐ **Check here for change of mailing address or phone number(s).**
Please provide all corrections on the reverse side.

| **Account Number** ▮▮▮▮▮ | |
|---|---|
| **Due By 01/01/2023:** | **$99,666.21** |
| A late fee of $65.12 will be charged after 01/17/2023 | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

**www.GregoryFunding.com**     IMPORTANT ACCOUNT INFORMATION     866-712-5698, M-F, 6:30 AM - 6:00 PM Pacific     5   2   4   7   3   9   3   *

**Online Access:** To manage your account online, view and download your documents or schedule a payment, please visit GregoryFunding.com

**Additional Payment Information:** If the account is current and you want to set up automatic payments through our Recurring ACH Payment Program, please complete the Application found on the Borrower Center of our website, GregoryFunding.com, which you can electronically sign or you can download and mail or fax to us. If you are not paying online or by recurring automatic payment, include the account number on your check or money order and make it payable to "Gregory Funding." Do not send cash. Payments accompanied by the payment stub on Page 1 of this Mortgage Statement and received at the correct payment address on any Monday through Friday that is not a legal bank holiday will be credited as of the day of receipt. You may contact Customer Service toll-free at 866-712-5698 to make a payment by phone; phone payments arranged after 6 PM Pacific Time will be credited on the following business day. When the currently due installment is paid and there are no unpaid fees and charges, you may designate an excess payment to reduce principal. You may make an extra escrow deposit, but this may not immediately reduce the periodic escrow payment and an overpayment may have to be refunded to you; we recommend you call Customer Service in advance to discuss the effect an extra escrow payment will have under the circumstances applicable to your loan. If the account is delinquent, you may wish to contact Customer Service to discuss how a payment will be applied and how to cure the delinquency.

**Suspense Accounts/Partial Payments:** Payments received in amounts that are more or less than the amount of the oldest unpaid installment may result in a partial payment that cannot be applied to the loan balance. When received, a partial payment amount is posted to a suspense account associated with the loan. Partial payments are applied when we receive the remainder amount due for the oldest unpaid installment.

**Interest on Escrow Advances:** If the escrow account is not adequately funded by monthly escrow payments or the loan account is not escrowed and you fail to pay property taxes or insurance premiums, we can advance servicer money to pay such obligations, including lender-placed insurance premiums if applicable. These advances are additional obligations included in the loan balance. We may charge interest on the daily outstanding advances balance until the advances are repaid, generally at the current loan interest rate and as permitted by state law.

**Payoff Requests:** Requests for quotes to pay off the account should be submitted in writing to Gregory Funding, Attn: Customer Service Department, PO Box 230579, Tigard, OR 97281-0579 or by fax to 866-712-5697.

**Requests for Information and Notices of Error, including Qualified Written Requests:** If you want a written response to a request or feel a loan servicing error occurred, you must contact us in writing. Requests and notices must include your name, loan number and property address, must state the information you request or the error you believe occurred and must be mailed to Gregory Funding, Attn: Errors & Inquiries, PO Box 230598, Tigard, OR 97281-0598.

**Foreclosure Prevention Assistance/Housing Counselor Information:** If you are experiencing difficulty making payments, visit our website, GregoryFunding.com, for Borrower Assistance instructions or call Customer Service toll-free at 866-712-5698, Monday through Friday, 6:30 AM - 6:00 PM Pacific Time, to discuss your options. For help exploring options to manage the account, the federal government offers contact information for housing counselors located near you, whom you can select by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/find-a-housing-counselor or the Department of Housing and Urban Development (HUD) at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD Housing Counselor Hotline toll-free at 800-569-4287.

**SCRA Information:** Servicemembers called to active duty, or a spouse or dependent of such a servicemember, may be entitled to legal protections and debt relief under the Servicemembers Civil Relief Act, 50 USC §§ 3901-4043 ("SCRA"). If you have questions about how the SCRA might apply to you, see www.militaryonesource.mil/legal or call 800-342-9647 toll-free to reach "MilitaryOneSource," a legal assistance resource of the U.S. Defense Department. If we need to know your eligibility status, please mail a written request and a copy of the servicemember's military orders to Gregory Funding, PO Box 230579, Tigard, OR 97281-0579.

**Taxes:** If you have an escrow account for us to disburse property tax payments, we will ask your tax authority to send the regular tax bill directly to us. However, some tax authorities continue to send the regular tax bill directly to you. Your tax authority may send other special types of tax bills directly to you, such as corrected, supplemental or special assessment bills. If taxes are escrowed with us and you receive a tax bill, write the account number on the bill and send it as soon as possible to Gregory Funding, Attn: Tax Department, PO Box 230579, Tigard, OR 97281-0579 or by fax to 866-712-5696.

**Insurance:** Mortgage loan terms require homeowner's hazard insurance for your property with replacement cost coverage and reasonable deductibles; flood or wind coverage may also be mandatory. We will pay annual insurance premiums from the escrow account if the loan is escrowed for insurance. You must provide us with declaration page(s) as proof of insurance including this mortgagee clause: Gregory Funding LLC, ISAOA/ATIMA, PO Box 692402, San Antonio, TX 78269-2402. If you do not provide updated information when your insurance renews or changes, we may purchase lender-placed insurance to protect the lender. Provide all insurance change information to Gregory Funding LLC, Attn: Insurance Department, PO Box 692402, San Antonio, TX 78269-2402 or fax to 866-846-4130 or call toll-free 866-270-3228. To contact us about escrow status or damage claims under either your homeowner's or a lender-placed policy, write to Gregory Funding, Attn: Insurance Department, PO Box 230579, Tigard, OR 97281-0579 or fax to 866-712-5696 or call toll-free 866-712-5698.

**Colorado Residents:** Gregory Funding LLC maintains an office at 1778 S. Jackson Street, #900, Denver, CO 80210-3808. The telephone number is (720) 370-5078. **New York Residents:** Gregory Funding is a registered servicer with the New York Superintendent of Financial Services. A New York-resident borrower may file complaints about the servicer with the Superintendent or get further information from the Department of Financial Services' consumer assistance unit at 800-342-3736 or its website at www.dfs.ny.gov. **Oregon Residents:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 866-712-5698. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov. **Texas Residents:** CONSUMERS WISHING TO FILE A COMPLAINT AGAINST A MORTGAGE BANKER OR LICENSED MORTGAGE BANKER RESIDENTIAL MORTGAGE LOAN ORIGINATOR SHOULD COMPLETE AND SEND A COMPLAINT FORM TO: DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. COMPLAINT FORMS AND INSTRUCTIONS MAY BE OBTAINED FROM THE DEPARTMENT'S WEBSITE AT WWW.SML.TEXAS.GOV. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

We are a debt collector and information you provide to us may be used to collect a debt. However, if you filed for bankruptcy, we respect any stay, modification or discharge condition and this notice is given for regulatory compliance and information purposes only. If we are subject to a stay in your bankruptcy or you are receiving this solely as successor in interest, this letter is not a demand for payment. If this debt is discharged under bankruptcy law or you are merely successor in interest, you are not personally liable for the debt. According to the mortgage and within the limits of bankruptcy law, we retain our rights to enforce the mortgage lien against the collateral property.

**CHANGE OF ADDRESS:**
If your contact information has changed, please provide the new information below.

_____
Name (first, middle initial, last)

_____     _____
Address (number and street)              Suite/Unit

_____     _____
City          State                      Zip Code

_____     _____
Home Telephone     Mobile/Cell Telephone     Business Telephone

**GREGORY**
**FUNDING**
PO Box 742334
Los Angeles, CA 90074-2334

Customer Service 866-712-5698
Hours: 6:30 am - 5:00 pm PT
**Monday - Friday Excluding Holidays**

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

*Received 12-27-22 MZ*

**Delinquency Notice**
Loan Number: ▮▮▮▮

---

## This Account is Past Due

This account is delinquent. Delinquency means we have not received, or we cannot apply, the payment that became due on this date or any payments that became due after this date. When an account is delinquent, any full installment payment we receive can only be applied to the oldest outstanding due date. If you cannot pay all past due installments, we encourage you to call us; contact information is provided above. If you are not comfortable working with us directly, the Consumer Financial Protection Bureau recommends that you work with a HUD-authorized housing counselor to help resolve the delinquency; information to help you arrange for housing counseling is provided below.

Failure to remit payment and bring this mortgage loan account current may result in additional fees, charges and foreclosure. You could lose your home.

As of 12/20/2022 this mortgage loan is 1,390 days past due. You became delinquent on 03/02/2019.

**Recent Account History**

- Payment due 08/01/2022: Unpaid balance of $1,973.05
- Payment due 09/01/2022: Unpaid balance of $1,973.05
- Payment due 10/01/2022: Unpaid balance of $1,973.05
- Payment due 11/01/2022: Unpaid balance of $1,973.05
- Payment due 12/01/2022: Unpaid balance of $1,973.05
- Payment due 01/01/2023: Unpaid balance of $1,973.05
- Total of unpaid Fees and Charges: $13,741.22
- Suspense - Unapplied: $775.98

The Total Amount Due to bring this account current is $99,666.21. This amount includes all past due payments, all fees and charges assessed or advanced through 12/20/2022.

**Housing Counselor Information:** If you are experiencing financial difficulty and would like counseling or assistance, the federal government provides contact information for local housing counselors, whom you can select by contacting the **Consumer Financial Protection Bureau** at **www.consumerfinance.gov/find-a-housing-counselor** or the **Department of Housing and Urban Development (HUD)** at **www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm** or by calling the HUD Housing Counselor Hotline toll-free at **800-569-4287**.

**SCRA Information:** Servicemembers called to active duty, or a spouse or dependent of such a servicemember, may be entitled to legal protections and debt relief under the Servicemembers Civil Relief Act, 50 USC §§ 3901-4043 ("SCRA"). If you have questions about how SCRA might apply, see **www.militaryonesource.mil/legal** or call **800-342-9647** toll-free to reach "Military OneSource," a legal assistance resource of the U.S. Defense Department. If we need to know your eligible status, please send a written request and a copy of the servicemember's military orders to us at **Gregory Funding, PO Box 230579, Tigard, OR 97281-0579.**

**Foreclosure:** We have made the first filing or notice required in your state to start the foreclosure of this loan account. This Delinquency Notice is based upon your contractual due date and does not include any acceleration of the maturity date that may have occurred. Also, it may not yet show all allowable charges incurred to-date in relation to the foreclosure, such as foreclosure costs, legal fees and other collection expenses permitted by the loan documents and applicable law.

| FACTS | What Does Gregory Funding Do with Your Personal Information? | *  5 0 2 4 7 3 9 3  * |
|---|---|---|

*Received 12-2 MS*

| Why? | Financial companies choose how they share your personal information. Under federal law, customers have personally identifiable information. Federal Law gives consumers the right to limit some but not all sharing. Federal law also required us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and employment information<br>• account balances and transaction history<br>• credit history and credit scores<br><br>When you are no longer our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Gregory Funding chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Gregory Funding share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes - such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes - to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes - information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes - information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

| To limit our sharing | • Visit us online at http://www.gregoryfunding.com/privacypolicyoptout;<br>• Email us at: opt-out@gregoryfunding.com;<br>• Mail the form below to:<br>Gregory Funding LLC<br>PO Box 230579<br>Tigard, OR 97281-0579<br><br>Please note: If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
|---|---|
| For Questions Only (No Opt-Outs) | Call: 1-866-712-5693 |

| Mail-in Form |
|---|
| If you have a joint account, your choice(s) will apply to everyone on your account unless you mark below.<br><br>☐ Apply my choices only to me<br><br>Mark any/all you want to limit:<br><br>☐ Do not share information about my creditworthiness with your affiliates for their everyday business purposes.<br>☐ Do not allow your affiliates to use my personal information to market to me.<br>☐ Do not share my personal information with nonaffiliates to market their products and services to me. |

| Name | | Mail to: |
|---|---|---|
| Address | | Gregory Funding LLC |
| City, State, Zip | | PO Box 230579 |
| Account # | | Tigard, OR 97281-0579 |

| Who we are | |
|---|---|
| Who is providing this notice? | Gregory Funding LLC, a residential mortgage servicing company. |

| What we do | |
|---|---|
| How does Gregory Funding protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| How does Gregory Funding collect my personal information? | We collect your personal information, for example, when you:<br>• pay us by check or<br>• give us your contact information or<br>• give us your income information or<br>• give us your wage statements or<br>• provide employment information<br><br>We also collect your personal information from others including, but not limited to, credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only:<br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• sharing for affiliates to market to you<br>• sharing for nonaffiliates to market to you<br><br>State Laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |

| Other important information |
|---|

**Special Notice for California Residents**

We will not disclose information we collect about California residents to non-affiliated third parties, except as follows:

- With the authorization or consent of the California resident;
- To service the resident's account; or
- As permitted by law.

**Special Notice for Vermont Residents**

In accordance with Vermont law, we will not disclose information we collect about Vermont residents to unaffiliated companies and will not disclose application and third-party credit-related information about Vermont residents to our affiliated companies except as follows:

- With the authorization or consent of the Vermont resident;
- To companies that perform marketing or other services on our behalf;
- Name, contact and transaction and experience information (such as account balance and payment history) to other companies with which we have joint marketing or servicing agreement; or
- As permitted by law.

* 5 0 2 4 7 3 9 3 *
FILED
1/9/2023 12:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00189
Calendar, 12
20953893

Chancery Division Civil Cover Sheet
General Chancery Section

(12/01/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Maureen Zomayah

Plaintiff

v.

Gregory Funding, LLC

Defendant

Case No: _____

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

Only one (1) case type may be checked with this cover sheet.

| | | | | | |
|---|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus | |
| 0001 | ☑ Class Action | | 0018 | ☐ Ne Exeat | |
| 0002 | ☐ Declaratory Judgment | | 0019 | ☐ Partition | |
| 0004 | ☐ Injunction | | 0020 | ☐ Quiet Title | |
| | | | 0021 | ☐ Quo Warranto | |
| 0007 | ☐ General Chancery | | 0022 | ☐ Redemption Rights | |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract | |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract | |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance | |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction | |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) | |
| 0015 | ☐ Equitable Lien | | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ | |

Atty. No.: 47671                    Pro Se 99500

Atty Name: Arthur C. Czaja

Atty. for: Plaintiffs

Address: 7521 N. Milwaukee Ave.

City: Niles          State: IL

Zip: 60714

Telephone: 847-647-2106

Primary Email: arthur@czajalawoffices.com

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

* 5 0 2 4 7 3 9 3 *
FILED
1/9/2023 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00189
Calendar, 12
20954516

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MAUREEN W. ZOMAYAH,
individually, and on behalf of all others
similarly situated,

    Plaintiff,

v.

GREGORY FUNDING LLC,

    Defendant.

Case No. 2023-CH-00189

Calendar 12

## NOTICE OF FILING

To:    Gregory Funding, LLC, c/o C T Corporation System, Registered Agent, 208 So. LaSalle St., Ste. 814, Chicago, IL 60604

    **PLEASE TAKE NOTICE** that on <u>**January 9, 2023**</u>, the Plaintiff, Maureen W. Zomayah, by and through her attorney electronically filed and served the Clerk of the Circuit Court of Cook County, Illinois the ***PLAINTIFF'S MOTION TO CLASS CERIFICATION***, a copy of which is attached hereto and hereby served upon you.

<u>/s/ *Arthur C. Czaja*</u>
Arthur C. Czaja
LAW OFFICE OF ARTHUR C. CZAJA
7521 North Milwaukee Avenue
Niles, Illinois 60714
+1 847-647-2106
arthur@czajalawoffices.com
Attorney No: 47671

**Page 1 of 2**

\* 5 0 2 4 7 3 9 3 \*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on **January 9, 2023,** he caused a true and correct copy of this Notice and the enclosed ***PLAINTIFF'S MOTION TO CLASS CERIFICATION*** to be served upon the party(ies) listed above, by attaching a copy of this Notice and enclosed ***PLAINTIFF'S MOTION TO CLASS CERIFICATION*** by postage prepaid first-class mail to the parties identified above at the mailing addresses identified hereinabove from 7521 N. Milwaukee Ave., Niles, IL 60714.

*/s/ Arthur C. Czaja*
Arthur C. Czaja
LAW OFFICE OF ARTHUR C. CZAJA
7521 North Milwaukee Avenue
Niles, Illinois 60714
+1 847-647-2106
arthur@czajalawoffices.com
Attorney No: 47671

**Page 2 of 2**

FILED
1/9/2023 12:20 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH00189
Calendar, 12
20954516

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MAUREEN W. ZOMAYAH,
individually, and on behalf of all others
similarly situated,

    Plaintiff,

v.

GREGORY FUNDING LLC,

    Defendant.

Case No. 2023-CH-00189

Calendar 12

## MOTION FOR CLASS CERTIFICATION

**NOW COMES**, Plaintiff, MAUREEN W. ZOMAYAH, individually, and on behalf of all

others similarly situated, through undersigned counsel, pursuant to 735 ILCS 5/2-801 *et seq.*,

moving the Court to certify this action and the proposed classes discussed below:

### Section 1692c Subclass

*All consumers within the State of Illinois to whom (a) within the one (1) year prior
to the filing of the original complaint and during its pendency; (b) received direct
communication(s) from Gregory Funding; (c) despite Gregory Funding knowing
that the consumers are represented by counsel.*

### Section 1692e Subclass

*All persons within the State of Illinois to whom (a) within the one (1) year prior to
filing of the original complaint and during its pendency; (b) received the same or
a substantially similar Mortgage Statement as the Mortgage Statements referenced
supra; (c) after their loan had already been accelerated (d) providing "[i]f payment
is received after [fifteen calendar days after the payment is due], a [...] late fee will
be charged"; and (e) where the borrower(s) did not invoke their right under the
mortgage to reinstate.*

### Section 1692f Subclass

*All persons within the State of Illinois to whom (a) within the one (1) year prior to
filing of the original complaint and during its pendency; (b) after their loan was
already accelerated; (c) were assessed late charges after payment was not received*

1

*within fifteen calendar days after the payment was due; and (d) where the borrower(s) did not invoke their right under the mortgage to reinstate.*

The following individuals are excluded from the Putative Classes: (1) any Judge presiding over this action and members of their families; (2) Gregory Funding, Gregory Funding subsidiaries, parents, successors, predecessors, and any entity in which Gregory Funding or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Classes; (5) the legal representatives, successors or assigns of any such executed persons; and (6) persons whose claims against Gregory Funding have been fully and finally adjudicated and/or released.

In support thereof, Plaintiff states as follows:

1.     MAUREEN W. ZOMAYAH ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at 6800 North Central Avenue, Chicago, Illinois 60646.

2.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

3.     GREGORY FUNDING LLC ("Gregory Funding") is a limited liability company organized and existing under the laws of the state of Oregon.

4.     Gregory Funding has its principal place of business at 13190 Southwest 68th Parkway, Tigard, Oregon 97223.

5.     Gregory Funding is a servicer of residential loans and commercial loans throughout the United States.

6.     Gregory Funding uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.  Accordingly, Gregory Funding is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

* 5 0 2 4 7 3 9 3 *

7. On May 11, 2005, Plaintiff executed a mortgage in favor of ABN AMRO Mortgage Group, Inc. (the "Mortgage").

8. The Mortgage secured the purchase of Plaintiff's personal residence located at 6800 North Central Avenue, Chicago, Illinois 60646 (the "Property").

9. The Mortgage secured the repayment of the indebtedness evidenced by a promissory note (the "Note") in the amount of $332,500.00 (the Mortgage and Note shall be collectively referred to herein as the "Loan").

10. The Note provides that: "I will pay principal and interest by making a payment every month."

11. The Note further provides that:

> **(A) Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest, I will pay this late charge promptly but only once on each late payment.

12. CitiMortgage, Inc., as successor by merger to ABN AMRO Mortgage Group, Inc., assigned the Mortgage to Bank of America, N.A. by instrument dated March 11, 2014 and recorded April 1, 2014 as Document No. 1409129061 with the Cook County Recorder of Deeds.

13. Plaintiff defaulted on the Mortgage Loan by failing to pay the monthly installment due February 1, 2018 and thereafter.

14. Gregory Funding acquired the servicing rights for Plaintiff's Mortgage Loan on or about November 1, 2019 from Bank of America, N.A.

15. At the time of this transfer, Plaintiff's Mortgage Loan was in default and the unpaid principal balance was $320,899.46.

3

* 5 0 2 4 7 3 9 3 *

16.     On June 11, 2019, Bank of America, N.A. filed a "Complaint to Foreclose Mortgage," pursuant to section 15-1101 of the Code of Civil Procedure with respect to the Property.  Said case was filed in the circuit court of Cook County, Illinois and captioned as *Bank of America, N.A. v. Maureen W. Zomayah, et al.*, case number 2018-CH-11534 (the "Foreclosure Case"). A copy of the complaint in the Foreclosure Case is attached hereto as ***Exhibit A***.

17.     In the complaint in the Foreclosure Case, it was alleged that the Loan was accelerated and that the full accelerated balance of $325,930.58 was due and owing.

18.     During the pendency of the Foreclosure Case, on or about November 1, 2019, Gregory Funding acquired the servicing rights for Plaintiff's Loan from Bank of America, N.A.

19.     At the time of this transfer, Plaintiff's Mortgage Loan was in default in foreclosure.

20.     At the time of this transfer, all the payments owing under Plaintiff's Loan were accelerated. *See **Exh. A***.

21.     Once Plaintiff's Loan was accelerated, the entire balance on Plaintiff's Loan was due.

22.     In other words, no further monthly installments became due after acceleration.

23.     On July 5, 2022, an Affidavit of Amounts Due and Owing, executed by Julia Rust, an "Authorized Agent" of Gregory Funding, was filed in the Foreclosure Case. *See **Exhibit B***.

24.     In this Affidavit, Julia Rust of Gregory Funding swore under oath that the amount due and owing under the Loan was $364,559.94 as of June 30, 2022 and that the applicable interest rate was 2.25%. *See **Exh. B***.

25.     Plaintiff hired counsel, Law Office of Arthur C. Czaja, in November of 2022.

26.     On November 4, 2022, Law Office of Arthur C. Czaja filed a notice of appearance in the foreclosure proceedings. *See **Exhibit C***.

27. Gregory Funding sent a Late Payment Notice, dated November 17, 2022, to Plaintiff *directly*, stating, in part:

> Our records indicate that your payment(s) is past due. As a result, a late charge in the amount of $65.12 for the 11/01/2022 installment has been added to your account. Please remit your payment plus any other charges due, which as of the date of this letter is $95,591.59.

See __*Exhibit D*__.

31. The Late Payment Notice is a "communication" as defined by 15 U.S.C. § 1692a(2).

32. Gregory Funding sent a Mortgage Statement, dated November 18, 2022, to Plaintiff *directly*. See __*Exhibit E*__.

33. The statement included a section entitled "Explanation of Payment Amount," which included a "Regular Monthly Payment" amount and a "Total Amount Due," both in bold lettering, which stated as follows:

| Account Information | | Explanation of Amount Due | |
|---|---|---|---|
| Loan Number: | | Principal: | $339.55 |
| Property Address: | 6800 N Central Ave Chicago, IL 60646 | Interest: | $962.92 |
| | | Escrow (for Taxes and/or Insurance): | $670.58 |
| Amortized Principal Balance (Not Payoff Amount): | $315,385.45 | Regular Monthly Payment: | $1,973.05 |
| Interest Rate (until 08/01/2057): | 3.8750% | Total New Fees and Charges: | $115.19 |
| Escrow Balance: | -$15,719.92 | Past Due Fees and Charges: | $13,497.51 |
| Suspense - Reserve: | $0.00 | Past Due Payment(s): | $82,754.87 |
| Suspense - Unapplied: | $775.98 | Suspense - Unapplied: | -$775.98 |
| Prepayment Penalty: | No | Total Amount Due: | $97,564.64 |

34. Also included was a detachable payment coupon to send in with the payment, which was referred to as the "Total Amount Enclosed" and had a "Payment Date" which stated as follows:

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

☐ Check here for change of mailing address or phone number(s).
Please provide all corrections on the reverse side.

| Account Number | |
| --- | --- |
| Due By 12/01/2022: | $97,564.64 |
| A late fee of $65.12 will be charged after 12/16/2022. | |
| Additional Principal | $ |
| Additional Escrow | $ |
| Total Amount Enclosed | $ |

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

35.     The statement identified $97,564.64 as the "Total Amount Due" and the interest rate at "3.8750%." *See **Exh. E**.*

36.     The statement provided: "*If payment is received after 12/16/2022, a $65.12 late fee will be charged*." *Id.*

37.     The statement also included a section entitled "Transactions Posted between 10/19/2022 – 11/17/2022." *Id.*

38.     This section indicated that on November 17, 2022, a $65.12 late charge was added to Plaintiff's Mortgage Loan. *Id.*

39.     The November 18, 2022 statement is a "communication" as defined by 15 U.S.C. § 1692a(2).

40.     Gregory Funding sent a Mortgage Statement, dated December 20, 2022, to Plaintiff *directly*. *See **Exhibit F**.*

41.     The statement included a section entitled "Explanation of Payment Amount," which included a "Regular Monthly Payment" amount and a "Total Amount Due," both in bold lettering, which stated as follows:

* 5 0 2 4 7 3 9 3 *

| Account Information | | Explanation of Amount Due | |
|---|---|---|---|
| Loan Number: | | Principal: | $340.65 |
| Property Address: | 6800 N Central Ave, Chicago, IL 60646 | Interest: | $961.82 |
| | | Escrow (for Taxes and/or Insurance): | $670.58 |
| Amortized Principal Balance (Not Payoff Amount): | $315,365.45 | Regular Monthly Payment: | $1,973.05 |
| Interest Rate (until 09/01/2057): | 3.8750% | Total New Fees and Charges: | $128.52 |
| Escrow Balance: | -$15,719.92 | Past Due Fees and Charges: | $13,612.70 |
| Suspense - Reserve: | $0.00 | Past Due Payment(s): | $84,727.92 |
| Suspense - Unapplied: | $775.98 | Suspense - Unapplied: | -$775.98 |
| Prepayment Penalty: | No | Total Amount Due: | $99,666.21 |

42. Also included was a detachable payment coupon to send in with the payment, which was referred to as the "Total Amount Enclosed" and had a "Payment Date" which stated as follows:

| Gregory Funding | Account Number | |
|---|---|---|
| PO Box 742334 | Due By 01/01/2023: | $99,666.21 |
| Los Angeles, CA 90074-2334 | A late fee of $65.12 will be charged after 01/17/2023. | |
| ☐ Check here for change of mailing address or phone number(s). Please provide all corrections on the reverse side. | Additional Principal | $ |
| | Additional Escrow | $ |
| | Total Amount Enclosed | $ |
| | Gregory Funding | |
| Maureen W Zomayah | PO Box 742334 | |
| 6800 N Central Ave | Los Angeles, CA 90074-2334 | |
| Chicago, IL 60646-1501 | | |

43. The statement identified $99,666.21 as the "Total Amount Due" and the interest rate at "3.8750%." See ***Exh. F***.

44. The statement provided: "*If payment is received after 01/17/2023, a $65.12 late fee will be charged.*" *Id.*

45. The statement also included a section entitled "Transactions Posted between 11/18/2022 – 12/19/2022." *Id.*

46. This section indicated that on December 19, 2022, a $65.12 late charge was added to Plaintiff's Mortgage Loan. *Id.*

47. The December 20, 2022 statement is a "communication" as defined by 15 U.S.C. § 1692a(2).

7

48. Section 1692c states:

> (a) **Communication with the consumer generally.** Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> \*\*\*
>
> (2)  if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer;

49. Gregory Funding violated 15 U.S.C. § 1692c(a)(2) by mailing the Late Payment Notice to Plaintiff rather than to her attorney.

50. Gregory Funding violated 15 U.S.C. § 1692c(a)(2) by mailing the November 18, 2022 statement to Plaintiff rather than to her attorney.

51. Gregory Funding violated 15 U.S.C. § 1692c(a)(2) by mailing the December 20, 2022 statement to Plaintiff rather than to her attorney.

52. The Late Payment Notice and mortgage statements were communications "in connection with the collection of [a] debt."

53. At the time Gregory Funding sent Late Payment Notice and mortgage statements, they had actual knowledge, based on the November 4, 2022 notice of appearance, that Plaintiff was represented by Law Offices of Arthur C. Czaja with respect to the Mortgage Loan.

54. The November 4, 2016 notice of appearance included Mr. Czaja's address and phone number.

55. Mr. Czaja did not give his consent to allow Gregory Funding to communicate with Plaintiff.

8

56.     Mr. Czaja did not fail to respond to any communications from Gregory Funding.

57.     Therefore, the notice of appearance was sufficient to put Gregory Funding on notice that Plaintiff was represented by counsel with respect to the debt that was the subject of the state court foreclosure proceedings.

58.     Section 1692e states:

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section.
>
>> (10)   The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

59.     If late charges are tied to overdue monthly payments, the absence of any monthly payment obligation after acceleration precludes the imposition of late charges for that period. *See Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated.")

60.     While the promissory note provides for late fees when a monthly payment has not been made within 15 calendar days of the date on which it was due, monthly payments are not "due" once the loan is accelerated.

61.     In other words, once Plaintiff's Mortgage Loan was accelerated, Plaintiff's right and obligation to make monthly payments ceased and no payment due could be considered "late."

62.     Gregory Funding's statement that "*[i]f payment is received after 01/17/2023, a $65.12 late fee will be charged*" is false, deceptive, or misleading as it creates the false impression that Plaintiff's Mortgage Loan is subject to late charges; therefore, violating 15 U.S.C. § 1692e(10).

63. At the time Gregory Funding sent the mortgage statement, Gregory Funding was no longer able to charge late charges on the monthly payments Plaintiff owed.

64. Section 1692f states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1)  The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

65. If late charges are tied to overdue monthly payments, the absence of any monthly payment obligation after acceleration precludes the imposition of late charges for that period. *See Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated.")

66. While the promissory note provides for late fees when a monthly payment has not been made within 15 calendar days of the date on which it was due, monthly payments are not "due" once the loan is accelerated.

67. In other words, once Plaintiff's Mortgage Loan was accelerated, Plaintiff's right and obligation to make monthly payments ceased and no payment due could be considered "late."

68. Gregory Funding violated 15 U.S.C. § 1692f(1) by adding $65.12 in late charges to Plaintiff's Mortgage Loan on December 19, 2022—after acceleration and without reinstatement of the Mortgage and the Mortgage Loan when the absence of a monthly payment obligation after acceleration and without reinstatement precludes the imposition of late charges for that period.

10

## THE FAIR DEBT COLLECTION PRACTICES ACT

69.     The Fair Debt Collection Practices Act (FDCPA) is aimed at remedying the use of "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a).

70.     "Among other things, the FDCPA regulates when and where a debt collector may communicate with a debtor, restricts whom a debt collector may contact regarding a debt, prohibits the use of harassing, oppressive, or abusive measures to collect a debt, and bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting a debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir.2010) (citing §§ 1692, 1692c—1692f).

71.     The first provision at issue in this case states in relevant part that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ." § 1692c(a)(2).

72.     Further, the FDCPA broadly prohibits: (1) unfair or unconscionable methods and (2) any false, deceptive, or misleading statements in connection with the collection of a debt. 15 U.S.C. §§ 1692e and f.

73.     The FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated. *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F.Supp.2d 1035, 1042 (N.D. Ill. 2008); *see also Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D. Minn. 2001) ("The FDCPA is a remedial strict liability statute which was intended to be applied in a liberal manner;" *Picht v. Hawks*, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999), *aff'd*, 236 F.3d 446 (8th Cir. 2001); *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) ("[the FDCPA] is a remedial statute that we 'construe . . . broadly, so as to effect its purpose.'").

11

74.     "Congress intended the Act to be enforced primarily by consumers...." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). Further, the legislative history shows that Congress clearly intended that private enforcement actions would be the primary enforcement tool of the Act. *See* 123 Cong. Rec. 28112-13 (1977) (remarks of Rep. Annunzio); 1977 U.S.Code Cong. & Adm. News, *supra* at 1700.

75.     Plaintiff is seeking only statutory damages. All that is required is proof that the statute was violated, although even then it is within the court's discretion to decide whether and if so, how much to award, up to the $1,000 ceiling. *Tolentino v. Friedman,* 46 F.3d 645, 651 (7th Cir. 1995); *Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993).

**REQUIREMENTS FOR CLASS CERTIFICATION**

76.     Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, provides:

**Prerequisites for the maintenance of a class action.** An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1)     The class is so numerous that joinder of all members is impracticable.

(2)     There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)     The representative parties will fairly and adequately protect the interest of the class.

(4)     The class action is an appropriate method for the fair and efficient adjudication of the controversy.

77.     The 1977 Illinois statute was modeled after Rule 23 of the Federal Rules of Civil Procedure, which governs class certification in the Federal courts. *See* Fed. R. Civ. P. 23.

78.     As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained and describe those

12

whom the court finds to be members of the class. This order may be conditional and may be amended before a decision on the merits. 735 ILCS 5/2-802. Certification of a class is within the sound discretion of the trial court. *Haywood v. Superior Bank F.S.B.*, 244 Ill.App.3d 326, 328 (1st Dist. 1993).

79. In a large and impersonal society, class actions are often the last barricade of consumer protection. Generally, individual plaintiffs cannot, will not and ought not be required to pursue what would often be trivial relief. Landers, *Of Legalized Blackmail & Legalized Theft: Consumer Class Actions & the Substance-Procedure Dilemma*, 47 So. Cal. L. Rev. 842, 845 (1974) cites a particularly compelling statement with regard to the philosophy to be considered in determining the basis for class certification:

> "To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer."

80. Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases. As result, numerous FDCPA class actions have been certified. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015); *Vines v. Sands*, 188 F.R.D. 302 (N.D. IL 1999); *Nielsen v. Dickerson*, 1999 WL 350649, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. 1999); *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998); *Shaver v. Trauner*, 1998 WL 35333712, 1998 U.S. Dist. LEXIS 19647 (C.D. Ill. 1998) *report and recommendation adopted*, 1998 WL 35333713, 1998 U.S. Dist. LEXIS 19648 (C.D.

13

Ill. 1998); *Carroll v. United Compucred Collections, Inc.*, 2002 WL 31936511, 2002 U.S. Dist.

LEXIS 25032 (M.D. Tenn. 2002), *report and recommendation adopted in part*, 2003 WL

1903266, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn. 2003) *aff'd,* 399 F.3d 620 (6th Cir. 2005);

*Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291 (N.D. Ill. 2007); *Keele v. Wexler*, 1996 WL

124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill. 1996), *aff'd,* 149 F.3d 589 (7th Cir. 1998); *Miller*

*v. Wexler & Wexler*, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill 1998); *Wilborn v.*

*Dun & Bradstreet*, 180 F.R.D. 347 (N.D. Ill. 1998); *Arango v. GC Servs., LP*, 1998 WL 325257,

1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998); *Avila v. Van Ru Credit Corp.*, 1995 WL 41425,

1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), *aff'd sub nom. Avila v. Rubin*, 84 F.3d 222 (7th Cir.

1996); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D. Ill. 2008); *Cotton v. Asset*

*Acceptance,* 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D. Ill. 2008); *Gammon v. GC*

*Services, L.P.*, 162 F.R.D. 313 (N.D. Ill. 1995); *Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D. Ill.

1988); *Brewer v. Friedman*, 152 F.R.D. 142 (N.D. Ill. 1993) earlier opinion, 833 F. Supp. 697

(N.D. Ill. 1993).

     81.    As shown below, each requirement of certification can be met.

### Numerosity

     82.    Because the language of section 2 – 801(1) is taken verbatim from Federal Rule of

Civil Procedure 23(a)(1), federal case law may be considered as exegetic in deciding whether the

class is so numerous that joinder is impracticable under the Illinois statute. Ill. Ann. Stat., ch. 110,

par. 2 -- 801, Historical & Practice Notes, at 90 (Smith-Hurd 1983). Federal cases establish no

bright line. There is no "magic number" below which there cannot be a class, but above which

there can. The number of class members is relevant, not determinative. *DeMarco v. Edens* 390

F.2d 836 (2d Cir. 1968).

14

83.    Caselaw further dictates that "[w]here the number of class members is at best fairly small, courts require demonstration of additional reasons why joinder is impracticable." *Wood River Area Dev. Corp. v. Germania Federal Sav. & Loan Ass'n,* 198 Ill.App.3d 445, 450 (5th Dist. 1990). These additional factors include: (1) the class members' geographical distribution; (2) the ability to identify and locate the class members; (3) the degree of knowledge and sophistication of the class members and their need for protection; (4) the amount of the claims of the individual class members; and (5) the nature of the cause of action. *Id.* at 451

84.    The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class. *Kendler v. Federated Department Stores, Inc.,* 88 F.R.D. 688 (S.D.N.Y. 1981); *Hedges Enterprises, Inc. v. Continental Group, Inc.,* 81 F.R.D. 461 (E.D. Pa. 1979); *Amswiss International Corp. v. Heublein, Inc.,* 69 F.R.D. 663 (N.D. Ga. 1975).) "The court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by [Gregory Funding], since discovery is not essential to most cases in order to reach a class determination... Where the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1995), §7.22.

85.    The exact number of members of the Putative Class are unknown and not available to Plaintiff at this time. Members of the Putative Class can be objectively identified from records of Gregory Funding to be gained in discovery. However, Plaintiff alleges, more than 40 members of the Putative Class exist; therefore, numerosity is satisfied. *See* Miller, *An Overview of Federal Class Actions: Past, Present, and Future,* Federal Judicial Center, at 22 (1977) ("If the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people

in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule and other factors, \*\*\* become relevant.").

## Predominance of common questions of law or fact

86.     A common question may be shown when the claims of the individual members of the class are based on the common application of a statute, or they were aggrieved by the same or similar misconduct. *McCarthy v. La Salle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634 (1st Dist. 1992).

87.     Here, Plaintiff alleges that the common questions are whether:

A.     Gregory Funding violated 15 U.S.C. § 1692c(a)(2) by communicating with consumers in connection with the collection of consumers' mortgage loans where Gregory Funding knew the consumer is represented by an attorney with respect to such debt;

B.     Gregory Funding violated 15 U.S.C. § 1692e by creating a false impression that consumers are subject to late charges after their mortgage loans have been accelerated;

C.     Gregory Funding violated 15 U.S.C. § 1692f by assessing late charges to consumers' mortgage loans after acceleration and without reinstatement of their mortgage loans; and

D.     Measure of damages.

88.     Where a question of law refers to a standardized conduct of the defendant toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement of Rule 23(a)(2) is usually met. *Franklin v. Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984).

89.     The only individual issue is the identification of the class members, a matter capable of ministerial determination from Gregory Funding's records.   Questions readily answerable from defendants' files do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues predominated

16

where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank").

### Adequacy of representation

90.     The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321.

91.     Plaintiff understands the obligations of a class representative and has retained experienced counsel with substantial experience in consumer class action litigation.

92.     The second relevant consideration is whether the interests of Plaintiff are coincident with the general interests of the class members. Here, Plaintiff and members of the Putative Class seek money damages as the result of Gregory Funding's unlawful collection practices, provided for by 15 U.S.C. § 1692. Given the identity of claims between Plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of Plaintiff and those of the class.

### Class action is an appropriate method for the fair and efficient adjudication of this controversy

93.     Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone,*

*McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992); *Hurwitz v. R.B. Jones Corp.*, 76

F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to

consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability

that large numbers of class members would possess the initiative to litigate individually." *Haynes*

*v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

94.    In this case there is no better method available for the adjudication of the claims

which might be brought by each individual debtor. Individual cases are not economically feasible.

The special efficacy of the consumer class action has been noted by the courts and is applicable

to this case.

> A class action permits a large group of claimants to have their claims
> adjudicated in a single lawsuit. This is particularly important where, as here,
> a large number of small and medium sized claimants may be involved. In
> light of the awesome costs of discovery and trial, many of them would not
> be able to secure relief if class certification were denied....

*In re Folding Carton Antitrust Lit.*, 75 F.R.D. 727, 732 (N.D. Ill. 1977).

> Given the relatively small amount recoverable by each potential litigant, it
> is unlikely that, absent the class action mechanism, any one individual
> would pursue his claim, or even be able to retain an attorney willing to bring
> the action. As Professors Wright, Miller and Kane have discussed, in
> analyzing consumer protection class actions such as the instant one,
> 'typically the individual claims are for small amounts, which means that the
> injured parties would not be able to bear the significant litigation expenses
> involved in suing a large corporation on an individual basis. These financial
> barriers may be overcome by permitting the suit to be brought by one or
> more consumers on behalf of others who are similarly situated.' 7B Wright
> *et al.*, §1778, at 59; *see e.g.*, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797,
> 809 (1985) ('Class actions...may permit the plaintiff to pool claims which
> would be uneconomical to litigate individually.') The public interest in
> seeing that the rights of consumers are vindicated favors the disposition of
> the instant claims in a class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 at 628, 629 (E.D. Pa 1994).

95.     Class certification will provide an efficient and appropriate resolution of the controversy. *Zanni v. Lippold*, 119 F.R.D. 32 (C.D. Ill. 1998).

**CONCLUSION**

**WHEREFORE**, for the reasons stated herein, the Honorable Court should certify this action and the proposed class discussed above.

DATED: January 9, 2023                    Respectfully submitted,

                              **MAUREEN W. ZOMAYAH**

                              By: */s/ Arthur C. Czaja*
                                  Arthur C. Czaja
                                  Attorney for Plaintiff

Arthur C. Czaja
LAW OFFICE OF ARTHUR C. CZAJA
7521 North Milwaukee Avenue
Niles, Illinois 60714
+1 847-647-2106
arthur@czajalawoffices.com
Attorney No: 47671

# **<u>EXHIBIT A</u>**

Return Date: No return date scheduled
Hearing Date: 11/14/2018 10:30 AM - 10:30 AM
Courtroom Number: 2803
Location: District 1 Court
          Cook County, IL

Case: 1:23-cv-01134 Document #: 1-1 Filed: 02/23/23 Page 114 of 180

* 5 0 2 4 7 3 9 3 *
FILED
9/13/2018 9:56 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH11534

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT- CHANCERY DIVISION

BANK OF AMERICA, NATIONAL ASSOCIATION,

              Plaintiff,

    vs.

MAUREEN W. ZOMAYAH AKA MAUREEN
ZOMAYAH, YOUPI Y. ISHO, EDDISON ZOMAYAH
AKA EDDISON K. ZOMAYAH and ILLINOIS
HOUSING DEVELOPMENT AUTHORITY,

           Defendants.

CASE NO. 18-CH- **2018CH11534**
CALENDAR

PROPERTY ADDRESS:
6800 N. CENTRAL AVE.
CHICAGO, IL 60646

## COMPLAINT FOR FORECLOSURE

    1.    Plaintiff, Bank of America, National Association files this Complaint to foreclose the Mortgage hereinafter described and joins the following Persons as Defendants: Maureen W. Zomayah aka Maureen Zomayah, Youpi Y. Isho, Eddison Zomayah aka Eddison K. Zomayah and Illinois Housing Development Authority.

    2.    Attached as Exhibit A is a copy of said Mortgage (with loan numbers redacted), attached as Exhibit B is a copy of the Note (with loan numbers redacted) secured thereby and attached as Exhibit C is a copy of the Assignment of Mortgage (with loan numbers redacted), as herein described.

    3.    Information concerning Mortgage:

    (A)    Nature of instrument:  Mortgage.

    (B)    Date of Mortgage: May 11, 2005.

    (C)    Names of Mortgagors: Maureen W. Zomayah, Youpi Y. Isho, William Isho, deceased as of December 9, 2013 and Eddison Zomayah, signed solely to waive his homestead rights.

    (D)    Name of Mortgagee: ABN AMRO Mortgage Group, Inc.

    (E)    Date and Place of Recording: May 20, 2005 in the Recorder's Office of Cook County, Illinois.

(F)     Identification of Recording: Document No. 0514005186.

(G)     Interest subject to the Mortgage: Fee Simple.

(H)     Amount of original indebtedness, including subsequent advances made under the mortgage: $332,500.00.

(I)     Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

LOT 24 (EXCEPT THE NORTH 10.0 FEET THEREOF) AND THE NORTH 6.50 FEET OF LOT 25 (AS MEASURED ON THE EAST LINE THEREOF) IN BLOCK 9 IN EDGEBROOK ESTATES, BEING A SUBDIVISION IN FRACTIONAL SECTION 33, AND PART OF LOTS 46 AND 53 IN OGDEN AND JONE'S SUBDIVISION OF BRONSON'S PART OF CALDWELL RESERVE IN TOWNSHIP 40 AND 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF REGISTERED IN THE OFFICE OF REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS ON DECEMBER 2, 1966, AS DOCUMENT 2303207.

Permanent Index Number: 10-33-119-042-0000

Commonly known as: 6800 N. Central Ave., Chicago, IL 60646

(J)     Statements as to defaults, including, but not necessarily limited to, date of default, current unpaid principal balance, per diem interest accruing, and any further information concerning the default:

Default by failing to pay the monthly installment due February 1, 2018 and thereafter.

| 1. | Date of calculations: | | September 12, 2018 |
|---|---|---|---|
| 2. | Amounts Due: | | |
| | Principal | $ | 320,899.46 |
| | Interest | $ | 5,031.12 |
| | TOTAL DUE | $ | 325,930.58 |

3.     Per diem interest after date of calculations: $19.78.

(K)     Names of present owners of said premises: Maureen W. Zomayah, Youpi Y. Isho and Eddison Zomayah.

(L)     Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated: Illinois Housing Development Authority.

(M)     Names of defendants claimed to be personally liable for deficiency, if any: Maureen W. Zomayah aka Maureen Zomayah.

(N)     Capacity in which Plaintiff brings this foreclosure:  Plaintiff is the owner and legal holder of the Note, Mortgage and indebtedness.

(O)     Facts in support of redemption period shorter than the longer of (i) 7 months from the date the mortgagor or, if more than one, all mortgagors (I) have been served with summons or by publications or (II) have otherwise submitted to the jurisdiction of the court, or (ii) 3 months from the entry of the judgment of foreclosure, if sought:  None at this time.

(P)     Statement that the right of redemption has been waived by all owners of redemption, if applicable:  Not applicable.

(Q)     Facts in support of request for attorneys' fees and of costs and expenses, if applicable:  Plaintiff has been required to retain counsel for prosecution of this foreclosure and to incur substantial attorney fees, court costs, title insurance or abstract costs and other expenses which should be added to the balance secured by said Mortgage as provided under the terms of the Note and Mortgage.

(R)     Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and the identity of such receiver, if sought:  None at this time.

(S)     Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale, if sought:  No offer made.

(T)     Name or names of Defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof: Maureen W. Zomayah aka Maureen Zomayah, Youpi Y. Isho and Eddison Zomayah aka Eddison K. Zomayah.

4.     CitiMortgage Inc., as successor by merger to ABN AMRO Mortgage Group, Inc., by Bank of America, National Association, as Attorney-in-fact assigned the above described Mortgage to Bank of America, National Association by instrument dated March 11, 2014 and recorded April 1, 2014 as Document No. 1409129061 in the records of the Recorder's Office of Cook County, Illinois.

5.     Illinois Housing Development Authority is named a Defendant in this cause as a result of the following Recapture Agreement.  Said Recapture Agreement is subordinate to the Plaintiff's Mortgage.

(a)     Recapture Agreement dated December 10, 2015, and recorded February 2, 2016 as Document No. 1603334056, made by Maureen W. Zomayah and Eddison K. Zomayah, married to Illinois Housing Development Authority, to secure an indebtedness in the principal amount of $35,000.00 with interest as therein specified and subject to covenants, agreements and conditions as therein contained.

6.     Attached hereto as Exhibit "D" is a copy of the Order Appointing Standing Special Process Server entered for said firm on June 25, 2018.

* 5 0 2 4 7 3 9 3 *

## REQUEST FOR RELIEF

Plaintiff requests:

    (i)     A Judgment of foreclosure and sale.

    (ii)    An order granting a shortened redemption period, if sought.

    (iii)   A personal judgment for deficiency, if sought.

    (iv)   An order granting possession, if sought.

    (v)    An order placing the mortgagee in possession or appointing a receiver, if sought.

    (vi)   A judgment for attorney's fees, costs and expenses, if sought.

BANK OF AMERICA, NATIONAL
ASSOCIATION,
Plaintiff,

Dated     9/12/18        By    _Danielle E. Patt_

                    Of Heavner, Beyers & Mihlar, LLC
                         Its Attorney

Veronika L. Jones (#6313161)
HEAVNER, BEYERS & MIHLAR, LLC - #40387
Attorneys at Law
P.O. Box 740
Decatur, IL 62525
Email: CookPleadings@hsbattys.com
Telephone: (217) 422-1719
Facsimile: (217) 422-1754

DANIELLE E. PATTERSON

\* 5 0 2 4 7 3 9 3 \*





Doc#: 0514006186
Eugene "Gene" Moore  Fee: $48.00
Cook County Recorder of Deeds
Date: 05/20/2005 04:02 PM  Pg: 1 of 13

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
1201 EAST LINCOLN
MADISON HEIGHTS, MICHIGAN 48071-4171
ATTN:FINAL/TRAILING DOCUMENTS

This instrument was prepared by:

LOAN # :  ████████

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated **MAY 11, 2005,**          together with all Riders to this document.
**(B) "Borrower"** is **MAUREEN W ZOMAYAH,.MARRIED TO EDDISON ZOMAYAH AND WILLIAM ISHO AND YOUPI Y. ISHO, HUSBAND AND WIFE**

MAIL TO:
RESIDENTIAL TITLE SERVICES
1910 S. HIGHLAND AVE.
SUITE 202
LOMBARD, IL 60148

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is **ABN AMRO MORTGAGE GROUP, INC.**

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3014 1/01          Initials:
© 1999-2004 Online Documents, Inc.                     **Page 1 of 12**           ILUDEED           ILUDEDL  0402
05-11-2005 12:02

0514005186 Page: 2 of 13

*5 0 2 4 7 3 9 3 *

LOAN #:

*Lender* is a  CORPORATION,                                organized and existing under the laws of
DELAWARE.                                                  Lender's address is  2600 W. BIG BEAVER
RD., TROY, MICHIGAN 48084.

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated  MAY 11, 2005.            The Note
states that Borrower owes Lender ****THREE HUNDRED THIRTY TWO THOUSAND FIVE HUNDRED AND NO/100
****************************************************** Dollars (U.S.      $332,500.00  )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than JUNE 1, 2035.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be
executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider                ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is
not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu
of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications
of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01        Initials: _____
© 1999-2004 Online Documents, Inc.                        Page 2 of 12                        ILUDEDL  0402
                                                                                             05-11-2005 12:02

LOAN #:

assigns, with power of sale, the following described property located in the COUNTY
[Type of Recording Jurisdiction] of COOK                                    [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of 6800 N CENTRAL AVE, CHICAGO,
[Street] [City]

Illinois     60646           ("Property Address"):
         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurte-
nances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by
this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
  1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay
when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges
due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the
Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received
by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that
any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following
forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's
check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,
instrumentality, or entity; or (d) Electronic Funds Transfer
  Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any
payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may
accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or
prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such
payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date,
then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3014 1/01      Initials: _MZ_
© 1999-2004 Online Documents, Inc.                    Page 3 of 12                          ILUDEDL  0402
                                                                                    05-11-2005 12:02

LOAN #: ▮▮▮▮▮▮

payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Initials: MZ

ILUDEDL 0402
05-11-2005 12:02

EZ

LOAN # : ▮▮▮▮▮▮▮

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section. 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3014 1/01   Initials: _MZ_
© 1999-2004 Online Documents, Inc.   **Page 5 of 12**   ILUDEDL 0402
05-11-2005 12:02

LOAN #: ▇▇▇▇▇

proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3014 1/01
© 1999-2004 Online Documents, Inc.                                          **Page 6 of 12**

Initials: _MZ_
ILUDEDL 0402
05-11-2005 12:02

* 5 0 2 4 7 3 9 3 *
0514005186 Page: 7 of 13

LOAN #

the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage**

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3014 1/01     Initials:
© 1999-2004 Online Documents, Inc.       **Page 7 of 12**

ILUDEDL 0402
05-11-2005 12:02

LOAN #:

Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01
© 1999-2004 Online Documents, Inc.    **Page 8 of 12**

Initials: _____

ILUDEDL 0402
05-11-2005 12:02

LOAN #: ▆▆▆▆

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3014 1/01

© 1999-2004 Online Documents, Inc.     **Page 9 of 12**     Initials: _MZ_

ILUDEDL  0402

05-11-2005  12:02

LOAN #: ▮▮▮▮▮▮▮

transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01                Initials: _____
© 1999-2004 Online Documents, Inc.                                    **Page 10 of 12**                          ILUDEDL   0402
                                                                                                                05-11-2005 12:02

* 5 0 2 4 7 3 9 3 *
0514005186 Page: 11 of 13

LOAN # ▓

laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

Initials: _MZ_

ILUDEDL 0402
05-11-2005, 12:02

* 5 0 2 4 7 3 9 3 *
0514005186 Page: 12 of 13

LOAN #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MAUREEN W ZOMAYAH

YOUPI Y. ISHO

WILLIAM ISHO

State of ILLINOIS
County of: COOK

EDDISON ZOMAYAH*

The foregoing instrument was acknowledged before me this _____ 5/11/05 _____ (date)
by MAUREEN W ZOMAYAH, (name of person acknowledged).

Eddison Zomayah,
william Isho &
Youpi y. Isho

_____
(Signature of Person Taking Acknowledgement)

_____
(Title or Rank)

_____
(Serial Number, if any)

OFFICIAL SEAL
SHARON MASSEY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES JAN. 29, 2007

* EDDISON ZOMAYAH SIGNS FOR THE SOLE PURPOSE OF WAIVING HIS
  HOMESTEAD RIGHTS.

## EXHIBIT "A"

LOT 24 (EXCEPT THE NORTH 10.0 FEET THEREOF) AND THE NORTH 6.50 FEET OF LOT 25 (AS MEASURED ON THE EAST LINE THEREOF) IN BLOCK 9 IN EDGEBROOK ESTATES, BEING A SUBDIVISION IN FRACTIONAL SECTION 33, AND PART OF LOTS 36 AND 53 IN OGDEN AND HONE'S SUBDIVISION OF BRONSON'S PART OF CALDWELL RESERVE IN TOWNSHIP 40 AND 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THREREOF REGISTERED IN THE OFFICE OF REGISTRAR OF TITLES OF COOK COUNTY, ILLINOIS ON DECEMBER 2, 1966, AS DOCUMENT 2303207.

PARCEL ID NUMBER: 10-33-119-042-0000

COMMONLY KNOWN AS:   6800 NORTH CENTRAL AVENUE
CHICAGO, IL  60646



EXHIBIT
13

**NOTE**

LOAN #: _____

MAY 11, 2005        , SCHAUMBURG,        ILLINOIS
[Date]        [City]        [State]

6800 N CENTRAL AVE, CHICAGO, IL 60646
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $332,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1ST day of each month beginning on JULY 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
4242 N. HARLEM AVE.
NORRIDGE, IL 60706
ATTN: CASHIERING
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $2,101.63.

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered to me by other means.
(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Initials: MZ

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2004 Online Documents, Inc.        Page 1 of 2        F3200NOT 0401
05-11-2005 12:02

 



* 5 0 2 4 7 3 9 3 *

LOAN #: ▮▮▮▮▮

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Maureen W Zomayah_ (Seal)

MAUREEN W ZOMAYAH

PAY TO THE ORDER OF     LaSalle Bank N.A.

WITHOUT RECOURSE
ABN AMRO MORTGAGE GROUP, INC.

_signature_

MARGARET A. BETZ
FIRST VICE PRESIDENT

Pay to the order of
_____
Without recourse
Bank of America, National Association
Successor by merger to LaSalle Bank, N.A.

_Gerald T. Sajdak_
Gerald T. Sajdak
Senior Vice President

[Sign Original Only]

\* 5 0 2 4 7 3 9 3 \*

**EXHIBIT**

**C**

Recording requested by:
CITIMORTGAGE INC., AS
SUCCESSOR BY MERGER TO ABN
AMRO MORTGAGE GROUP, INC



Doc#:  1409129061 Fee: $42.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 04/01/2014 11:55 AM Pg: 1 of 3

When recorded mail to:
~~BANK OF AMERICA~~
~~DOCUMENT PROCESSING~~
~~TX2-979-01-19~~
~~4500 AMON CARTER BLVD~~
~~FORT WORTH, TX 76155-2264~~
~~ATTN: ASSIGNMENT UNIT~~

CoreLogic
450 E. Boundary St. Chapin, SC 29036

CORPORATION ASSIGNMENT OF MORTGAGE
Branch/Source Code ▮▮▮▮▮                    Doc. ID#
                                            Commitment# ▮▮▮▮▮

For value received, the undersigned, CITIMORTGAGE INC., AS SUCCESSOR BY
MERGER TO ABN AMRO MORTGAGE GROUP, INC, 1000 TECHNOLOGY DRIVE, O'FALLON,
MO 63368, hereby grants, assigns and transfers to:
  BANK OF AMERICA, N.A.
  1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063

All its interest under that certain Mortgage dated  5/11/05, executed by:
MAUREEN W ZOMAYAH and EDDISON ZOMAYAH AND WILLIAM ISHO, YOUPI Y. ISHO,
Mortgagor as per MORTGAGE recorded as Instrument No. 0514005186 on 5/20/05
in Book N/A Page N/A of official records in the County Recorder's Office
of COOK County, ILLINOIS.
  Tax Parcel =   10-33-119-042-0000,
Original Mortgage $332,500.00
6600 N CENTRAL AVE, CHICAGO, IL 60646

  (See page attached hereto for Legal Description)
Together with the Note or Notes therein described or referred to, the
money due and to become due thereon with interest, and all rights accrued
or to accrue under said Mortgage.

S ___
P 3
S ___
M NO
SC ___
E. ___
INT ___

CORPORATION ASSIGNMENT OF MORTGAGE

Branch/Source Code [redacted]                    Doc. ID# [redacted]
                                                 Commitment# [redacted]

Dated: __MAR 11 2014__  CITIMORTGAGE INC., AS SUCCESSOR BY MERGER TO ABN AMRO
                        MORTGAGE GROUP, INC. By BANK of AMERICA, N.A., AS
                                                                    - ATTORNEY-IN-FACT
                        By _____
                            Talisha Wallace  ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On __MAR 11 2014__ before me, _____Danya Bucaro_____, Notary Public,
personally appeared _____Talisha Wallace_____, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
             Danya Bucaro

```
        DANYA BUCARO
     Commission # 1880386
    Notary Public - California
       Los Angeles County
  My Comm. Expires Mar 15, 2014
```

Prepared by: SEVAN APIK
1800 TAPO CANYON RD
SIMI VALLEY, CA 93063
Phone#: (213) 345-0511

Recording requested by
CITIMORTGAGE INC., AS SUCCESSOR BY
MERGER TO ABN AMRO MORTGAGE GROUP,
INC

When recorded mail to:
BANK OF AMERICA
DOCUMENT PROCESSING TX2-979-01-19
4500 AMON CARTED BLVD
FORT WORTH, TX 76155-2202
Attn: ASSIGNMENT UNIT

CORPORATION ASSIGNMENT OF MORTGAGE

Branch/Source Code ▮▮▮▮▮▮▮   Doc. ID#
                          Commitment# ▮▮▮▮▮▮▮

## EXHIBIT "A"

LOT 24 (EXCEPT THE NORTH 10.0 FEET THEREOF) AND THE NORTH 6.50 FEET OF LOT 25
(AS MEASURED ON THE EAST LINE THEREOF) IN BLOCK 9 IN EDGEBROOK ESTATES,
BEING A SUBDIVISION IN FRACTIONAL SECTION 33, AND PART OF LOTS 36 AND 53 IN
OGDEN AND HONE'S SUBDIVISION OF BRONSON'S PART OF CALDWELL RESERVE IN
TOWNSHIP 40 AND 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN,
ACCORDING TO THE PLAT THEREOF REGISTERED IN THE OFFICE OF REGISTRAR OF
TITLES OF COOK COUNTY, ILLINOIS ON DECEMBER 2, 1966, AS DOCUMENT 2303207.



EXHIBIT
D

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION
MORTGAGE FORECLOSURE/MECHANICS LIEN SECTION

IN RE THE APPLICATION OF )
HEAVNER, BEYERS & MIHLAR, LLC )
FOR A STANDING ORDER FOR )
APPOINTMENT OF A SPECIAL ) SPS ORDER #
PROCESS SERVER FOR THE )
QUARTER ENDING ON )
SEPTEMBER 30, 2018 )

## ORDER APPOINTING STANDING SPECIAL PROCESS SERVER

This matter coming on to be heard on the application of the Law Firm of Heavner, Beyers & Mihlar, LLC for the Appointment of a Special Process Server for the Quarter Ending September 30, 2018,

It is ordered:

1.  The following private detective agencies certified under the Private Detective, Private Alarm Private Security, and Locksmith Act of 1993 and their employees over 18 years of age and in any case in which he, or she, or they are not a party are hereby appointed Standing Special Process Servers for the Quarter Ending September 30, 2018 in cases filed by the law firm of Heavner, Beyers & Mihlar, LLC in the Mortgage Foreclosure Section of the Chancery Division pursuant to 735 ILCS 5/2-202:

ABC Legal Services – License Number 117-001765

2.  The authority of the Standing Special Process Servers is limited solely to the service of process in mortgage foreclosure cases for the period ending September 30, 2018.

3.  The law firm of Heavner, Beyers & Mihlar, LLC is given leave to file this Order in all cases filed in the Mortgage Foreclosure Section of the Chancery Division for those cases filed during the quarter designated herein.

ENTER:        JUDGE LEWIS NIXON

JUDGE        JUN 25 2018

Circuit Court - 1840

JULIE BEYERS (#6217185)
FAIQ MIHLAR (#6274089)
MEREDITH PITTS (#6280878)
HEAVNER, BEYERS & MIHLAR, LLC - #40387
Attorneys at Law
P.O. Box 740
Decatur, IL 62525
Telephone: (217) 422-1719
Facsimile: (217) 422-1754

# **<u>EXHIBIT B</u>**

* 5 0 2 4 7 3 9 3 *
FILED
7/5/2022 10:58 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH11534
Calendar, 62
18537366

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT- CHANCERY DIVISION

U.S. BANK NATIONAL ASSOCIATION, AS
INDENTURE TRUSTEE ON BEHALF OF AND WITH
RESPECT TO AJAX MORTGAGE LOAN TRUST
2019-E, MORTGAGE-BACKED SECURITIES, SERIES
2019-E,

                    **Plaintiff,**

    vs.

MAUREEN W. ZOMAYAH AKA MAUREEN
ZOMAYAH, YOUPI Y. ISHO, EDDISON ZOMAYAH
AKA EDDISON K. ZOMAYAH AND ILLINOIS
HOUSING DEVELOPMENT AUTHORITY,

                  **Defendants.**

CASE NO. 18-CH-11534
CALENDAR 62

PROPERTY ADDRESS:
6800 N. CENTRAL AVE.
CHICAGO, IL 60646

## AFFIDAVIT OF AMOUNTS DUE AND OWING

I, Julia Rust, am the Authorized Agent of Gregory Funding, LLC as servicer for **U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE ON BEHALF OF AND WITH RESPECT TO AJAX MORTGAGE LOAN TRUST 2019-E, MORTGAGE-BACKED SECURITIES, SERIES 2019-E.** I have authority to make this statement on its behalf because I am employed by the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

If called to testify at the trial of this matter, I could competently testify as to the facts contained in this affidavit.

Gregory Funding, LLC acquired the servicing rights for the Defendant's loan on or about 11/1/2019 from Bank of America. At the time of this transfer, the Defendant's loan was in default and the unpaid principal balance was $320,899.46. As part of the transfer of servicing rights from Bank of America ("prior servicer"), Gregory Funding, LLC incorporated existing records concerning the borrower's account into its servicing system. It is Gregory Funding, LLC's normal business practice to incorporate such records from prior servicers upon a service transfer, and Gregory Funding, LLC relies upon the accuracy of those existing records to continue servicing mortgage loan accounts.

The amount due is based on my review of the following records: Loan Documents and Loan Pay History. A true and accurate copy of the payment history and any other document I reviewed when making this calculation is attached to this affidavit.

Gregory Funding, LLC uses The Mortgage Office ("TMO") to automatically record and track mortgage payments. This type of tracking and accounting program is produced by Applied Business Software, recognized as standard in the industry. When a mortgage payment is received, the following procedure is used to process and apply the payment, and to create the records: Payments come into a lock box and are deposited into a servicing account. Our accounting department identifies the amount and the borrower and applies the funds to the loan through TMO, pursuant to the terms in the loan documents. In this case, borrower is due for March 1, 2019 and has made no ~JR~ ~JR~ payments since Gregory Funding, LLC acquired the loan. Therefore we rely on the pay history received from Bank of America. I reviewed TMO and the Loan Pay History from the prior servicer. The payment records are made and/or kept in the regular course of Gregory Funding, LLC's business, and the payment records were obtained from the prior servicer in the regular course of business. In the case at bar, the entries reflecting the Defendant's payments were made in accordance with the procedure detailed above, and these entries were made at or near the time that the payment was received.

TMO accurately records mortgage payments and expenses and incorporates existing records when properly operated. In the case at bar, TMO was properly operated to accurately incorporated the Defendant's mortgage account records and accurately record amounts expended by Gregory Funding, LLC.

Based on the foregoing, Maureen W. Zomayah aka Maureen Zomayah failed to pay amounts due under the Note from the monthly payment due March 1, 2019 through the present, and the amount due and owing as of June 30, 2022 is:

| | | |
|---|---|---|
| Principal | $ | 315,385.45 |
| Interest<br>from 03/01/2019 to 06/30/2022 @<br>2.25% ($33.95 Per diem) | $ | 32,063.09 |
| Pro Rata MIP/PMI | $ | 0.00 |
| Escrow Advance | $ | 15,719.92 |
| Late Charges | $ | 1,842.46 |
| NSF Charges | $ | 15.00 |
| Property Maintenance | $ | 0.00 |
| Property Inspections | $ | 310.00 |
| BPO | $ | 0.00 |
| GROSS AMOUNT DUE | $ | 365,335.92 |
| Less/Plus balance in reserve<br>accounts | $ | (775.98) |
| NET AMOUNT DUE | $ | 364,559.94 |

AFFIANT STATES NOTHING MORE.

STATE OF                   )
OREGON

                               )

COUNTY OF WASHINGTON    )

BY: _____

SUBSCRIBED AND SWORN TO
BEFORE ME THIS _____ DAY
OF _____, 2022

_____
Eric Kenneth Ayles

OFFICIAL STAMP
ERIC KENNETH AYLES
NOTARY PUBLIC - OREGON
COMMISSION NO. 989231
MY COMMISSION EXPIRES JULY 4, 2023



PO Box 230579
Tigard, OR 97281-0579

* 5 0 2 4 7 3 9 3 *

6/2/2022

Gregory Funding
PO Box 230579
Tigard, OR 97281-0579
(866) 712-5698

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646
Account: ▮▮▮▮▮▮

**LOAN PAYOFF STATEMENT**

| Loan Number | ▮▮▮▮▮▮ |
|---|---|
| Payoff Date | 6/30/2022 |
| Maturity Date | 8/1/2057 |
| Next Payment Due | 3/1/2019 |
| Interest Rate | 2.250% |
| Interest Paid-To Date | 2/1/2019 |
| Principal Balance | $315,385.45 |
| Deferred Principal | $0.00 |
| Accrued Interest from 02/01/2019 to 06/30/2022 | $32,063.09 |
| Unpaid Late Charges | $1,777.34 |
| Accrued Late Charges | $65.12 |
| Interest Credit | ($775.98) |
| Unpaid Charges | $8,072.56 |
| Escrow Deficiency | $15,719.92 |
| Reserve Balance | $0.00 |
| Wire Fee (If Paying by Wire) | $6.00 |
| Reconveyance | $0.00 |
| **Payoff Amount** | **$372,313.50** |

Please add $33.95 for each additional day past 6/30/2022

We reserve the right to amend this demand should any changes occur that would increase the total amount for payoff. This demand expires on 6/30/2022, at which time you are instructed to contact this office for additional instructions.

Sincerely,

Gregory Funding

*v2.0 11/30/2020 LTR210*

## LOAN CHARGES

| Date | Description | Owed |
|------|-------------|------|
| 11/01/2019 | Corporate Advances - Purchased - BAC | $4,484.75 |
| 11/01/2019 | Prior servicer late fees | $255.25 |
| 12/03/2020 | Interest on escrow advances | $49.36 |
| 01/05/2021 | Interest on escrow advances | $24.94 |
| 02/03/2021 | Interest on escrow advances | $23.77 |
| 03/03/2021 | Interest on escrow advances | $22.30 |
| 04/02/2021 | Foreclosure legal fee | $200.00 |
| 04/05/2021 | Interest on escrow advances | $33.53 |
| 05/04/2021 | Interest on escrow advances | $28.77 |
| 05/11/2021 | Foreclosure legal fee | $250.00 |
| 06/03/2021 | Interest on escrow advances | $28.54 |
| 07/06/2021 | Interest on escrow advances | $27.55 |
| 08/03/2021 | Interest on escrow advances | $28.50 |
| 09/03/2021 | Interest on escrow advances | $28.19 |
| 09/24/2021 | Foreclosure legal fee | $275.00 |
| 10/05/2021 | Interest on escrow advances | $32.77 |
| 10/19/2021 | Property inspection fee | $250.00 |
| 10/19/2021 | Foreclosure legal fee | $15.00 |
| 10/19/2021 | Return check charge | $15.00 |
| 11/03/2021 | Interest on escrow advances | $38.07 |
| 12/03/2021 | Interest on escrow advances | $36.80 |
| 12/22/2021 | Property inspection fee | $15.00 |
| 01/04/2022 | Interest on escrow advances | $38.07 |

\* 5 0 2 4 7 3 9 3 \*

| 01/25/2022 | Property inspection fee | $15.00 |
|---|---|---|
| 02/03/2022 | Interest on escrow advances | $38.07 |
| 02/25/2022 | Foreclosure legal fee | $200.00 |
| 03/03/2022 | Interest on escrow advances | $39.86 |
| 04/01/2022 | Property inspection fee | $15.00 |
| 04/05/2022 | Interest on escrow advances | $50.07 |
| 04/14/2022 | Property inspection fee | $15.00 |
| 04/14/2022 | Foreclosure legal fee | $250.00 |
| 04/14/2022 | Foreclosure legal fee | $400.00 |
| 04/14/2022 | Foreclosure legal fee | $800.00 |
| 05/03/2022 | Interest on escrow advances | $48.40 |
| | **Total** | **$8,072.56** |

## ESCROW

| Date | Memo | Owed |
|---|---|---|
| 11/01/2019 | Bank of America Escrow Advances - Purchased - BAC | -$12,159.14 |
| 02/07/2020 | Gregory Funding LLC ERIE INSURANCE-00255 | -$603.00 |
| 03/03/2020 | Gregory Funding LLC COOK COUNTY-120160000 | -$3,878.75 |
| 07/31/2020 | Gregory Funding LLC COOK COUNTY-120160000 | -$2,822.67 |
| 11/30/2020 | Maureen W Zomayah Borrower Payment | $9,656.61 |
| 11/30/2020 | Maureen W Zomayah Borrower Payment | $470.45 |
| 01/04/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
| 01/29/2021 | Maureen W Zomayah Borrower Payment | $1,411.35 |
| 02/26/2021 | Gregory Funding LLC COOK COUNTY-120160000 | -$3,685.78 |
| 05/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
| 08/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |

| 08/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
|------------|-------------------------------------|---------|
| 08/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
| 08/03/2021 | Maureen W Zomayah Borrower Payment | $470.45 |
| 09/14/2021 | Gregory Funding LLC COOK COUNTY-120160000 | -$3,164.20 |
| 02/15/2022 | Gregory Funding LLC COOK COUNTY-120160000 | -$3,767.49 |

*v2.0 11/30/2020 LTR210*

\* 5 0 2 4 7 3 9 3 \*

# GREGORY FUNDING

Loan Number:
Borrower: Marvren W Lomayah
Co-borrower:
Property Address: 6800 N Central Ave
Property City, ST, Zip: Chicago, IL 60646
Mailing Address: 6800 N Central Ave
Mailing City, ST, Zip: Chicago, IL 60646-5101
Mailing Country: UNITED STATES
Lender: U.S. Bank National Association, as Indenture Trustee on behalf of and with respect to Ajax Mortgage Loan Trust 2019-E, Mortgage-Backed Securities, Series 2019-E
Days Past Due Date: 719
Report Date: 2/21/2020
Payment History: Gregory Funding

Version: 5.2.7          Server: REDWOOD

| Reference | Transaction | Date Received | Date Due | Total | Principal | Interest | Escrow | Other Payments | Reserve | Late Charge Paid | Loan Charges | Interest on Charges | Fees To Lender | Unpaid Interest | Late Charge Added | Days Late | Principal Balance | Escrow Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15500 | Upb Expense | 11/01/2019 | | $0.00 | $0.00 | $0.00 | -$11,559.74 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | -$11,559.74 |
| | Transfer Balance | 11/01/2019 | 01/01/2018 | -$320,899.46 | -$320,899.46 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | $320,899.46 | -$11,559.74 |
| | LateCh | 10/17/2020 | 10/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $51.35 | 1 | $320,899.46 | -$11,559.74 |
| | LateCh | 10/17/2020 | 11/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $51.35 | | $320,899.46 | -$11,559.74 |
| | LateCh | 10/17/2020 | 12/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $51.35 | 1 | $320,899.46 | -$11,559.74 |
| | LateCh | 10/17/2020 | 01/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $51.35 | 1 | $320,899.46 | -$11,559.74 |

* 5 0 2 4 7 3 9 3 *

| TRNTYP | TRNDTE | TRNDUE | TRNAMT | TRNINT | ADNPMT | TRNPRN |
|---|---|---|---|---|---|---|
| 590 | 2/2/2006 | 10/1/2005 | -2786.63 | 0 | 0 | 0 |
| 590 | 8/7/2006 | 10/1/2005 | -2544.3 | 0 | 0 | 0 |
| 947 | 1/8/2007 | 10/1/2005 | 1576.2 | 0 | 0 | 0 |
| 20 | 1/8/2007 | 10/1/2005 | 10089.14 | 0 | 0 | 0 |
| 940 | 1/12/2007 | 10/1/2005 | -31730.86 | 0 | 0 | -31730.86 |
| 944 | 1/12/2007 | 12/1/2006 | 0 | 0 | 0 | 0 |
| 20 | 1/16/2007 | 12/1/2006 | 6608.14 | 0 | 0 | 0 |
| 20 | 1/24/2007 | 12/1/2006 | -300 | 0 | 0 | 0 |
| 20 | 1/24/2007 | 12/1/2006 | -310 | 0 | 0 | 0 |
| 20 | 1/24/2007 | 12/1/2006 | -95 | 0 | 0 | 0 |
| 20 | 1/26/2007 | 12/1/2006 | -999.99 | 0 | 0 | 0 |
| 20 | 1/26/2007 | 12/1/2006 | -999.99 | 0 | 0 | 0 |
| 20 | 1/26/2007 | 12/1/2006 | -673.02 | 0 | 0 | 0 |
| 10 | 1/26/2007 | 1/1/2007 | 0 | 1966.35 | 0 | 367.96 |
| 20 | 1/30/2007 | 1/1/2007 | -150 | 0 | 0 | 0 |
| 20 | 1/30/2007 | 1/1/2007 | -90 | 0 | 0 | 0 |
| 20 | 1/30/2007 | 1/1/2007 | 0 | 0 | 0 | 3060.49 |
| 165 | 1/30/2007 | 1/1/2007 | -437.46 | 0 | 0 | 0 |
| 10 | 2/5/2007 | 2/1/2007 | 2778.55 | 1947.78 | 0 | 386.53 |
| 20 | 2/5/2007 | 2/1/2007 | 63.52 | 0 | 0 | 63.52 |
| 590 | 2/6/2007 | 2/1/2007 | -2665.47 | 0 | 0 | 0 |
| 590 | 11/14/2007 | 2/1/2007 | -2418.14 | 0 | 0 | 0 |
| 10 | 2/14/2008 | 3/1/2007 | 2778.54 | 1945.34 | 0 | 388.97 |
| 590 | 2/26/2008 | 3/1/2007 | -2541.81 | 0 | 0 | 0 |
| 947 | 8/15/2008 | 3/1/2007 | 1050.48 | 0 | 0 | 0 |
| 10 | 10/23/2008 | 4/1/2007 | 4107.25 | 1943.24 | 0 | 391.07 |
| 10 | 10/23/2008 | 5/1/2007 | 2778.55 | 1941.12 | 0 | 393.19 |
| 10 | 10/23/2008 | 6/1/2007 | 2778.55 | 1938.99 | 0 | 395.32 |
| 10 | 10/23/2008 | 7/1/2007 | 2778.55 | 1936.85 | 0 | 397.46 |
| 10 | 10/23/2008 | 8/1/2007 | 2778.55 | 1934.69 | 0 | 399.62 |
| 10 | 10/23/2008 | 9/1/2007 | 2778.55 | 1932.53 | 0 | 401.78 |
| 10 | 12/1/2008 | 10/1/2007 | 3531.9 | 1930.35 | 0 | 403.96 |
| 10 | 12/1/2008 | 11/1/2007 | 2778.55 | 1928.16 | 0 | 406.15 |
| 20 | 1/8/2009 | 11/1/2007 | -2082.05 | 0 | 0 | 0 |
| 10 | 1/12/2009 | 12/1/2007 | 3531.9 | 1925.96 | 0 | 408.35 |
| 10 | 1/12/2009 | 1/1/2008 | 2778.55 | 1923.75 | 0 | 410.56 |
| 20 | 1/16/2009 | 1/1/2008 | -753.35 | 0 | 0 | 0 |
| 10 | 2/3/2009 | 2/1/2008 | 4000 | 1921.53 | 0 | 412.78 |
| 590 | 2/6/2009 | 2/1/2008 | -2554.37 | 0 | 0 | 0 |
| 590 | 2/25/2009 | 2/1/2008 | -2548.09 | 0 | 0 | 0 |
| 10 | 3/3/2009 | 3/1/2008 | 3252.52 | 1919.29 | 0 | 415.02 |
| 10 | 3/3/2009 | 4/1/2008 | 2778.55 | 1917.04 | 0 | 417.27 |
| 10 | 4/1/2009 | 5/1/2008 | 3252.52 | 1914.78 | 0 | 419.53 |
| 10 | 4/1/2009 | 6/1/2008 | 2778.55 | 1912.51 | 0 | 421.8 |
| 10 | 4/30/2009 | 7/1/2008 | 3252.52 | 1910.23 | 0 | 424.08 |
| 10 | 4/30/2009 | 8/1/2008 | 2778.55 | 1907.93 | 0 | 426.38 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 | 5/7/2009 | 8/1/2008 | 100 | 0 | 0 | 0 |
| 10 | 5/8/2009 | 9/1/2008 | 0 | 1905,62 | 0 | 428.69 |
| 10 | 5/28/2009 | 10/1/2008 | 3252.52 | 1903.3 | 0 | 431.01 |
| 20 | 5/28/2009 | 10/1/2008 | 2778.55 | 1900.96 | 0 | 433.35 |
| 944 | 6/24/2009 | 7/1/2009 | 0 | 0 | 0 | 0 |
| 940 | 6/24/2009 | 7/1/2009 | -15188.96 | 0 | 0 | -15188.96 |
| 20 | 6/25/2009 | 7/1/2009 | -5823.42 | 0 | 0 | -5823.42 |
| 20 | 6/25/2009 | 7/1/2009 | 5823.42 | 0 | 0 | 0 |
| 20 | 6/25/2009 | 7/1/2009 | 0 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -20 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -999.99 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -999.99 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -999.99 | 0 | 0 | 0 |
| 20 | 6/30/2009 | 7/1/2009 | -411,21 | 0 | 0 | 0 |
| 165 | 7/6/2009 | 7/1/2009 | -453.97 | 0 | 0 | 0 |
| 10 | 7/31/2009 | 8/1/2009 | 2621.67 | 2012.43 | 0 | 184.03 |
| 20 | 7/31/2009 | 8/1/2009 | 378.33 | 0 | 0 | 378.33 |
| 10 | 9/1/2009 | 9/1/2009 | 2621.67 | 2009.39 | 0 | 187.07 |
| 10 | 9/29/2009 | 10/1/2009 | 2621.67 | 2008.37 | 0 | 188.09 |
| 10 | 10/29/2009 | 11/1/2009 | 2621.67 | 2007.36 | 0 | 189.1 |
| 590 | 11/12/2009 | 11/1/2009 | -3635.94 | 0 | 0 | 0 |
| 10 | 11/19/2009 | 12/1/2009 | 2621.67 | 2006.33 | 0 | 190.13 |
| 10 | 12/23/2009 | 1/1/2010 | 2621.67 | 2005.3 | 0 | 191.16 |
| 10 | 1/29/2010 | 2/1/2010 | 2854.43 | 2004.27 | 0 | 192.19 |
| 590 | 2/10/2010 | 2/1/2010 | -3401.22 | 0 | 0 | 0 |
| 10 | 3/1/2010 | 3/1/2010 | 2854.43 | 2003.22 | 0 | 193.24 |
| 10 | 4/5/2010 | 4/1/2010 | 2854.43 | 2002.18 | 0 | 194.28 |
| 520 | 4/12/2010 | 4/1/2010 | -391 | 0 | 0 | 0 |
| 10 | 5/14/2010 | 5/1/2010 | 2854.43 | 2001.13 | 0 | 195.33 |
| 10 | 6/15/2010 | 6/1/2010 | 2854.43 | 2000.07 | 0 | 196.39 |
| 10 | 7/15/2010 | 7/1/2010 | 2854.43 | 1999 | 0 | 197.46 |
| 10 | 8/16/2010 | 8/1/2010 | 2854.43 | 1997.93 | 0 | 198.53 |
| 20 | 9/16/2010 | 8/1/2010 | 1500 | 0 | 0 | 0 |
| 20 | 10/14/2010 | 8/1/2010 | 1500 | 0 | 0 | 0 |
| 20 | 10/15/2010 | 8/1/2010 | -2995.79 | 0 | 0 | 0 |
| 10 | 10/15/2010 | 9/1/2010 | 2995.79 | 1996.86 | 0 | 199.6 |
| 20 | 11/17/2010 | 9/1/2010 | 0 | 0 | 0 | 0 |
| 20 | 11/17/2010 | 9/1/2010 | 1500 | 0 | 0 | 0 |
| 590 | 11/23/2010 | 9/1/2010 | -2411.08 | 0 | 0 | 0 |
| 20 | 12/16/2010 | 9/1/2010 | 1000 | 0 | 0 | 0 |
| 20 | 1/13/2011 | 9/1/2010 | 1000 | 0 | 0 | 0 |
| 10 | 1/18/2011 | 10/1/2010 | 2995.79 | 1995,78 | 0 | 200.68 |
| 20 | 1/18/2011 | 10/1/2010 | -2995.79 | 0 | 0 | 0 |
| 590 | 2/17/2011 | 10/1/2010 | -3196.77 | 0 | 0 | 0 |
| 20 | 2/25/2011 | 10/1/2010 | 700 | 0 | 0 | 0 |
| 20 | 3/24/2011 | 10/1/2010 | 500 | 0 | 0 | 0 |
| 520 | 4/12/2011 | 10/1/2010 | -481 | 0 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 | 4/25/2011 | 10/1/2010 | -1814.05 | 0 | 0 | 0 |
| 590 | 10/17/2011 | 10/1/2010 | -2572.7 | 0 | 0 | 0 |
| 590 | 2/9/2012 | 10/1/2010 | -3173.21 | 0 | 0 | 0 |
| 520 | 4/9/2012 | 10/1/2010 | -411 | 0 | 0 | 0 |
| 20 | 5/30/2012 | 10/1/2010 | 2057.04 | 0 | 0 | 0 |
| 20 | 7/3/2012 | 10/1/2010 | 2057.04 | 0 | 0 | 0 |
| 20 | 7/5/2012 | 10/1/2010 | -2776.13 | 0 | 0 | 0 |
| 10 | 7/5/2012 | 11/1/2010 | 2776.13 | 1994.69 | 0 | 201.77 |
| 590 | 7/18/2012 | 11/1/2010 | -2539.59 | 0 | 0 | 0 |
| 20 | 8/1/2012 | 11/1/2010 | 2057.04 | 0 | 0 | 0 |
| 20 | 8/2/2012 | 11/1/2010 | -2776.13 | 0 | 0 | 0 |
| 10 | 8/2/2012 | 12/1/2010 | 2776.13 | 1993.6 | 0 | 202.86 |
| 20 | 8/22/2012 | 12/1/2010 | 0 | 0 | 0 | -9190.71 |
| 20 | 8/22/2012 | 12/1/2010 | 0 | 0 | 0 | 618.86 |
| 940 | 8/22/2012 | 8/1/2012 | -39633.08 | 0 | 0 | -39633.08 |
| 944 | 8/22/2012 | 8/1/2012 | 0 | 0 | 0 | 0 |
| 20 | 11/9/2012 | 8/1/2012 | 5484.18 | 0 | 0 | 0 |
| 20 | 11/13/2012 | 8/1/2012 | -4163.3 | 0 | 0 | 0 |
| 10 | 11/13/2012 | 9/1/2012 | 2081.65 | 1126.8 | 0 | 423.16 |
| 10 | 11/13/2012 | 10/1/2012 | 2081.65 | 1125.66 | 0 | 424.3 |
| 20 | 11/28/2012 | 10/1/2012 | -1320.88 | 0 | 0 | 0 |
| 10 | 11/28/2012 | 11/1/2012 | 2081.65 | 1124.51 | 0 | 425.45 |
| 10 | 11/28/2012 | 12/1/2012 | 2081.65 | 1123.36 | 0 | 426.6 |
| 10 | 1/16/2013 | 1/1/2013 | 2081.65 | 1122.2 | 0 | 427.76 |
| 590 | 2/4/2013 | 1/1/2013 | -3142.04 | 0 | 0 | 0 |
| 946 | 3/18/2013 | 3/1/2013 | 77.49 | 0 | 0 | 0 |
| 520 | 4/8/2013 | 1/1/2013 | -491 | 0 | 0 | 0 |
| 946 | 4/16/2013 | 4/1/2013 | 77.49 | 0 | 0 | 0 |
| 10 | 4/24/2013 | 2/1/2013 | 2081.65 | 1121.04 | 0 | 428.92 |
| 10 | 4/24/2013 | 3/1/2013 | 2081.65 | 1119.88 | 0 | 430.08 |
| 10 | 4/24/2013 | 4/1/2013 | 2081.94 | 1118.72 | 0 | 431.24 |
| 10 | 4/24/2013 | 5/1/2013 | 2081.36 | 1117.55 | 0 | 432.41 |
| 20 | 4/24/2013 | 5/1/2013 | 789.69 | 0 | 0 | 0 |
| 590 | 7/9/2013 | 5/1/2013 | -2033.54 | 0 | 0 | 0 |
| 10 | 8/20/2013 | 6/1/2013 | 2081.94 | 1116.38 | 0 | 433.58 |
| 10 | 9/16/2013 | 7/1/2013 | 2081.94 | 1115.2 | 0 | 434.76 |
| 20 | 11/1/2013 | 7/1/2013 | 1574.68 | 0 | 0 | 0 |
| 20 | 12/4/2013 | 7/1/2013 | 1574.68 | 0 | 0 | 0 |
| 20 | 12/5/2013 | 7/1/2013 | -2081.94 | 0 | 0 | 0 |
| 10 | 12/5/2013 | 8/1/2013 | 2081.94 | 1114.03 | 0 | 435.93 |
| 20 | 1/2/2014 | 8/1/2013 | 1574.68 | 0 | 0 | 0 |
| 20 | 1/6/2014 | 8/1/2013 | -2024.09 | 0 | 0 | 0 |
| 10 | 1/6/2014 | 9/1/2013 | 2024.09 | 1112.85 | 0 | 437.11 |
| 20 | 2/3/2014 | 9/1/2013 | 1578.93 | 0 | 0 | 0 |
| 20 | 2/4/2014 | 9/1/2013 | 0 | 0 | 0 | -3471.18 |
| 20 | 2/4/2014 | 9/1/2013 | 0 | 0 | 0 | 618.01 |
| 940 | 2/4/2014 | 1/1/2014 | -4439.5 | 0 | 0 | -4439.5 |

* 5 0 2 4 7 3 9 3 *

| | | | | | | |
|---|---|---|---|---|---|---|
| 944 | 2/4/2014 | 1/1/2014 | 0 | 0 | 0 | 0 |
| 940 | 2/4/2014 | 1/1/2014 | 90352.29 | 0 | 0 | 90352.29 |
| 20 | 2/6/2014 | 1/1/2014 | -1578.93 | 0 | 0 | 0 |
| 20 | 2/6/2014 | 1/1/2014 | 1578.93 | 0 | 0 | 0 |
| 947 | 2/7/2014 | 3/1/2013 | 77.49 | 0 | 0 | 0 |
| 947 | 2/7/2014 | 4/1/2013 | 77.49 | 0 | 0 | 0 |
| 20 | 2/7/2014 | 1/1/2014 | -1578.93 | 0 | 0 | 0 |
| 10 | 2/7/2014 | 2/1/2014 | 1578.93 | 647.98 | 0 | 432.59 |
| 20 | 2/7/2014 | 2/1/2014 | -3471.18 | 0 | 0 | 0 |
| 590 | 2/7/2014 | 2/1/2014 | -2846.57 | 0 | 0 | 0 |
| 20 | 2/25/2014 | 2/1/2014 | 3411.18 | 0 | 0 | 0 |
| 20 | 2/26/2014 | 2/1/2014 | -3411.18 | 0 | 0 | 0 |
| 20 | 2/26/2014 | 2/1/2014 | 1832.25 | 0 | 0 | 1832.25 |
| 10 | 2/26/2014 | 3/1/2014 | 1578.93 | 646.4 | 0 | 434.17 |
| 10 | 3/3/2014 | 4/1/2014 | 1578.93 | 642.64 | 0 | 437.93 |
| 10 | 4/2/2014 | 5/1/2014 | 1578.93 | 641.77 | 0 | 438.8 |
| 520 | 4/7/2014 | 5/1/2014 | -566 | 0 | 0 | 0 |
| 20 | 4/30/2014 | 5/1/2014 | 21.07 | 0 | 0 | 21.07 |
| 10 | 4/30/2014 | 6/1/2014 | 1578.93 | 640.86 | 0 | 439.71 |
| 10 | 6/9/2014 | 7/1/2014 | 1578.93 | 639.99 | 0 | 440.58 |
| 590 | 7/10/2014 | 7/1/2014 | -2698.69 | 0 | 0 | 0 |
| 946 | 8/18/2014 | 8/1/2014 | 54.02 | 0 | 0 | 0 |
| 10 | 9/15/2014 | 8/1/2014 | 1578.93 | 639.12 | 0 | 441.45 |
| 946 | 9/16/2014 | 9/1/2014 | 54.02 | 0 | 0 | 0 |
| 10 | 10/6/2014 | 9/1/2014 | 1578.93 | 638.24 | 0 | 442.33 |
| 946 | 10/16/2014 | 10/1/2014 | 54.02 | 0 | 0 | 0 |
| 20 | 12/2/2014 | 9/1/2014 | 1617.22 | 0 | 0 | 0 |
| 590 | 2/3/2015 | 9/1/2014 | -3049.89 | 0 | 0 | 0 |
| 20 | 2/20/2015 | 9/1/2014 | -1617.22 | 0 | 0 | 0 |
| 10 | 2/20/2015 | 10/1/2014 | 1617.22 | 637.37 | 0 | 443.2 |
| 520 | 4/7/2015 | 10/1/2014 | -604 | 0 | 0 | 0 |
| 946 | 5/18/2015 | 5/1/2015 | 54.02 | 0 | 0 | 0 |
| 590 | 7/14/2015 | 10/1/2014 | -2018.53 | 0 | 0 | 0 |
| 947 | 8/3/2015 | 10/1/2014 | 54.02 | 0 | 0 | 0 |
| 947 | 8/3/2015 | 5/1/2015 | 54.02 | 0 | 0 | 0 |
| 947 | 12/29/2015 | 9/1/2014 | 54.02 | 0 | 0 | 0 |
| 947 | 12/29/2015 | 8/1/2014 | 54.02 | 0 | 0 | 0 |
| 10 | 12/29/2015 | 11/1/2014 | 1603.5 | 636.49 | 0 | 444.08 |
| 10 | 12/29/2015 | 12/1/2014 | 1603.5 | 635.61 | 0 | 444.96 |
| 10 | 12/29/2015 | 1/1/2015 | 1603.5 | 634.73 | 0 | 445.84 |
| 10 | 12/29/2015 | 2/1/2015 | 1603.5 | 633.85 | 0 | 446.72 |
| 10 | 12/29/2015 | 3/1/2015 | 1603.5 | 632.97 | 0 | 447.6 |
| 10 | 12/29/2015 | 4/1/2015 | 1603.5 | 632.08 | 0 | 448.49 |
| 10 | 12/29/2015 | 5/1/2015 | 1603.5 | 631.19 | 0 | 449.38 |
| 10 | 12/29/2015 | 6/1/2015 | 1603.5 | 630.3 | 0 | 450.27 |
| 10 | 12/29/2015 | 7/1/2015 | 1603.5 | 629.41 | 0 | 451.16 |
| 10 | 12/29/2015 | 8/1/2015 | 1603.5 | 628.52 | 0 | 452.05 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 | 12/29/2015 | 9/1/2015 | 1603.5 | 627.62 | 0 | 452.95 |
| 10 | 12/29/2015 | 10/1/2015 | 1603.5 | 626.73 | 0 | 453.84 |
| 10 | 12/29/2015 | 11/1/2015 | 1603.5 | 625.83 | 0 | 454.74 |
| 20 | 12/29/2015 | 11/1/2015 | -64.29 | 0 | 0 | 0 |
| 10 | 12/29/2015 | 12/1/2015 | 1667.79 | 624.93 | 0 | 455.64 |
| 20 | 12/29/2015 | 12/1/2015 | 30 | 0 | 0 | 30 |
| 20 | 12/29/2015 | 12/1/2015 | 0.06 | 0 | 0 | 0.06 |
| 20 | 12/29/2015 | 12/1/2015 | -0.06 | 0 | 0 | -0.06 |
| 20 | 12/29/2015 | 12/1/2015 | 0.06 | 0 | 0 | 0 |
| 10 | 1/11/2016 | 1/1/2016 | 1582.07 | 624.01 | 0 | 456.56 |
| 20 | 1/11/2016 | 1/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 590 | 2/5/2016 | 1/1/2016 | -2787.63 | 0 | 0 | 0 |
| 10 | 2/8/2016 | 2/1/2016 | 1582.07 | 622.99 | 0 | 457.58 |
| 10 | 3/10/2016 | 3/1/2016 | 1582.07 | 622.07 | 0 | 458.5 |
| 20 | 3/10/2016 | 3/1/2016 | 31.55 | 0 | 0 | 31.55 |
| 520 | 4/7/2016 | 3/1/2016 | -635 | 0 | 0 | 0 |
| 10 | 4/8/2016 | 4/1/2016 | 1582.07 | 621.11 | 0 | 459.46 |
| 20 | 4/8/2016 | 4/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 10 | 5/16/2016 | 5/1/2016 | 1582.07 | 620.11 | 0 | 460.46 |
| 20 | 5/16/2016 | 5/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 10 | 6/13/2016 | 6/1/2016 | 1582.07 | 619.11 | 0 | 461.46 |
| 20 | 6/13/2016 | 6/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 10 | 7/8/2016 | 7/1/2016 | 1582.07 | 618.1 | 0 | 462.47 |
| 20 | 7/8/2016 | 7/1/2016 | 46.55 | 0 | 0 | 46.55 |
| 590 | 7/14/2016 | 7/1/2016 | -3301.2 | 0 | 0 | 0 |
| 10 | 8/11/2016 | 8/1/2016 | 1582.07 | 617.09 | 0 | 463.48 |
| 20 | 8/11/2016 | 8/1/2016 | 46.55 | 0 | 0 | 0 |
| 520 | 8/12/2016 | 8/1/2016 | -451 | 0 | 0 | 0 |
| 10 | 9/9/2016 | 9/1/2016 | 1710.01 | 616.16 | 0 | 464.41 |
| 946 | 10/17/2016 | 10/1/2016 | 54.02 | 0 | 0 | 0 |
| 946 | 11/16/2016 | 11/1/2016 | 54.02 | 0 | 0 | 0 |
| 946 | 12/16/2016 | 12/1/2016 | 54.02 | 0 | 0 | 0 |
| 590 | 2/14/2017 | 9/1/2016 | -3348.86 | 0 | 0 | 0 |
| 20 | 6/1/2017 | 9/1/2016 | 1626.06 | 0 | 0 | 0 |
| 520 | 6/21/2017 | 9/1/2016 | -483 | 0 | 0 | 0 |
| 20 | 7/3/2017 | 9/1/2016 | 1626.06 | 0 | 0 | 0 |
| 20 | 7/5/2017 | 9/1/2016 | -1710.01 | 0 | 0 | 0 |
| 10 | 7/5/2017 | 10/1/2016 | 1710.01 | 615.24 | 0 | 465.33 |
| 590 | 7/13/2017 | 10/1/2016 | -3188.67 | 0 | 0 | 0 |
| 20 | 8/4/2017 | 10/1/2016 | 1626.06 | 0 | 0 | 0 |
| 20 | 8/7/2017 | 10/1/2016 | -1710.01 | 0 | 0 | 0 |
| 10 | 8/7/2017 | 11/1/2016 | 1710.01 | 614.32 | 0 | 466.25 |
| 20 | 8/24/2017 | 11/1/2016 | 0 | 0 | 0 | -9027.79 |
| 20 | 8/24/2017 | 11/1/2016 | 0 | 0 | 0 | 1458.16 |
| 940 | 8/24/2017 | 8/1/2017 | -5487.15 | 0 | 0 | -5487.15 |
| 944 | 8/24/2017 | 8/1/2017 | 0 | 0 | 0 | 0 |
| 947 | 8/28/2017 | 10/1/2016 | 54.02 | 0 | 0 | 0 |

| 947 | 8/28/2017 | 11/1/2016 | 54.02 | 0 | 0 | 0 |
|---|---|---|---|---|---|---|
| 947 | 8/28/2017 | 12/1/2016 | 54.02 | 0 | 0 | 0 |
| 20 | 8/28/2017 | 8/1/2017 | -2907.7 | 0 | 0 | 0 |
| 946 | 9/18/2017 | 9/1/2017 | 51.05 | 0 | 0 | 0 |
| 10 | 10/3/2017 | 9/1/2017 | 1642.36 | 605.6 | 0 | 415.49 |
| 946 | 10/16/2017 | 10/1/2017 | 51.05 | 0 | 0 | 0 |
| 20 | 10/17/2017 | 9/1/2017 | 20 | 0 | 0 | 0 |
| 20 | 10/17/2017 | 9/1/2017 | 10 | 0 | 0 | 0 |
| 20 | 10/18/2017 | 9/1/2017 | 20 | 0 | 0 | 0 |
| 20 | 10/19/2017 | 9/1/2017 | -20 | 0 | 0 | 0 |
| 20 | 10/19/2017 | 9/1/2017 | -10 | 0 | 0 | 0 |
| 20 | 10/19/2017 | 9/1/2017 | -20 | 0 | 0 | 0 |
| 10 | 11/3/2017 | 10/1/2017 | 1642.36 | 604.82 | 0 | 416.27 |
| 946 | 11/16/2017 | 11/1/2017 | 51.05 | 0 | 0 | 0 |
| 946 | 12/18/2017 | 12/1/2017 | 51.05 | 0 | 0 | 0 |
| 10 | 1/3/2018 | 11/1/2017 | 1642.36 | 604.04 | 0 | 417.05 |
| 946 | 1/16/2018 | 1/1/2018 | 51.05 | 0 | 0 | 0 |
| 10 | 2/2/2018 | 12/1/2017 | 1642.36 | 603.25 | 0 | 417.84 |
| 590 | 2/13/2018 | 12/1/2017 | -3595.64 | 0 | 0 | 0 |
| 10 | 3/7/2018 | 1/1/2018 | 1642.36 | 602.47 | 0 | 418.62 |
| 520 | 6/5/2018 | 1/1/2018 | -559 | 0 | 0 | 0 |
| 590 | 7/12/2018 | 1/1/2018 | -2973.7 | 0 | 0 | 0 |
| 520 | 2/13/2019 | 1/1/2018 | -649 | 0 | 0 | 0 |
| 590 | 2/13/2019 | 1/1/2018 | -3613.14 | 0 | 0 | 0 |
| 590 | 7/16/2019 | 1/1/2018 | -3439.14 | 0 | 0 | 0 |

| TRNPBL | TRNESC | TRNEBL | TRNLTC | TRNLCB |
|---|---|---|---|---|
| 331287.84 | -2786.63 | 1637.88 | 0 | -2509.96 |
| 331287.84 | -2544.3 | -1148.75 | 0 | -2509.96 |
| 331287.84 | 0 | -3693.05 | 1576.2 | -2509.96 |
| 331287.84 | 0 | -3693.05 | 0 | -933.76 |
| 331287.84 | 0 | -3693.05 | 0 | -933.76 |
| 363018.7 | 0 | -3693.05 | 0 | -933.76 |
| 363018.7 | 6608.14 | -3693.05 | 0 | -933.76 |
| 363018.7 | 622 | 2915.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 0 | 3537.09 | 0 | -933.76 |
| 363018.7 | 454.34 | 3537.09 | 0 | -933.76 |
| 362650.74 | 0 | 3991.43 | 0 | -933.76 |
| 362650.74 | 0 | 3991.43 | 0 | -933.76 |
| 362650.74 | 0 | 3991.43 | 0 | -933.76 |
| 359590.25 | -437.46 | 3991.43 | 0 | -933.76 |
| 359590.25 | 444.24 | 3553.97 | 0 | -933.76 |
| 359203.72 | 0 | 3998.21 | 0 | -933.76 |
| 359140.2 | -2665.47 | 3998.21 | 0 | -933.76 |
| 359140.2 | -2418.14 | 1332.74 | 0 | -933.76 |
| 359140.2 | 444.23 | -1085.4 | 0 | -933.76 |
| 358751.23 | -2541.81 | -641.17 | 0 | -1050.48 |
| 358751.23 | 0 | -3182.98 | 1050.48 | -1050.48 |
| 358751.23 | 444.24 | -3182.98 | 0 | 0 |
| 358360.16 | 444.24 | -2738.74 | 0 | 0 |
| 357966.97 | 444.24 | -2294.5 | 0 | 0 |
| 357571.65 | 444.24 | -1850.26 | 0 | 0 |
| 357174.19 | 444.24 | -1406.02 | 0 | 0 |
| 356774.57 | 444.24 | -961.78 | 0 | 0 |
| 356372.79 | 444.24 | -517.54 | 0 | 0 |
| 355968.83 | 444.24 | -73.3 | 0 | 0 |
| 355562.68 | 0 | 370.94 | 0 | 0 |
| 355562.68 | 444.24 | 370.94 | 0 | 0 |
| 355154.33 | 444.24 | 815.18 | 0 | 0 |
| 354743.77 | 0 | 1259.42 | 0 | 0 |
| 354743.77 | 444.24 | 1259.42 | 0 | 0 |
| 354330.99 | -2554.37 | 1703.66 | 0 | 0 |
| 354330.99 | -2548.09 | -850.71 | 0 | 0 |
| 354330.99 | 444.24 | -3398.8 | 0 | 0 |
| 353915.97 | 444.24 | -2954.56 | 0 | 0 |
| 353498.7 | 444.24 | -2510.32 | 0 | 0 |
| 353079.17 | 444.24 | -2066.08 | 0 | 0 |
| 352657.37 | 444.24 | -1621.84 | 0 | 0 |
| 352233.29 | 444.24 | -1177.6 | 0 | 0 |

| | | | | |
|---|---|---|---|---|
| 351806.91 | 0 | -733.36 | 0 | 0 |
| 351806.91 | 409.05 | -733.36 | 0 | 0 |
| 351378.22 | 444.24 | -324.31 | 0 | 0 |
| 350947.21 | 444.24 | 119.93 | 0 | 0 |
| 350513.86 | 0 | 564.17 | 0 | 0 |
| 350513.86 | 0 | 564.17 | 0 | 0 |
| 365702.82 | 0 | 564.17 | 0 | 0 |
| 371526.24 | 0 | 564.17 | 0 | 0 |
| 371526,24 | 5823.42 | 564.17 | 0 | 0 |
| 371526.24 | -2957.21 | 6387.59 | 0 | 0 |
| 371526.24 | 0 | 3430.38 | 0 | 0 |
| 371526.24 | 0 | 3430.38 | 0 | 0 |
| 371526.24 | 0 | 3430.38 | 0 | 0 |
| 371526.24 | 0 | 3430.38 | 0 | 0 |
| 371526.24 | -453.97 | 3430.38 | 0 | 0 |
| 371526.24 | 425.21 | 2976.41 | 0 | 0 |
| 371342.21 | 0 | 3401.62 | 0 | 0 |
| 370963.88 | 425.21 | 3401.62 | 0 | 0 |
| 370776.81 | 425.21 | 3826.83 | 0 | 0 |
| 370588.72 | 425.21 | 4252.04 | 0 | 0 |
| 370399.62 | -3635.94 | 4677.25 | 0 | 0 |
| 370399.62 | 425.21 | 1041.31 | 0 | 0 |
| 370209.49 | 425.21 | 1466.52 | 0 | 0 |
| 370018.33 | 657.97 | 1891.73 | 0 | 0 |
| 369826.14 | -3401.22 | 2549.7 | 0 | 0 |
| 369826.14 | 657.97 | -851.52 | 0 | 0 |
| 369632.9 | 657.97 | -193.55 | 0 | 0 |
| 369438.62 | -391 | 464.42 | 0 | 0 |
| 369438.62 | 657.97 | 73.42 | 0 | 0 |
| 369243.29 | 657.97 | 731.39 | 0 | 0 |
| 369046.9 | 657.97 | 1389.36 | 0 | 0 |
| 368849.44 | 657.97 | 2047.33 | 0 | 0 |
| 368650.91 | 0 | 2705.3 | 0 | 0 |
| 368650.91 | 0 | 2705.3 | 0 | 0 |
| 368650.91 | 0 | 2705.3 | 0 | 0 |
| 368650.91 | 799.33 | 2705.3 | 0 | 0 |
| 368451.31 | 4.21 | 3504.63 | 0 | 0 |
| 368451.31 | 0 | 3508.84 | 0 | 0 |
| 368451.31 | -2411.08 | 3508.84 | 0 | 0 |
| 368451.31 | 0 | 1097.76 | 0 | 0 |
| 368451.31 | 0 | 1097.76 | 0 | 0 |
| 368451.31 | 579.67 | 1097.76 | 109.82 | 0 |
| 368250.63 | 0 | 1677.43 | 0 | 0 |
| 368250.63 | -3196.77 | 1677.43 | 0 | 0 |
| 368250.63 | 0 | -1519.34 | 0 | 0 |
| 368250.63 | 0 | -1519.34 | 0 | 0 |
| 368250.63 | -481 | -1519.34 | 0 | 0 |

| | | | | |
|---|---|---|---|---|
| 368250.63 | 0 | -2000.34 | 0 | 0 |
| 368250.63 | -2572.7 | -2000.34 | 0 | 0 |
| 368250.63 | -3173.21 | -4573.04 | 0 | 0 |
| 368250.63 | -411 | -7746.25 | 0 | 0 |
| 368250.63 | 0 | -8157.25 | 0 | 0 |
| 368250.63 | 0 | -8157.25 | 0 | 0 |
| 368250.63 | 0 | -8157.25 | 0 | 0 |
| 368250.63 | 579.67 | -8157.25 | 0 | 0 |
| 368048.86 | -2539.59 | -7577.58 | 0 | 0 |
| 368048.86 | 0 | -10117.17 | 0 | 0 |
| 368048.86 | 0 | -10117.17 | 0 | 0 |
| 368048.86 | 579.67 | -10117.17 | 0 | 0 |
| 367846 | 9190.71 | -9537.5 | 0 | 0 |
| 377036.71 | 0 | -346.79 | 0 | 0 |
| 376417.85 | 0 | -346.79 | 0 | 0 |
| 416050.93 | 0 | -346.79 | 0 | 0 |
| 416050.93 | 0 | -346.79 | 0 | 0 |
| 416050.93 | 0 | -346.79 | 0 | 0 |
| 416050.93 | 531.69 | -346.79 | 0 | 0 |
| 415627.77 | 531.69 | 184.9 | 0 | 0 |
| 415203.47 | 0 | 716.59 | 0 | 0 |
| 415203.47 | 531.69 | 716.59 | 0 | 0 |
| 414778.02 | 531.69 | 1248.28 | 0 | 0 |
| 414351.42 | 531.69 | 1779.97 | 0 | 0 |
| 413923.66 | -3142.04 | 2311.66 | 0 | 0 |
| 413923.66 | 0 | -830.38 | 0 | 0 |
| 413923.66 | -491 | -830.38 | 0 | -77.49 |
| 413923.66 | 0 | -1321.38 | 0 | -77.49 |
| 413923.66 | 531.69 | -1321.38 | 0 | -154.98 |
| 413494.74 | 531.69 | -789.69 | 0 | -154.98 |
| 413064.66 | 531.98 | -258 | 0 | -154.98 |
| 412633.42 | 531.98 | 273.98 | 0 | -154.98 |
| 412201.01 | 789.69 | 805.38 | 0 | -154.98 |
| 412201.01 | -2033.54 | 1595.07 | 0 | -154.98 |
| 412201.01 | 531.98 | -438.47 | 0 | -154.98 |
| 411767.43 | 531.98 | 93.51 | 0 | -154.98 |
| 411332.67 | 0 | 625.49 | 0 | -154.98 |
| 411332.67 | 0 | 625.49 | 0 | -154.98 |
| 411332.67 | 0 | 625.49 | 0 | -154.98 |
| 411332.67 | 531.98 | 625.49 | 0 | -154.98 |
| 410896.74 | 0 | 1157.47 | 0 | -154.98 |
| 410896.74 | 0 | 1157.47 | 0 | -154.98 |
| 410896.74 | 474.13 | 1157.47 | 0 | -154.98 |
| 410459.63 | 0 | 1631.6 | 0 | -154.98 |
| 410459.63 | 0 | 1631.6 | 0 | -154.98 |
| 413930.81 | 0 | 1631.6 | 0 | -154.98 |
| 413312.8 | 0 | 1631.6 | 0 | -154.98 |

* 5 0 2 4 7 3 9 3 *

| | | | | |
|---|---|---|---|---|
| 417752.3 | 0 | 1631.6 | 0 | -154.98 |
| 417752.3 | 0 | 1631.6 | 0 | -154.98 |
| 327400.01 | 0 | 1631.6 | 0 | -154.98 |
| 327400.01 | 0 | 1631.6 | 0 | -154.98 |
| 327400.01 | 0 | 1631.6 | 0 | -154.98 |
| 327400.01 | 0 | 1631.6 | 0 | -77.49 |
| 327400.01 | 0 | 1631.6 | 0 | 0 |
| 327400.01 | 498.36 | 1631.6 | 0 | 0 |
| 326967.42 | 0 | 2129.96 | 0 | 0 |
| 326967.42 | -2846.57 | 2129.96 | 0 | 0 |
| 326967.42 | 0 | -716.61 | 0 | 0 |
| 326967.42 | 0 | -716.61 | 0 | 0 |
| 326967.42 | 0 | -716.61 | 0 | 0 |
| 325135.17 | 498.36 | -716.61 | 0 | 0 |
| 324701 | 498.36 | -218.25 | 0 | 0 |
| 324263.07 | 498.36 | 280.11 | 0 | 0 |
| 323824.27 | -566 | 778.47 | 0 | 0 |
| 323824.27 | 0 | 212.47 | 0 | 0 |
| 323803.2 | 498.36 | 212.47 | 0 | 0 |
| 323363.49 | 498.36 | 710.83 | 0 | 0 |
| 322922.91 | -2698.69 | 1209.19 | 0 | 0 |
| 322922.91 | 0 | -1489.5 | 0 | 0 |
| 322922.91 | 498.36 | -1489.5 | 0 | -54.02 |
| 322481.46 | 0 | -991.14 | 0 | -54.02 |
| 322481.46 | 498.36 | -991.14 | 0 | -108.04 |
| 322039.13 | 0 | -492.78 | 0 | -108.04 |
| 322039.13 | 0 | -492.78 | 0 | -162.06 |
| 322039.13 | -3049.89 | -492.78 | 0 | -162.06 |
| 322039.13 | 0 | -3542.67 | 0 | -162.06 |
| 322039.13 | 548.05 | -3542.67 | 0 | -162.06 |
| 321595.93 | -604 | -3006.02 | 0 | -162.06 |
| 321595.93 | 0 | -3610.02 | 0 | -162.06 |
| 321595.93 | -2018.53 | -3610.02 | 0 | -216.08 |
| 321595.93 | 0 | -5628.55 | 0 | -216.08 |
| 321595.93 | 0 | -5628.55 | 0 | -162.06 |
| 321595.93 | 0 | -5628.55 | 0 | -108.04 |
| 321595.93 | 0 | -5628.55 | 0 | -54.02 |
| 321595.93 | 548.05 | -5628.55 | 0 | 0 |
| 321151.85 | 529.67 | -5105.62 | 0 | 0 |
| 320706.89 | 529.67 | -4582.69 | 0 | 0 |
| 320261.05 | 529.67 | -4059.76 | 0 | 0 |
| 319814.33 | 529.67 | -3536.83 | 0 | 0 |
| 319366.73 | 529.67 | -3013.9 | 0 | 0 |
| 318918.24 | 529.67 | -2490.97 | 0 | 0 |
| 318468.86 | 529.67 | -1968.04 | 0 | 0 |
| 318018.59 | 529.67 | -1445.11 | 0 | 0 |
| 317567.43 | 529.67 | -922.18 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | | |
|---|---|---|---|---|
| 317115.38 | 501.5 | -399.25 | 0 | 0 |
| 316662.43 | 501.5 | 102.25 | 0 | 0 |
| 316208.59 | 501.5 | 603.75 | 0 | 0 |
| 315753.85 | 0 | 1105.25 | 0 | 0 |
| 315753.85 | 501.5 | 1105.25 | 0 | 0 |
| 315298.21 | 0 | 1692.47 | 0 | 0 |
| 315268.21 | 0 | 1692.47 | 0 | 0 |
| 315268.15 | 0 | 1692.47 | 0 | 0 |
| 315268.21 | 0 | 1692.47 | 0 | 0 |
| 315268.21 | 501.5 | 1692.53 | 0 | 0 |
| 314811.65 | 0 | 2194.03 | 0 | 0 |
| 314765.1 | -2787.63 | 2194.03 | 0 | 0 |
| 314765.1 | 501.5 | -593.6 | 0 | 0 |
| 314307.52 | 501.5 | -92.1 | 0 | 0 |
| 313849.02 | 0 | 409.4 | 0 | 0 |
| 313817.47 | -635 | 409.4 | 0 | 0 |
| 313817.47 | 501.5 | -225.6 | 0 | 0 |
| 313358.01 | 0 | 275.9 | 0 | 0 |
| 313311.46 | 501.5 | 275.9 | 0 | 0 |
| 312851 | 0 | 777.4 | 0 | 0 |
| 312804.45 | 501.5 | 777.4 | 0 | 0 |
| 312342.99 | 0 | 1278.9 | 0 | 0 |
| 312296.44 | 501.5 | 1278.9 | 0 | 0 |
| 311833.97 | 0 | 1780.4 | 0 | 0 |
| 311787.42 | -3301.2 | 1780.4 | 0 | 0 |
| 311787.42 | 501.5 | -1520.8 | 0 | 0 |
| 311323.94 | 46.55 | -1019.3 | 0 | 0 |
| 311323.94 | -451 | -972.75 | 0 | 0 |
| 311323.94 | 629.44 | -1423.75 | 0 | 0 |
| 310859.53 | 0 | -794.31 | 0 | 0 |
| 310859.53 | 0 | -794.31 | 0 | -54.02 |
| 310859.53 | 0 | -794.31 | 0 | -108.04 |
| 310859.53 | -3348.86 | -794.31 | 0 | -162.06 |
| 310859.53 | 0 | -4143.17 | 0 | -162.06 |
| 310859.53 | -483 | -4143.17 | 0 | -162.06 |
| 310859.53 | 0 | -4626.17 | 0 | -162.06 |
| 310859.53 | 0 | -4626.17 | 0 | -162.06 |
| 310859.53 | 629.44 | -4626.17 | 0 | -162.06 |
| 310394.2 | -3188.67 | -3996.73 | 0 | -162.06 |
| 310394.2 | 0 | -7185.4 | 0 | -162.06 |
| 310394.2 | 0 | -7185.4 | 0 | -162.06 |
| 310394.2 | 629.44 | -7185.4 | 0 | -162.06 |
| 309927.95 | 6120.09 | -6555.96 | 0 | -162.06 |
| 318955.74 | 0 | -435.87 | 0 | -162.06 |
| 317497.58 | 0 | -435.87 | 0 | -162.06 |
| 322984.73 | 0 | -435.87 | 0 | -162.06 |
| 322984.73 | 0 | -435.87 | 0 | -162.06 |

* 5 0 2 4 7 3 9 3 *

| | | | | |
|---|---|---|---|---|
| 322984.73 | 0 | -435.87 | 0 | -108.04 |
| 322984.73 | 0 | -435.87 | 0 | -54.02 |
| 322984.73 | 0 | -435.87 | 0 | 0 |
| 322984.73 | 0 | -435.87 | 0 | 0 |
| 322984.73 | 621.27 | -435.87 | 0 | -51.05 |
| 322569.24 | 0 | 185.4 | 0 | -51.05 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 0 | 185.4 | 0 | -102.1 |
| 322569.24 | 621.27 | 185.4 | 0 | -102.1 |
| 322152.97 | 0 | 806.67 | 0 | -102.1 |
| 322152.97 | 0 | 806.67 | 0 | -153.15 |
| 322152.97 | 621.27 | 806.67 | 0 | -204.2 |
| 321735.92 | 0 | 1427.94 | 0 | -204.2 |
| 321735.92 | 621.27 | 1427.94 | 0 | -255.25 |
| 321318.08 | -3595.64 | 2049.21 | 0 | -255.25 |
| 321318.08 | 621.27 | -1546.43 | 0 | -255.25 |
| 320899.46 | -559 | -925.16 | 0 | -255.25 |
| 320899.46 | -2973.7 | -1484.16 | 0 | -255.25 |
| 320899.46 | -649 | -4457.86 | 0 | -255.25 |
| 320899.46 | -3613.14 | -5106.86 | 0 | -255.25 |
| 320899.46 | -3439.14 | -8720 | 0 | -255.25 |

* 5 0 2 4 7 3 9 3 *

| TRPTPY | TRPPBL | LTCANP | TRNESV |
|---:|---:|---:|---:|
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 10089.14 | 0 | 0 | 0 |
| 0 | 10089.14 | 0 | 0 |
| 0 | 10089.14 | 0 | 0 |
| 0 | 10089.14 | 0 | 0 |
| -922 | 10089.14 | 0 | 0 |
| -310 | 9167.14 | 0 | 0 |
| -95 | 8857.14 | 0 | 0 |
| -999.99 | 8762.14 | 0 | 0 |
| -999.99 | 7762.15 | 0 | 0 |
| -673.02 | 6762.16 | 0 | 0 |
| -2788.65 | 6089.14 | 0 | 0 |
| -150 | 3300.49 | 0 | 0 |
| -90 | 3150.49 | 0 | 0 |
| -3060.49 | 3060.49 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -116.72 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 1328.7 | 0 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 0 | 1328.7 | 0 | 0 |
| 753.35 | 1328.7 | 0 | 0 |
| 0 | 2082.05 | 0 | 0 |
| -2082.05 | 2082.05 | 0 | 0 |
| 753.35 | 0 | 0 | 0 |
| 0 | 753.35 | 0 | 0 |
| -753.35 | 753.35 | 0 | 0 |
| 1221.45 | 0 | 0 | 0 |
| 0 | 1221.45 | 0 | 0 |
| 0 | 1221.45 | 0 | 0 |
| 473.97 | 1221.45 | 0 | 0 |
| 0 | 1695.42 | 0 | 0 |
| 473.97 | 1695.42 | 0 | 0 |
| 0 | 2169.39 | 0 | 0 |
| 473.97 | 2169.39 | 0 | 0 |
| 0 | 2643.36 | 0 | 0 |

| | | | |
|---:|---:|---:|---:|
| 100 | 2643.36 | 0 | 0 |
| -2743.36 | 2743.36 | 0 | 0 |
| 473.97 | 0 | 0 | 0 |
| 0 | 473.97 | 0 | 0 |
| 0 | 473.97 | 0 | 0 |
| 0 | 473.97 | 0 | 0 |
| 0 | 473.97 | 0 | 0 |
| 5823.42 | 473.97 | 0 | 0 |
| -5823.42 | 6297.39 | 0 | 0 |
| 2937.21 | 473.97 | 0 | 0 |
| -999.99 | 3411.18 | 0 | 0 |
| -999.99 | 2411.19 | 0 | 0 |
| -999.99 | 1411.2 | 0 | 0 |
| -411.21 | 411.21 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 1500 | 0 | 0 | 0 |
| 1500 | 1500 | 0 | 0 |
| -2995.79 | 3000 | 0 | 0 |
| 0 | 4.21 | 0 | 0 |
| -4.21 | 4.21 | 0 | 0 |
| 1500 | 0 | 0 | 0 |
| 0 | 1500 | 0 | 0 |
| 1000 | 1500 | 0 | 0 |
| 1000 | 2500 | 0 | 0 |
| 109.84 | 3500 | 0 | 0 |
| -2995.79 | 3609.84 | 0 | 0 |
| 0 | 614.05 | 0 | 0 |
| 700 | 614.05 | 0 | 0 |
| 500 | 1314.05 | 0 | 0 |
| 0 | 1814.05 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | |
|---:|---:|---:|---:|
| -1814.05 | 1814.05 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 2057.04 | 0 | 0 | 0 |
| 2057.04 | 2057.04 | 0 | 0 |
| -2776.13 | 4114.08 | 0 | 0 |
| 0 | 1337.95 | 0 | 0 |
| 0 | 1337.95 | 0 | 0 |
| 2057.04 | 1337.95 | 0 | 0 |
| -2776.13 | 3394.99 | 0 | 0 |
| 0 | 618.86 | 0 | 0 |
| 0 | 618.86 | 0 | 0 |
| -618.86 | 618.86 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 5484.18 | 0 | 0 | 0 |
| -4163.3 | 5484.18 | 0 | 0 |
| 0 | 1320.88 | 0 | 0 |
| 0 | 1320.88 | 0 | 0 |
| -1320.88 | 1320.88 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -77.49 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -77.49 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | -0.58 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 1574.68 | 0 | 0 | 0 |
| 1574.68 | 1574.68 | 0 | 0 |
| -2081.94 | 3149.36 | 0 | 0 |
| 0 | 1067.42 | 0 | 0 |
| 1574.68 | 1067.42 | 0 | 0 |
| -2024.09 | 2642.1 | 0 | 0 |
| 0 | 618.01 | 0 | 0 |
| 1578.93 | 618.01 | 0 | 0 |
| 3471.18 | 2196.94 | 0 | 0 |
| -618.01 | 5668.12 | 0 | 0 |
| 0 | 5050.11 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | |
|---:|---:|---:|---:|
| 0 | 5050.11 | 0 | 0 |
| 0 | 5050.11 | 0 | 0 |
| -1578.93 | 5050.11 | 0 | 0 |
| 1578.93 | 3471.18 | 0 | 0 |
| 0 | 5050.11 | 0 | 0 |
| 0 | 5050.11 | 0 | 0 |
| -1578.93 | 5050.11 | 0 | 0 |
| 0 | 3471.18 | 0 | 0 |
| -3471.18 | 3471.18 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 3411.18 | 0 | 0 | 0 |
| -3411.18 | 3411.18 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 1617.22 | 0 | 0 | 0 |
| 0 | 1617.22 | 0 | 0 |
| -1617.22 | 1617.22 | 0 | 0 |
| 0 | 0 | 0 | -11.4 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | -25.12 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |
| 0 | 0 | 0 | -6.74 |

* 5 0 2 4 7 3 9 3 *

| | | | |
|---:|---:|---:|---:|
| 21.43 | 0 | 0 | 0 |
| 21.43 | 21.43 | 0 | 0 |
| 21.43 | 42.86 | 0 | 0 |
| -64.29 | 64.29 | 0 | 0 |
| 0 | 0 | 0 | 85.72 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0.06 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | -54.02 | 0 |
| 0 | 0 | 0 | 0 |
| 1626.06 | 0 | 0 | 0 |
| 0 | 1626.06 | 0 | 0 |
| 1626.06 | 1626.06 | 0 | 0 |
| -1710.01 | 3252.12 | 0 | 0 |
| 0 | 1542.11 | 0 | 0 |
| 0 | 1542.11 | 0 | 0 |
| 1626.06 | 1542.11 | 0 | 0 |
| -1710.01 | 3168.17 | 0 | 0 |
| 0 | 1458.16 | 0 | 0 |
| 2907.7 | 1458.16 | 0 | 0 |
| -1458.16 | 4365.86 | 0 | 0 |
| 0 | 2907.7 | 0 | 0 |
| 0 | 2907.7 | 0 | 0 |
| 0 | 2907.7 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

| | | | |
|---|---|---|---|
| 0 | 2907.7 | 0 | 0 |
| 0 | 2907.7 | 0 | 0 |
| -2907.7 | 2907.7 | 0 | 0 |
| 0 | 0 | -51.05 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -51.05 | 0 |
| 20 | 0 | 0 | 0 |
| 10 | 20 | 0 | 0 |
| 20 | 30 | 0 | 0 |
| -20 | 50 | 0 | 0 |
| -10 | 30 | 0 | 0 |
| -20 | 20 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -51.05 | 0 |
| 0 | 0 | -51.05 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | -51.05 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0 |

* 5 0 2 4 7 3 9 3 *

# **EXHIBIT C**

* 5 0 2 4 7 3 9 3 *
FILED
11/4/2022 1:11 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2018CH11534
Calendar, 62
20184694

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

U.S. Bank National Association, as Indenture )   No. 2018-CH-11534
Trustee on Behalf of and with Respect to AJAX )
Mortgage Loan Trust 2019-E, Mortgage-Backed )
Securities, Series 2019-E, )

)   <u>Property Address:</u>
     Plaintiff, )   6800 N. Central Ave.
)   Chicago, IL 60646
     vs. )

)
Maureen W. Zomayah aka Maureen Zomayah; )
Youpi Y. Isho; Eddison Zomayah aka Eddison )
K. Zomayah; Illinois Development Authority; )
Unknown Owners and Non-record Claimants, )

)
     Defendants. )   Calendar 62

### APPEARANCE

X General Appearance     □ 0900 – Fee Paid    X 0909 – No Fee
                          □ 0904 – Fee Waived    □ 0908 – Trial Lawyers Appearance – No fee

The undersigned enters the appearance of:      □ Plaintiff      X Defendants

### MAUREEN ZOMAYAH & EDDISON ZOMAYAH

_____
(Insert Litigants' Names)

                                      _/s/ Arthur C. Czaja_
                                            Signature

□ Initial Counsel of Record     □ Pro Se (Self-represented)
X Additional Appearance        □ Substitute Appearance

Attorney No.: 47671
Name: Arthur C. Czaja
Atty. for: Defendants
Address: 7521 N. Milwaukee Avenue
City/State/Zip: Niles, IL 60714
Telephone: (847) 647-2106
Facsimile: (847) 376-3531
Email: arthur@czajalawoffices.com

## CERTIFICATE OF SERVICE

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ *Arthur C. Czaja*

Arthur C. Czaja
Attorney for Defendants

* 5 0 2 4 7 3 9 3 *

# EXHIBIT D

**GREGORY**
**FUNDING**
PO BOX 230579
Tigard, OR 97281-0579

www.GregoryFunding.com

| Contact: 866-712-5698 |
| Hours of Operation Monday – Friday |
| 6:30am - 6:00pm Pacific Time |
| Payment Address: Gregory Funding |
| PO Box 742334 |
| Los Angeles, CA 90074-2334 |
| For Notice of Error or Inquiries: |
| PO Box 230668 |
| Tigard, OR 97281-0668 |
| Fax: 866-712-5697 |

4-832-04284-0003000-001-1-000-000-000-000

MAUREEN W ZOMAYAH
6800 N CENTRAL AVE
CHICAGO, IL 60646-1501

11/17/2022

Loan #: ▮▮▮▮
Property Address: 6800 N Central Ave
Chicago, IL 60646

*Recel Ved on 11-29-2022*
*MZ+E2*

Subject: Late Payment Notice

Dear Maureen W Zomayah:

Gregory Funding is the servicer for the above-referenced loan. Our records indicate that your payment(s) is past due. As a result, a late charge in the amount of $65.12 for the 11/01/2022 installment has been added to your account. Please remit your payment plus any other charges due, which as of the date of this letter is $95,591.59.

If your payment has already been mailed, please disregard this notice.

If you are unable to remit this payment today, please contact us to discuss other options to resolve the delinquency. **Our Customer Service Department may be reached toll-free at 866-712-5698, Monday through Friday from 6:30 AM to 6:00 PM Pacific Time.**

Sincerely,

Gregory Funding

We are a debt collector and information you provide to us may be used to collect a debt. However, if you filed for bankruptcy, we respect any stay, modification or discharge condition and this notice is given for regulatory compliance and information purposes only. If we are subject to a stay in your bankruptcy or you are receiving this solely as successor in interest, this letter is not a demand for payment. If this debt is discharged under bankruptcy law or you are merely successor in interest, you are not personally liable for the debt. According to the mortgage and within the limits of bankruptcy law, we retain our rights to enforce the mortgage lien against the collateral property.

V6.0 | Page 1 of 1

# EXHIBIT E

**GREGORY**
**FUNDING**
PO Box 742334
Los Angeles, CA 90074 2334

Customer Service: 866 712-5698
Hours: 6:35 am - 6:00 4m PT
Monday - Friday Excluding Holidays

### Mortgage Statement

Loan Number: ▮▮▮▮
Statement Date: 11/18/2022

3-833-04287-0005334-002-01-000-019-000-000

MAUREEN W ZOMAYAH
6800 N CENTRAL AVE
CHICAGO, IL 60646-1501

*Reeeieed on 11-29-2022 MZ-πE-2*

| Payment Due Date: | 12/01/2022 |
|---|---|
| **Amount Due:** | **$97,564.64** |

If payment is received after 12/15/2022,
a $65.12 late fee will be charged.

### Account Information

| | |
|---|---|
| Loan Number: | ▮▮▮ |
| Property Address: | 6800 N Central Ave |
| | Chicago, IL 60646 |
| Amortized Principal Balance (Not Payoff Amount): | $315,385.45 |
| Interest Rate (until 08/01/2057): | 3.8750% |
| Escrow Balance: | -$15,719.92 |
| Suspense - Reserve: | $0.00 |
| Suspense - Unapplied: | $775.98 |
| Pre payment Penalty: | No |

### Explanation of Amount Due

| | |
|---|---|
| Principal: | $339.55 |
| Interest: | $962.92 |
| Escrow (for Taxes and/or Insurance): | $670.58 |
| Regular Monthly Payment: | $1,973.05 |
| Total New Fees and Charges: | $115.19 |
| Past Due Fees and Charges: | $13,497.51 |
| Past Due Payments(s): | $82,754.87 |
| Suspense - Unapplied: | -$775.98 |
| **Total Amount Due:** | **$97,564.64** |

### Past Payment Breakdown

| | Paid 10/19/2022 - 11/17/2022 | Paid In 2022 |
|---|---|---|
| Principal: | $0.00 | $0.00 |
| Interest: | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance): | $0.00 | $0.00 |
| Fees and Charges: | $0.00 | $0.00 |
| Suspense - Reserve/Other: | $0.00 | $0.00 |
| Total: | $0.00 | $0.00 |

### Important Messages

**Suspense - Unapplied:** We hold a payment that is less than a full installment in a suspense account, not applied to your loan. When a new payment and the suspense amount complete an installment, we apply the installment amount. That may leave a new balance in suspense.

**Amount Due:** The Amount Due on this statement is based on the terms of your contract and does not reflect any forbearance agreement that may be in effect.

**BANKRUPTCY NOTICE:**
TO THE EXTENT YOUR DEBT IS SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE OR YOU DISCHARGED PERSONAL LIABILITY FOR YOUR MORTGAGE LOAN IN BANKRUPTCY, THIS STATEMENT IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY. IT IS NOT AN ATTEMPT TO COLLECT A DEBT AGAINST YOU. IF YOU WANT TO STOP RECEIVING STATEMENTS, PLEASE WRITE TO US.

### Transactions Posted between 10/19/2022 - 11/17/2022

| Effective Date | Description | Principal | Interest | Escrow | Fees & Charges | Suspense-Unapplied | Suspense-Reserve/Other | Total |
|---|---|---|---|---|---|---|---|---|
| 11/03/2022 | Interest on escrow advances | | | | -$50.07 | | | -$50.07 |
| 11/17/2022 | 11/01/2022 Late Charge Added | | | | -$65.12 | | | -$65.12 |

*If your loan is escrowed, the transaction activity above includes your escrow account deposits, refunds, credits, disbursements, and other activity, if any, that occurred in the transaction period.*

**Page 1 of 2**
Gregory Funding is a debt collector, and information you provide to us may be used to collect a debt.

---

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

☐ **Check here for change of mailing address or phone number(s).**
Please provide all corrections on the reverse side.

Account Number: ▮▮▮▮

| Due By 12/01/2022: | $97,564.64 |
|---|---|

A late fee of $65.12 will be charged after 12/15/2022.

| Additional Principal | $ |
|---|---|
| Additional Escrow | $ |
| **Total Amount Enclosed** | **$** |

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

**IMPORTANT ACCOUNT INFORMATION**

www.GregoryFunding.com    866-712-5698, M-F, 6:30-7:30 PST    0 2 4 7 3 9 3 *

**Online Access:** To manage your account online, view and download your documents or schedule a payment, please visit GregoryFunding.com.

**Additional Payment Information:** If the account is current and you want to set up automatic payments through our Recurring ACH Payment Program, please complete the Application found on the Borrower Center of our website, GregoryFunding.com, which you can electronically sign or you can download and mail or fax to us. If you are not paying online or by recurring automatic payment, include the account number on your check or money order and make it payable to "Gregory Funding." Do not send cash. Payments accompanied by the payment stub on Page 1 of this Mortgage Statement and received at the correct payment address on any Monday through Friday that is not a legal bank holiday will be credited as of the day of receipt. You may contact Customer Service toll-free at 866-712-5698 to make a payment by phone; phone payments arranged after 6 PM Pacific Time will be credited on the following business day. When the currently due installment is paid and there are no unpaid fees and charges, you may designate an excess payment to reduce principal. You may make an extra escrow deposit, but this may not immediately reduce the periodic escrow payment and an overpayment may have to be refunded to you; we recommend you call Customer Service in advance to discuss the effect an extra escrow payment will have under the circumstances applicable to your loan. If the account is delinquent, you may wish to contact Customer Service to discuss how a payment will be applied and how to cure the delinquency.

**Suspense Accounts/Partial Payments:** Payments received in amounts that are more or less than the amount of the oldest unpaid installment may result in a partial payment that cannot be applied to the loan balance. When received, a partial payment amount is posted to a suspense account associated with the loan. Partial payments are applied when we receive the remainder amount due for the oldest unpaid installment.

**Interest on Escrow Advances:** If the escrow account is not adequately funded by monthly escrow payments or the loan account is not escrowed and you fail to pay property taxes or insurance premiums, we can advance servicer money to pay such obligations, including lender-placed insurance premiums if applicable. These advances are additional obligations included in the loan balance. We may charge interest on the daily outstanding advances balance until the advances are repaid, generally at the current loan interest rate and as permitted by state law.

**Payoff Requests:** Requests for quotes to pay off the account should be submitted in writing to Gregory Funding, Attn: Customer Service Department, PO Box 230579, Tigard, OR 97281-0579 or by fax to 866-712-5697.

**Requests for Information and Notices of Error, including Qualified Written Requests:** If you want a written response to a request or feel a loan servicing error occurred, you must contact us in writing. Requests and notices must include your name, loan number and property address; must state the information you request or the error you believe occurred and must be mailed to Gregory Funding, Attn: Errors & Inquiries, PO Box 230568, Tigard, OR 97281-0568.

**Foreclosure Prevention Assistance/Housing Counselor Information:** If you are experiencing difficulty making payments, visit our website, GregoryFunding.com, for Borrower Assistance instructions or call Customer Service toll-free at 866-712-5698, Monday through Friday, 6:30 AM - 6:00 PM Pacific Time, to discuss your options. For help exploring options to manage the account, the federal government offers contact information for housing counselors located near you, whom you can select by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/find-a-housing-counselor or the Department of Housing and Urban Development (HUD) at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD Housing Counselor Hotline toll-free at 800-569-4287.

**SCRA Information:** Servicemembers called to active duty, or a spouse or dependent of such a servicemember, may be entitled to legal protections and debt relief under the Servicemembers Civil Relief Act, 50 USC §§ 3901-4043 ("SCRA"). If you have questions about how the SCRA might apply to you, see www.militaryonesource.mil/legal or call 800-342-9647 toll-free to reach "MilitaryOneSource," a legal assistance resource of the U.S. Defense Department. If we need to know your eligibility status, please mail a written request and a copy of the servicemember's military orders to Gregory Funding, PO Box 230579, Tigard, OR 97281-0579.

**Taxes:** If you have an escrow account for us to disburse property tax payments, we will ask your tax authority to send the regular tax bill directly to us. However, some tax authorities continue to send the regular tax bill directly to you. Your tax authority may send other special types of tax bills directly to you, such as corrected, supplemental or special assessment bills. If taxes are escrowed with us and you receive a tax bill, write the account number on the bill and send it as soon as possible to Gregory Funding, Attn: Tax Department, PO Box 230579, Tigard, OR 97281-0579 or by fax to 866-712-5696.

**Insurance:** Mortgage loan terms require homeowner's hazard insurance for your property with replacement cost coverage and reasonable deductibles; flood or wind coverage may also be mandatory. We will pay annual insurance premiums from the escrow account if the loan is escrowed for insurance. You must provide us with declaration page(s) as proof of insurance including the mortgage clause: Gregory Funding LLC, ISAOA/ATIMA, PO Box 692402, San Antonio, TX 78269-2402. If you do not provide updated information when your insurance renews or changes, we may purchase lender-placed insurance to protect the lender. Provide all insurance change information to Gregory Funding LLC, Attn: Insurance Department, PO Box 692402, San Antonio, TX 78269-2402 or fax to 866-844-4130 or call toll-free 866-270-3228. To contact us about escrow status or damage claims under either your homeowner's or a lender-placed policy, write to Gregory Funding, Attn: Insurance Department, PO Box 230579, Tigard, OR 97281-0579 or fax to 866-712-5696 or call toll-free 866-712-5696.

**Colorado Residents:** Gregory Funding LLC maintains an office at 1776 S. Jackson Street, #900, Denver, CO 80210-3808. The telephone number is (720) 370-6078. **New York Residents:** Gregory Funding is a registered servicer with the New York Superintendent of Financial Services. A New York-resident borrower may file complaints about the servicer with the Superintendent or get further information from the Department of Financial Services' consumer assistance unit at 800-342-3736 or its website at www.dfs.ny.gov. **Oregon Residents:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 866-712-5698. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov. **Texas Residents:** CONSUMERS WISHING TO FILE A COMPLAINT AGAINST A MORTGAGE BANKER OR LICENSED MORTGAGE BANKER RESIDENTIAL MORTGAGE LOAN ORIGINATOR SHOULD COMPLETE AND SEND A COMPLAINT FORM TO: DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. COMPLAINT FORMS AND INSTRUCTIONS MAY BE OBTAINED FROM THE DEPARTMENT'S WEBSITE AT WWW.SML.TEXAS.GOV. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

We are a debt collector and information you provide to us may be used to collect a debt. However, if you filed for bankruptcy, we respect any stay, modification or discharge condition and this notice is given for regulatory compliance and information purposes only. If we are subject to a stay in your bankruptcy or you are receiving this solely as successor in interest, this letter is not a demand for payment. If this debt is discharged under bankruptcy law or you are merely successor in interest, you are not personally liable for the debt. According to the mortgage and within the limits of bankruptcy law, we retain our rights to enforce the mortgage lien against the collateral property.

**CHANGE OF ADDRESS:**
If your contact information has changed, please provide the new information below.

Name (first, middle initial, last)

Address (number and street)    Suite/Unit

City    State    Zip Code

Home Telephone    Mobile/Cell Telephone    Business Telephone

**GREGORY FUNDING**
PO Box 742334
Los Angeles, CA 90074-2334

Customer Service: 866-712-5698
Hours: 6:35 am – 6:00 pm PT
Monday - Friday Excluding Holidays

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

**Delinquency Notice**
Loan Number: ▮▮▮▮▮▮▮▮

*Received on*
*11-29-2022*
*MZ & EZ*

## This Account is Past Due

This account is delinquent. Delinquency means we have not received, or we cannot apply, the payment that became due on this date or any payments that became due after this date. When an account is delinquent, any full installment payment we receive can only be applied to the oldest outstanding due date. If you cannot pay all past due installments, we encourage you to call us; contact information is provided above. If you are not comfortable working with us directly, the Consumer Financial Protection Bureau recommends that you work with a HUD-authorized housing counselor to help resolve the delinquency; information to help you arrange for housing counseling is provided below.

Failure to remit payment and bring this mortgage loan account current may result in additional fees, charges and foreclosure. You could lose your home.

As of 11/18/2022 this mortgage loan is 1,358 days past due. You became delinquent on 03/02/2019.

**Recent Account History**

- Payment due 07/01/2022: Unpaid balance of $1,973.05
- Payment due 08/01/2022: Unpaid balance of $1,973.05
- Payment due 09/01/2022: Unpaid balance of $1,973.05
- Payment due 10/01/2022: Unpaid balance of $1,973.05
- Payment due 11/01/2022: Unpaid balance of $1,973.05
- Payment due 12/01/2022: Unpaid balance of $1,973.05
- Total of unpaid Fees and Charges: $13,612.70
- Suspense - Unapplied: $775.98

The Total Amount Due to bring this account current is $97,564.64. This amount includes all past due payments, all fees and charges assessed or advanced through 11/18/2022.

**Housing Counselor Information:** If you are experiencing financial difficulty and would like counseling or assistance, the federal government provides contact information for local housing counselors, whom you can select by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/find-a-housing-counselor or the Department of Housing and Urban Development (HUD) at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD Housing Counselor Hotline toll-free at 800-569-4287.

**SCRA Information:** Servicemembers called to active duty, or a spouse or dependent of such a servicemember, may be entitled to legal protections and debt relief under the Servicemembers Civil Relief Act, 50 USC §§ 3901-4043 ("SCRA"). If you have questions about how SCRA might apply, see www.militaryonesource.mil/legal or call 800-342-9647 toll-free to reach "Military OneSource," a legal assistance resource of the U.S. Defense Department. If we need to know your eligible status, please send a written request and a copy of the servicemember's military orders to us at Gregory Funding, PO Box 230579, Tigard, OR 97281-0579.

**Foreclosure:** We have made the first filing or notice required in your state to start the foreclosure of this loan account. This Delinquency Notice is based upon your contractual due date and does not include any acceleration of the maturity date that may have occurred. Also, it may not yet show all allowable charges incurred to-date in relation to the foreclosure, such as foreclosure costs, legal fees and other collection expenses permitted by the loan documents and applicable law.

* 5 0 2 4 7 3 9 3 *

# EXHIBIT F

GREGORY FUNDING
PO Box 742334
Los Angeles, CA 90074-2334

Customer
Hour * 5 0 2 4 9 3 9 3 *
Monday - Friday, Excluding Holidays

**Mortgage Statement**
Loan Number: ▮
Statement Date: 12/20/2022

1-832-04428-0063089-802-41-000-010-000-000


MAUREEN W ZOMAYAH
6800 N CENTRAL AVE
CHICAGO, IL 60646-1501

*Received on 12-27-2022 MZ*

| Payment Due Date: | 01/01/2023 |
|---|---|
| **Amount Due:** | **$99,666.21** |

If payment is received after 01/17/2023,
a $65.12 late fee will be charged

## Account Information

| | |
|---|---|
| Loan Number: | ▮ |
| Property Address: | 6800 N Central Ave |
| | Chicago, IL 60646 |
| Amortized Principal Balance (Not Payoff Amount): | $315,385.45 |
| Interest Rate (until 02/01/2057): | 3.8750% |
| Escrow Balance: | -$15,719.92 |
| Suspense - Reserve: | $0.00 |
| Suspense - Unapplied: | $775.93 |
| Prepayment Penalty: | No |

## Explanation of Amount Due

| | |
|---|---|
| Principal: | $340.65 |
| Interest: | $961.82 |
| Escrow (for Taxes and/or Insurance): | $670.58 |
| **Regular Monthly Payment:** | **$1,973.05** |
| Total New Fees and Charges: | $128.52 |
| Past Due Fees and Charges: | $13,612.70 |
| Past Due Payment(s): | $84,727.92 |
| Suspense - Unapplied: | -$775.93 |
| **Total Amount Due:** | **$99,666.21** |

## Past Payment Breakdown

| | Paid 11/18/2022 - 12/19/2022 | Paid in 2022 |
|---|---|---|
| Principal: | $0.00 | $0.00 |
| Interest: | $0.00 | $0.00 |
| Escrow (Taxes and/or Insurance): | $0.00 | $0.00 |
| Fees and Charges: | $0.00 | $0.00 |
| Suspense - Reserve/Other: | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

## Important Messages

**Suspense - Unapplied:** We hold a payment that is less than a full installment in a suspense account, not applied to your loan. When a new payment and the suspense amount complete an installment, we apply the installment amount. That may leave a new balance in suspense.

**Amount Due:** The Amount Due on this statement is based on the terms of your contract and does not reflect any forbearance agreement that may be in effect.

**BANKRUPTCY NOTICE.**
TO THE EXTENT YOUR DEBT IS SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE OR YOU DISCHARGED PERSONAL LIABILITY FOR YOUR MORTGAGE LOAN IN BANKRUPTCY, THIS STATEMENT IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY. IT IS NOT AN ATTEMPT TO COLLECT A DEBT AGAINST YOU. IF YOU WANT TO STOP RECEIVING STATEMENTS, PLEASE WRITE TO US.

## Transactions Posted between 11/18/2022 - 12/19/2022

| Effective Date | Description | Principal | Interest | Escrow | Fees & Charges | Suspense-Unapplied | Suspense-Reserve/Other | Total |
|---|---|---|---|---|---|---|---|---|
| 12/05/2022 | Interest on escrow advances | | | | -$48.40 | | | $48.40 |
| 12/13/2022 | Property inspection fee | | | | -$15.00 | | | -$15.00 |
| 12/19/2022 | 12/01/2022 Late Charge Added | | | | -$65.12 | | | -$65.12 |

*If your loan is escrowed, the transaction activity above includes your escrow account deposits, refunds, credits, disbursements, and other activity, if any, that occurred in the transaction period*

Gregory Funding is a debt collector, and information you provide to us may be used to collect a debt.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

☐ Check here for change of mailing address or phone number(s).
Please provide all corrections on the reverse side.

| **Account Number** ▮ | |
|---|---|
| **Due By 01/01/2023:** | **$99,666.21** |
| A late fee of $65.12 will be charged after 01/17/2023. | |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | **$** |

Gregory Funding
PO Box 742334
Los Angeles, CA 90074-2334

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

www.GregoryFunding.com    **IMPORTANT ACCOUNT INFORMATION**    866-712-5698, M-F, 6:30 AM-6:00 PM

2 4 7 3 9 3 *

**Online Access:** To manage your account online, view and download your documents or schedule a payment, please visit GregoryFunding.com.

**Additional Payment Information:** If the account is current and you want to set up automatic payments through our Recurring ACH Payment Program, please complete the enclosed form on the Borrower Center of our website, GregoryFunding.com, which you can electronically sign or you can download and mail or fax to us. If you are not paying online or by recurring automatic payment, include the account number on your check or money order and make it payable to "Gregory Funding." Do not send cash. Payments accompanied by the payment stub on Page 1 of this Mortgage Statement and received at the correct payment address on any Monday through Friday that is not a legal bank holiday will be credited as of the day of receipt. You may contact Customer Service toll-free at 866-712-5698 to make a payment by phone; phone payments arranged after 5 PM Pacific Time will be credited on the following business day. When the currently due installment is paid and there are no unpaid fees and charges, you may designate an excess payment to reduce principal. You may make an extra escrow deposit, but this may not immediately reduce the periodic escrow payment and an overpayment may have to be refunded to you; we recommend you call Customer Service in advance to discuss the effect an extra escrow payment will have under the circumstances applicable to your loan. If the account is delinquent, you may wish to contact Customer Service to discuss how a payment will be applied and how to cure the delinquency.

**Suspense Accounts/Partial Payments:** Payments received in amounts that are more or less than the amount of the oldest unpaid installment may result in a partial payment that cannot be applied to the loan balance. When received, a partial payment amount is posted to a suspense account associated with the loan. Partial payments are applied when we receive the remainder amount due for the oldest unpaid installment.

**Interest on Escrow Advances:** If the escrow account is not adequately funded by monthly escrow payments or the loan account is not escrowed and you fail to pay property taxes or insurance premiums, we can advance servicer money to pay such obligations, including lender-placed insurance premiums if applicable. These advances are additional obligations included in the loan balance. We may charge interest on the daily outstanding advances balance until the advances are repaid, generally at the current loan interest rate and as permitted by state law.

**Payoff Requests:** Requests for quotes to pay off the account should be submitted in writing to Gregory Funding, Attn: Customer Service Department, PO Box 230579, Tigard, OR 97281-0579 or by fax to 866-712-5697.

**Requests for Information and Notices of Error, Including Qualified Written Requests:** If you want a written response to a request or feel a loan servicing error occurred, you must contact us in writing. Requests and notices must include your name, loan number and property address; must state the information you request or the error you believe occurred and must be mailed to Gregory Funding, Attn: Errors & Inquiries, PO Box 230688, Tigard, OR 97281-0688.

**Foreclosure Prevention Assistance/Housing Counselor Information:** If you are experiencing difficulty making payments, visit our website, GregoryFunding.com, for Borrower Assistance instructions or call Customer Service toll-free at 866-712-5698, Monday through Friday, 6:30 AM - 6:00 PM Pacific Time, to discuss your options. For help exploring options to manage the account, the federal government offers contact information for housing counselors located near you, whom you can select by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/find-a-housing-counselor or the Department of Housing and Urban Development (HUD) at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD Housing Counselor Hotline toll-free at 800-569-4287.

**SCRA Information:** Servicemembers called to active duty, or a spouse or dependent of such a servicemember, may be entitled to legal protections and debt relief under the Servicemembers Civil Relief Act. 50 USC §§ 3901-4043 ("SCRA"). If you have questions about how the SCRA might apply to you, see www.militaryonesource.mil/legal or call 800-342-9647 toll-free to reach "MilitaryOneSource," a legal assistance resource of the U.S. Defense Department. If we need to know your eligibility status. please mail a written request and a copy of the servicemember's military orders to Gregory Funding, PO Box 230579, Tigard, OR 97281-0579.

**Taxes:** If you have an escrow account for us to disburse property tax payments, we will ask your tax authority to send the regular tax bill directly to us. However, some tax authorities continue to send the regular tax bill directly to you. Your tax authority may send other special types of tax bills directly to you, such as corrected, supplemental or special assessment bills. If taxes are escrowed with us and you receive a tax bill, write the account number on the bill and send it as soon as possible to Gregory Funding, Attn: Tax Department, PO Box 230579, Tigard, OR 97281-0579 or by fax to 866-712-5696.

**Insurance:** Mortgage loan terms require homeowner's hazard insurance for your property and will replace amount lost coverage and reasonable deductibles; flood or wind coverage may also be mandatory. We will pay annual insurance premiums from the escrow account if the loan is escrowed for insurance. You must provide us with declaration page(s) as proof of insurance including this mortgagee clause: Gregory Funding LLC, ISAOA/ATIMA, PO Box 692402, San Antonio, TX 78269-2402. If you do not provide updated information when your insurance renews or changes, we may purchase lender-placed insurance to protect the lender. Provide all insurance change information to Gregory Funding LLC, Attn: Insurance Department, PO Box 692402, San Antonio, TX 78269-2402 or fax to 866-844-4130 or call toll-free 866-270-3228. To contact us about escrow status or damage claims under either your homeowner's or a lender-placed policy, write to Gregory Funding, Attn: Insurance Department, PO Box 230579, Tigard, OR 97281-0579 or fax to 866-712-5696 or call toll-free 866-712-5698.

**Colorado Residents:** Gregory Funding LLC maintains an office at 1776 S. Jackson Street, #900, Denver, CO 80210-3808. The telephone number is (720) 370-5078. **New York Residents:** Gregory Funding is a registered servicer with the New York Superintendent of Financial Services. A New York-resident borrower may file complaints about the servicer with the Superintendent or get further information from the Department of Financial Services' consumer assistance unit at 800-342-3736 or its website at www.dfs.ny.gov. **Oregon Residents:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at 866-712-5698. To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov. **Texas Residents:** CONSUMERS WISHING TO FILE A COMPLAINT AGAINST A MORTGAGE BANKER OR LICENSED MORTGAGE BANKER RESIDENTIAL MORTGAGE LOAN ORIGINATOR SHOULD COMPLETE AND SEND A COMPLAINT FORM TO: DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. COMPLAINT FORMS AND INSTRUCTIONS MAY BE OBTAINED FROM THE DEPARTMENT'S WEBSITE AT WWW.SML.TEXAS.GOV. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

We are a debt collector and information you provide to us may be used to collect a debt. However, if you filed for bankruptcy, we respect any stay, modification or discharge condition and this notice is given for regulatory compliance and information purposes only. If we are subject to a stay in your bankruptcy or you are receiving this solely as successor in interest, this letter is not a demand for payment. If this debt is discharged under bankruptcy law or you are merely successor in interest, you are not personally liable for the debt. According to the mortgage and within the limits of bankruptcy law, we retain our rights to enforce the mortgage lien against the collateral property.

---

*Page 2 of 2*

---

**CHANGE OF ADDRESS:**
If your contact information has changed, please provide the new information below.

_____
Name (first, middle initial, last)

_____     _____
Address (number and street)     Suite/Unit

_____     _____
City     State     Zip Code

_____     _____
Home Telephone     Mobile/Cell Telephone     Business Telephone



**GREGORY**
**FUNDING**
PO Box 742334
Los Angeles, CA 90074-2334

Customer Service: 866-712-5698
Hours: 6:30 am - 6:00 pm PT
Monday - Friday Excluding Holidays

9  3

Maureen W Zomayah
6800 N Central Ave
Chicago, IL 60646-1501

*Received 12-27-2022 MZ*

**Delinquency Notice**
Loan Number: ████████

---

## This Account is Past Due

This account is delinquent. Delinquency means we have not received, or we cannot apply, the payment that became due on this date or any payments that became due after this date. When an account is delinquent, any full installment payment we receive can only be applied to the oldest outstanding due date. If you cannot pay all past due installments, we encourage you to call us; contact information is provided above. If you are not comfortable working with us directly, the Consumer Financial Protection Bureau recommends that you work with a HUD-authorized housing counselor to help resolve the delinquency; information to help you arrange for housing counseling is provided below.

Failure to remit payment and bring this mortgage loan account current may result in additional fees, charges and foreclosure. You could lose your home.

As of 12/20/2022 this mortgage loan is 1,390 days past due. You became delinquent on 03/02/2019.

**Recent Account History**

- Payment due 08/01/2022: Unpaid balance of $1,973.05
- Payment due 09/01/2022: Unpaid balance of $1,973.05
- Payment due 10/01/2022: Unpaid balance of $1,973.05
- Payment due 11/01/2022: Unpaid balance of $1,973.05
- Payment due 12/01/2022: Unpaid balance of $1,973.05
- Payment due 01/01/2023: Unpaid balance of $1,973.05
- Total of Unpaid Fees and Charges: $13,741.22
- Suspense - Unapplied: $775.98

The Total Amount Due to bring this account current is $99,666.21. This amount includes all past due payments, all fees and charges assessed or advanced through 12/20/2022.

**Housing Counselor Information:** If you are experiencing financial difficulty and would like counseling or assistance, the federal government provides contact information for local housing counselors, whom you can select by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/find-a-housing-counselor or the Department of Housing and Urban Development (HUD) at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or by calling the HUD Housing Counselor Hotline toll-free at 800-569-4287.

**SCRA Information:** Servicemembers called to active duty, or a spouse or dependent of such a servicemember, may be entitled to legal protections and debt relief under the Servicemembers Civil Relief Act, 50 USC §§ 3901-4043 ("SCRA"). If you have questions about how SCRA might apply, see www.militaryonesource.mil/legal or call 800-342-9647 toll-free to reach "Military OneSource," a legal assistance resource of the U.S. Defense Department. If we need to know your eligible status, please send a written request and a copy of the servicemember's military orders to us at Gregory Funding, PO Box 230579, Tigard, OR 97281-0579.

**Foreclosure:** We have made the first filing or notice required in your state to start the foreclosure of this loan account. This Delinquency Notice is based upon your contractual due date and does not include any acceleration of the maturity date that may have occurred. Also, it may not yet show all allowable charges incurred to-date in relation to the foreclosure, such as foreclosure costs, legal fees and other collection expenses permitted by the loan documents and applicable law.

* 5 0 2 4 7 3 9 3 *

| FACTS | What Does Gregory Funding Do with Your Personal Information? |
|---|---|

| **Why?** | Financial companies choose how they share your personal information. Under federal law, that means personally identifiable information. Federal law gives consumers the right to limit some but not all sharing. Federal law also required us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and employment information<br>• account balances and transaction history<br>• credit history and credit scores<br><br>When you are no longer our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Gregory Funding chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Gregory Funding share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes - such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes - to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes - information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes - information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

| **To limit our sharing** | • Visit us online at http://www.gregoryfunding.com/privacypolicyoptout;<br>• Email us at: opt-out@gregoryfunding.com;<br>• Mail the form below to:<br>Gregory Funding LLC<br>PO Box 230579<br>Tigard, OR 97281-0579<br><br>Please note: If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
|---|---|
| **For Questions Only (No Opt-Outs)** | Call: 1-866-712-5698 |

| Mail-in Form |
|---|
| If you have a joint account, your choice(s) will apply to everyone on your account unless you mark below.<br><br>☐ Apply my choices only to me. |
| Mark any/all you want to limit:<br><br>☐ Do not share information about my creditworthiness with your affiliates for their everyday business purposes.<br>☐ Do not allow your affiliates to use my personal information to market to me.<br>☐ Do not share my personal information with nonaffiliates to market their products and services to me. |

| Name | | Mail to: |
|---|---|---|
| Address | | Gregory Funding LLC |
| City, State, Zip | | PO Box 230579 |
| Account # | | Tigard, OR 97281-0579 |

| Who we are | |
|---|---|
| **Who is providing this notice?** | Gregory Funding LLC, a residential mortgage servicing company. |

| What we do | |
|---|---|
| **How does Gregory Funding protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Gregory Funding collect my personal information?** | We collect your personal information, for example when you: <ul><li>pay us by check or</li><li>give us your contact information or</li><li>give us your income information or</li><li>give us your wage statements or</li><li>provide employment information</li></ul> We also collect your personal information from others including, but not limited to, credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only: <ul><li>sharing for affiliates' everyday business purposes - information about your creditworthiness</li><li>sharing for affiliates to market to you</li><li>sharing for nonaffiliates to market to you</li></ul> State Laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies. |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |

### Other important information

**Special Notice for California Residents**

We will not disclose information we collect about California residents to non-affiliated third parties, except as follows:

- With the authorization or consent of the California resident;
- To service the resident's account; or
- As permitted by law.

**Special Notice for Vermont Residents**

In accordance with Vermont law, we will not disclose information we collect about Vermont residents to unaffiliated companies and will not disclose application and third-party credit-related information about Vermont residents to our affiliated companies except as follows:

- With the authorization or consent of the Vermont resident;
- To companies that perform marketing or other services on our behalf;
- Name, contact and transaction and experience information (such as account balance and payment history) to other companies with which we have a joint marketing or servicing agreement; or
- As permitted by law.